# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**LAMAR ADVERTISING COMPANY**                    CIVIL ACTION

**VERSUS**
                                                 NO. 18-1060-JWD-RLB
**ZURICH AMERICAN INSURANCE
COMPANY**

## ORDER

Before the Court is Lamar Advertising Company's ("Lamar") Motion to Compel Zurich American Insurance Company ("Zurich") ("First Motion to Compel"). (R. Doc. 19). Lamar filed a supplemental memorandum. (R. Doc. 27). Zurich filed an opposition. (R. Doc. 28). Lamar filed a reply. (R. Doc. 34).

Also before the Court is Zurich's Motion for Protective Order and to Quash Plaintiff's Notice of Rule 30(b)(6) Deposition and Motion for Attorneys' Fees and Costs ("Motion for Protective Order") (R. Doc. 37). The motion is opposed. (R. Doc. 38). Zurich filed a reply. (R. Doc. 48).

Also before the Court is Lamar's Motion to Compel Zurich to Produce Documents in Response to Lamar's Fourth Set of Requests for Production ("Second Motion to Compel"). (R. Doc. 53). Zurich filed an opposition. (R. Doc. 55). Lamar filed a reply. (R. Doc. 60).

## I.      Background

This is an action for recovery under a commercial property insurance policy. (R. Docs. 1, 12). Lamar seeks recovery under a "Zurich Edge" policy with an aggregate policy limit of $145,557,696. (R. Doc. 12 at 4; *see* R. Doc. 1-1). Lamar asserts that it sustained property damage, loss of business income, professional fees, and other losses as a result of Hurricane Maria on September 20, 2017 at its Puerto Rico location. Among other things, Lamar is seeking

recovery for breach of contract, unfair trade practices, and violations of Louisiana's bad faith statutes, La. R.S. 22:1773 and La. R.S. 22:1892. Lamar asserts that Zurich failed to timely pay its claims of business interruption losses and professional fees, arbitrarily and capriciously failed to timely pay these and other claims, and failed to make a timely written offer to settle Lamar's property damages claims. Lamar commenced the instant action on December 3, 2018.

Lamar served three separate sets of written discovery on Zurich on March 6, 2019, March 28, 2019, and April 4, 2019. (R. Docs. 19-4, 19-10, 19-12). Lamar also noticed Zurich's Rule 30(b)(6) deposition on April 2, 2019 to take place on May 31, 2019. (R. Doc. 19-14). The Court ordered Zurich to provided written discovery responses by May 16, 2019. (R. Doc. 14). Zurich produced timely written responses and produced certain documents. (R. Docs. 19-9, 19-11, 19-13). Zurich objected to various topics noticed for its Rule 30(b)(6) deposition. (R. Doc. 19-15). Lamar sent correspondence detailing its positions with respect to Zurich's discovery responses and objections to the deposition topics. (R. Doc. 19-16).

After Lamar and Zurich were unable to resolve the instant discovery dispute, Lamar filed its First Motion to Compel with respect to the three sets of written discovery and the noticed deposition. (R. Doc. 19). Lamar seeks supplemental responses to (1) Interrogatory Nos. 1, 2, 6, 7, 8, 9, 10, 11, 12, 14, 16, 17, 18, and 19 of its First Set of Discovery, (2) Request for Production Nos. 2, 9, 10, 14, 15, 16, 18, 21, 22, 23, 24, 25, and 33 of its First Set of Discovery; (3) Request for Production Nos. 1, 2, and 3 of its Second Set of Discovery, and (4) Request for Production Nos. 1 and 2 of its Third Set of Discovery. Lamar also seeks an order requiring Zurich to submit to Topic Nos. 1, 16, 17, 18, 19, 26, 27, 30, 31, 32, 33, 34, 35, and 36 of the noticed Rule 30(b)(6) deposition. Lamar also seeks the submission of a sworn verification of Zurich's interrogatory answers, production of "true and correct copies of documents" produced, organization of the

produced documents, and identification of whether any responsive documents have been withheld based upon Zurich's objections.

In a supplemental memorandum, Lamar informed the Court that Zurich had satisfactorily answered Interrogatory Nos. 5, 6, 17, and 18 of Lamar's First Set of Discovery[1] and that Zurich had verified its answers to Lamar's interrogatories. (R. Doc. 27). Lamar submitted a copy of Zurich's amended answers to Lamar's First Set of Discovery dated June 26, 2019. (R. Doc. 27-1).

While the instant motions were pending, Lamar served a second Rule 30(b)(6) notice setting Zurich's Rule 30(b)(6) deposition for September 9, 2019. (R. Doc. 37-4). Zurich filed its Motion for Protective Order on the basis that the second deposition notice contained topics nearly identical to the first deposition notice on which the Court had not yet ruled. (R. Doc. 37). The parties informed the Court that Zurich's deposition did not take place. (*See* R. Doc. 47).

On August 28, 2019, Lamar served a fourth set of discovery consisting of six requests for production. (R. Doc. 53-4). Lamar filed its Second Motion to Compel, representing that Zurich did not provide timely responses by September 27, 2019, the final day to complete discovery. (R. Doc. 53). In opposition, Zurich argues that the motion is moot as it provided responses after the filing of the motion. (R. Doc. 55).

## II.    Law and Analysis

### A.    Legal Standards for Discovery

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at

---

[1] Interrogatory No. 5 was not at issue in the motion to compel.

stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Blanket assertions of a privilege are unacceptable, and the court and other

4

parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (citing *United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir. 1981)).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories. A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

A party must respond or object to interrogatories and requests for production. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

Rule 30(b)(6) governs deposition notices directed to organizations. In the deposition notice, the party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization." *Id.*

"The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). The court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous. *See*, *e.g.*, *Scioneaux v. Elevating Boats, LLC*, No. 10-0133, 2010 WL 4366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, No. 05-4182, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous); *Padana Assicurazioni–Societa Azioni v. M/V Caribbean Exp.*, No. 97-3855, 1999 WL 30966 (E.D. La. Jan. 21, 1999) (denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized).

### B. Analysis

#### 1. Waiver of Untimely Objections

As a preliminary issue, the Court finds that Zurich has waived any objections to Lamar's discovery requests that were not raised in its initial written response, with the exception of those pertaining to any applicable privileges or immunities. *See In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) ("[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."); *B&S Equip. Co. v. Truckla Servs., Inc.*, No. 09-cv-3862, 2011 WL 2637289, at *6 (E.D. La. July 6, 2011) (finding waiver of all objections to "discovery requests based on relevance, unduly burdensome,

over broad, or any other objection not grounded on the attorney client or the work product privilege.").

Consistent with the foregoing, the Court finds that Zurich waived its argument that Lamar violated Rule 33(a)(1), which precludes a party from serving "more than 25 written interrogatories, including all discrete subparts," unless otherwise stipulated or leave of court is obtained. (R. Doc. 28 at 3-4). Zurich argues that Lamar's 19 interrogatories actually constitute 137 interrogatories when sub-parts are taken into consideration. (R. Doc. 28 at 4). Zurich did not, however, object under Rule 33(a)(1) in its original responses served on May 16, 2019. (R. Doc. 19-9). Zurich added the objection to its amended responses served on June 26, 2019, the day after Lamar filed its motion to compel. (R. Doc. 27-1).

The record indicates that Zurich did not timely object to the interrogatories on the basis that they exceed the 25-interrogatory limit. Zurich has not directed the court to any indication in the record that it discussed any potential violation of the 25-interrogatory limit at a discovery conference prior to the filing of Lamar's First Motion to Compel. Given the record, the Court finds no basis for excusing Zurich's failure to timely object on the basis that Lamar exceeded the 25-interrogatory limit. *See* Fed. R. Civ. P. 33(b)(4).[2]

## 2. The Form of Zurich's Productions

Lamar argues in its First Motion to Compel that Zurich has produced a document with "the wrong date" on it and did not produce the attachment to a certain email. (R. Doc. 19-3 at 8-

---

[2] The Court may decline to compel responses to interrogatories exceeding the 25-interrogatory limit even where there is no timely objection. *See Gautier v. Plains Bros. Pipeline, LP*, No. 12-1064, 2013 WL 1787559, at *2 n. 3 (E.D. La. Apr. 25, 2013) (noting that objections were untimely but nevertheless considering whether subparts of interrogatories resulted in violation of Rule 33(a)(1)); *see also Amir Athletic, LLC v. State Farm Fire & Cas. Co.*, No. 11-2082, 2012 WL 520658, at *2 (E.D. La. Feb. 16, 2012) ("Of course, the court retains discretion to decline to compel requested discovery when the request far exceeds the bounds of fair discovery, even if a timely objection has not been made."). Given the record, the Court will nevertheless consider the merits of the interrogatories at issue without reaching the issue of whether the 25-interrogatory limit was violated.

9).  Zurich argues that the document with the wrong date is maintained in the normal course of business as a Portable Document Format ("PDF") and Lamar has a copy of the document with the correct date (to which there is no argument) and that Zurich has produced the missing attachment. (R. Doc. 28 at 9-10).  Given the foregoing representations, the Court will not require Zurich to supplement its production further with respect to these documents.

Lamar further argues that because Zurich has produced e-mails, Word files, and Excel files in PDF-format and must therefore label them to correspond to the requests for production under Rule 34(b)(2)(E)(i). (R. Doc. 19-3 at 9-10).  That rule provides that "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request [for production]." Fed. R. Civ. P. 34(b)(2)(E)(i). Zurich represents that it has produced documents as they are kept in the normal course of business and, with respect to electronically stored information ("ESI"), which were produced in PDF-format, as "near" to "native format" as possible given the need to redact information and apply Bates numbers. (R. Doc. 28 at 10).

Zurich does not argue that Rule 34(b)(2)(E)(i) in inapplicable to ESI productions.  Given the lack of any argument otherwise, the Court will hold Zurich to the requirements of Rule 34(b)(2)(E)(i) with respect to ESI that is not produced "as they are kept in the usual course of business." *See McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 249 (N.D. Tex. 2016) ("[W]here Rule 34(b)(2)(E)(i) addresses the organization of a production and Rule 34(b)(2)(E)(ii) specifically addresses the form for producing ESI (where form of production is inherently not an issue with hard-copy documents), and in light of the purposes of the 2006 amendments to Rule 34 and of Rule 34(b)(2)(E)(i)'s requirements, Rules 34(b)(2)(E)(i) and 34(b)(2)(E)(ii) should both apply to ESI productions.").  Accordingly, Zurich must either re-

produce its ESI "as they are kept in the usual course of business" (i.e., in their native format) or must otherwise identify, by Bates numbers, the ESI produced in PDF-form to correspond to each of Lamar's document requests.

### 3. Documents Withheld Pursuant to Objections

An objection to a request for production "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). Accordingly, to the extent Zurich has objected to any of Lamar's requests for production, and those objections have not been sustained in their entirety in this order, Zurich must provide a supplemental response identifying whether any responsive materials have been withheld on the basis of the asserted objection.

### 4. Lamar's First Set of Discovery

**Lamar's Interrogatory No. 1**

Lamar's Interrogatory No. 1 seeks, for each request for admission that Zurich denied, identification of (1) the "information, knowledge, and/or facts" on which the denial is based, (ii) the persons upon whom Zurich "relied, consulted, or intend to rely or consult" to support the denial, and (iii) all "Documents, Communications, or other information that support" the denial. (R. Doc. 19-4 at 14). Lamar seeks supplemental responses to Interrogatory No. 1 in light of Zurich's denial of Lamar's Request for Admission Nos. 1, 3, 13, 16, 17, 22, 23, 26, 28, 31, 33 and 36. (R. Doc. 19-3 at 13; *see* R. Doc. 27-2).

Zurich originally objected to this interrogatory stating that "Lamar has the burden of proving any fact it deems material to its claims" and "Zurich is not required to prove a negative." (R. Doc. 19-9 at 2). Zurich provided a supplemental response to Interrogatory No. 1 with respect to Request for Admission Nos. 1, 22, 23, 26, 28, 31, 33, and 36. (R. Doc. 27-1 at 2-3).

The Court has reviewed the requests for admission at issue. (R. Doc. 19-4 at 9-14). Requests for Admission Nos. 1, 17, and 31 seek admissions that certain documents in Lamar's possession are "true and correct" copies of the underlying documents. Requests for Admission Nos. 13 and 16 seek admissions that Zurich received certain documents by certain dates. Requests for Admission Nos. 3, 22, 23, 26, 28, and 33 seek admissions with respect to Lamar's claims of coverage. Finally, Request for Admission No. 36 seeks an admission regarding whether Zurich made any representation to Lamar on a certain date with respect to whether Patrick Menke had erased his hard drive.

The Court finds this interrogatory overly broad to the extent it seeks all information, knowledge, or facts relied upon or supporting the denials. For each denied request for admission at issue, however, Zurich must identify the persons, documents, or communications consulted or relied upon in support of the denial. Zurich need not identify any future witnesses it "intends" to consult or rely. The Court will otherwise treat the interrogatory as a "contention" interrogatory and will require Zurich to solely explain the factual bases for its denials by providing the material facts upon which it relies, but not a detailed and exhaustive listing of all evidence that may be offered in support of its denials. *See Linde v. Arab Bank, PLC*, No. 04-2799, 2012 WL 957970, at *1 (E.D.N.Y. Mar. 21, 2012) (citing cases).

## Lamar's Interrogatory No. 2

Lamar's Interrogatory No. 2 seeks the identification of individuals that Zurich intends to call as witnesses at any hearing or at trial, with summaries of the facts to which the witness is to testify and, with respect to experts, certain disclosures. (R. Doc. 19-4 at 14-15). Zurich objected on the basis that the interrogatory was premature but nevertheless identified certain individuals. (R. Doc. 19-9 at 2-3).

The Court's Scheduling Order governs the deadline for disclosure of expert witnesses and the deadline to identify witnesses in a proposed pre-trial order. (R. Doc. 11). The Court sustains Zurich's objections.

**Lamar's Interrogatory No. 7**

Lamar's Interrogatory No. 7 seeks the identification of Zurich's physical inspections of Lamar's location in Puerto Rico "by date inspection began, date inspection concluded, location of inspection, scope of inspection, purposes of inspection, and all Persons involved in each inspection." (R. 19-4 at 16). Zurich raised objections based on overbreadth and irrelevance, and on the basis that the information is equally available to Lamar. (R. Doc. 19-9 at 5). In its supplemental response, Zurich identifies four inspections (or site visits) made on October 11, 2017, October 18, 2017, October 23, 2017, and May 12, 2018 and names the individual inspectors or site visitors. (R. Doc. 27-1 at 4). In its reply, Lamar asserts that two additional inspections occurred on October 25, 2017 and October 31, 2017. (R. Doc. 34 at 6-7).

The information sought is within the scope of discovery. For each inspection, Zurich shall provide a brief description of the information sought, including the scope and purposes of the inspections. Zurich shall also state whether additional inspections occurred on October 25, 2017 and October 31, 2017, and, if so, provide the requested information with respect to those inspections.

**Lamar's Interrogatory Nos. 8 and 9**

Lamar's Interrogatory Nos. 8 and 9 collectively seek the dates and identification of Zurich's methods or models used to determine Lamar's covered business interruption loss sustained. (R. Doc. 19-4 at 16). Zurich objected on the basis that the interrogatories are "vague and nonsensical," further stating that "Zurich employs standard and accepted forensic accounting

methods to evaluate business interruption claims." (R. Doc. 19-9 at 6). In its supplemental response, Zurich clarifies that it "did not develop a different 'methodology or model' to evaluate Lamar's business interruption claim." (R. Doc. 27-1 at 5).

Given the broad language in the interrogatories with respect to methodologies and models, the Court finds Zurich's answer, as supplemented, to be sufficient. Lamar will have the opportunity to elicit specific testimony with respect to the forensic accounting methods used by Zurich in its Rule 30(b)(6) deposition and expert depositions.

**Lamar's Interrogatory No. 10**

Lamar's Interrogatory No. 10 seeks identification of how each of several numbered items regarding Lamar's business interruption claim in a letter from defense counsel dated January 22, 2019 will be used to calculate Lamar's covered business interruption loss sustained. (R. Doc 19-4 at 16; *see* R. Doc. 19-8 at 109-111). Zurich objected on the basis that the interrogatory assumes the claim is covered and calls for expert testimony, further stating that "Zurich employs standard and accepted forensic accounting methods to evaluate business interruption claims." (R. Doc. 19-9 at 6).

The Court sustains Zurich's objection that the interrogatory seeks information that calls for expert testimony. The letter from counsel was produced after the commencement of this action and seeks documentation requested by Zurich and its accountants to evaluate Lamar's submissions for its business interruption claim. (R. Doc. 19-8 at 109).

**Lamar's Interrogatory No. 11**

Lamar's Interrogatory No. 11 seeks the date on which Zurich first calculated the "minimum business loss exposure" referred to in an attached email. (R. Doc. 19-4 at 16). In the August 30, 2018 email, Michael Mastilak, an adjuster with Zurich, states that he has asked Brian

Mohlenhoff (now Zurich's expert in forensic accounting)[3] to review the supporting information submitted and to provide a "minimum business loss exposure" that will be used as a basis for an interim payment. (R. Doc. 19-8 at 101).

In response, Zurich states that it "has been unable to calculate a 'minimum business loss exposure' because Lamar has refused to provide the information Zurich has requested pursuant to standard and accepted forensic methods to evaluate business interruption claims." (R. Doc. 19-9 at 7). This response is sufficient to the extent Zurich has not calculated a "minimum business loss exposure." The answer leaves it unclear, however, whether Mr. Mohlenhoff made a calculation of "minimum business loss exposure" that Zurich ultimately decided it would use to support its position. Accordingly, to the extent Mr. Mohlenhoff made a calculation of Lamar's business loss in response to Mr. Mastilak's email, Zurich shall provide the date of the calculation.

### Lamar's Interrogatory No. 12

Lamar's Interrogatory No. 12 seeks identification of all "Professional Fees" contained in the invoices for the services of Postlewaite & Netterville performed for Lamar that are covered by Zurich's policy. (R. Doc. 19-4 at 16-17). Zurich responded that it has been unable to determine whether any of the invoices submitted are covered because Lamar has failed to provide appropriate information. (R. Doc. 19-9 at 7).

This interrogatory essentially seeks an admission that certain invoices submitted by Lamar constitute covered fees. In its opposition, Zurich states that it never received certain "information and documents" that its accountants have requested to make these determinations.

---

[3] Mr. Mohlenhoff is employed by Matson, Discroll & Damico LLP ("MDD") and served as the Rule 30(b)(6) representative in MDD's deposition. (*See* R. Doc. 59-1). Lamar has filed a separate motion to compel seeking MDD to comply with certain aspects of a subpoena. (R. Do. 42). That motion will be resolved in a separate ruling.

(R. Doc. 28 at 7). Lamar replies that Zurich's unsupported assertion that it did not receive the requested information is insufficient. (R. Doc. 34 at 8).

Zurich's response essentially denies that any of the invoices constitute fees in light of the information it has received. That response is sufficient for the purposes of this interrogatory. Lamar will have the opportunity to elicit specific testimony with respect to the information sought in the letter in Zurich's Rule 30(b)(6) deposition and expert depositions.

**Lamar's Interrogatory No. 14**

Lamar's Interrogatory No. 14 seeks identification of "all custodians and locations (including physical and/or electronic locations" of documents, communications, and other information produced in response to Lamar's requests for production. (R. Doc. 19-4 at 17). Zurich objected to the interrogatory on the basis of overbreadth and relevance, and nevertheless stated that it stores its documents "electronically." (R. Doc. 19-9 at 8). In its supplemental response, Zurich identified five custodians. (R. Doc. 27-1 at 6). Lamar argues that Zurich must identify its "hard drives, servers, network paths, and other sources on which relevant data resides." (R. Doc. 34 at 8).

The Court will require Zurich to provide a supplemental response identifying the actual sources from which the ESI was collected for production. Although there are certainly limits to "discovery about discovery," the Court finds this information is to be within the scope of discovery given the disputes between the parties with respect to whether and when certain information was received by Zurich. Identification of the sources from which Zurich has produced ESI will not cause any undue burden as this information is readily known to Zurich and its custodians.

## Lamar's Interrogatory No. 16

Lamar's Interrogatory No. 16 seeks identification of all claims that Eric Schwalbach was handling or otherwise involved in during the October 16, 2017 to July 25, 2018 time period. (R. Doc. 19-4 at 17). Zurich objected on the basis of overbreadth, undue burden, and irrelevance. (R. Doc. 19-9 at 9).

Lamar argues that the information sought, including the number and types of claims, is relevant because it may demonstrate that Zurich "overburdened" Mr. Schwalbach by requiring him to handle too many complex claims at once. (R. Doc. 34 at 9).

The Court sustains Zurich's objections. Lamar has not demonstrated the relevance of the information sought regarding all claims handled by Zurich or Mr. Schwalbach.[4]

## Lamar's Interrogatory No. 19

Lamar's Interrogatory No. 19 seeks identification of Zurich's efforts "to retrieve and/or recover the information erased from Patrick Menke's hard drive." (R. Doc. 19-4 at 18). Zurich objected on the basis that the interrogatory "assumes facts not in evidence" but nevertheless offered that it had "no information responsive to this Interrogatory." (R. Doc. 19-9 at 10).

Lamar represents that Patrick Menke is an independent adjuster hired by Zurick to adjust Lamar's claim. (R. Doc. 19-3 at 16-17). Zurich responds that Mr. Menke was employed by Crawford & Company[5] and Zurich has no "custody or control" over the computer. (R. Doc. 28 at 9). There is no dispute that the information sought falls within the scope of discovery.

Regardless of whether Zurich has possession, custody, or control over the underlying hard drive, it must respond to the interrogatory. If Zurich made no efforts "to retrieve and/or

---

[4] Limited deposition discovery on this issue may be appropriate, such as inquiry into the amount of time spent on the Lamar claims as related to his total workload and his other responsibilities during the relevant time period.

[5] Lamar has filed a separate motion to compel seeking Crawford & Company to comply with certain aspects of a subpoena. (R. Do. 35). That motion will be resolved in a separate ruling.

recover the information erased from Patrick Menke's hard drive" it must say so. If Zurich made

any efforts to obtain the erased information, it must identify those efforts, including any requests

from Zurich to Crawford & Company and/or Mr. Menke to retrieve the information.

**Lamar's Request for Production No. 2**

Lamar's Request for Production No. 2 seeks the production of all documents,

communications, and other information supporting Zurich's denial of any requests for admission.

(R. Doc. 27-1 at 7). As with Interrogatory No. 1, Zurich objected to the interrogatory on the

basis that "Lamar has the burden of proving any fact it deems material to its claims" and "Zurich

is not required to prove a negative." (R. Doc. 19-9 at 10). Zurich supplemented its response to

refer Lamar to its written discovery responses and document production. (R. Doc. 27-1 at 7).

This request for production essentially seeks the production of all documents identified in

response to Interrogatory No. 1. To the extent Zurich identifies documents, communications, or

information consulted or relied upon in support of the denial of any requests for admission (as

required of this Order with respect to Interrogatory No. 1), it must produce the identified

documents, communications, or information if it has not yet done so.

**Lamar's Request for Production No. 9**

Lamar's Request for Production No. 9 seeks production of documents relating to Eric

Schwalbach's employment at Zurich including positions held, job descriptions, employment

applications, performance evaluations, salary history, and documentation of commendations

and/or complaints. (R. Doc. 19-4 at 20). Zurich raised objections based on overbreadth,

irrelevance, confidentiality, attorney-client privilege, and work production protection. (R. Doc.

19-9 at 15).

The sole argument that Zurich raises with respect to this request is that its former claims adjuster's personnel file is irrelevant. (R. Doc. 28 at 11-12). There is no dispute that Mr. Schwalbach handled Lamar's claims. "Courts routinely conclude that the personnel file of the claims adjuster who adjusted the disputed claim is relevant." *Estate of Haeuser v. Westchester Surplus Lines Ins. Co.*, No. 13-5631, 2015 WL 403632, at *1 (E.D. La. Jan. 29, 2015) (citing cases). Given Lamar's allegations with respect to the handling of its claims by Mr. Schwalbach, the Court finds his employment/personnel file to fall within the scope of discovery. To address any concerns of confidentiality, Zurich shall designate the production of Mr. Schwalbach's employment/personnel file as confidential under the Joint Stipulated Protective Order in this case. (*See* R. Doc. 17).

**Lamar's Request for Production No. 10**

Lamar's Request for Production No. 10 seeks production of "all complaints, petitions, demands, and allegations (whether made in arbitration, regulatory proceedings, lawsuits, or otherwise) made against Zurich or Eric Schwalbach" that involve both (a) allegations of bad faith claims handling and/or deceptive or unfair practices and (2) relates to Eric Schwalbach's involvement in an insurance claim. (R. Doc. 19-4 at 20). Zurich raised objections based on overbreadth, irrelevance, confidentiality, attorney-client privilege, and work production protection. (R. Doc. 19-9 at 16).

The Court sustains Zurich's objections based on overbreadth and irrelevance. Lamar has not demonstrated that Zurich's positions with respect to other insurance policies in other legal proceedings have any relevance to the claims in this action. While the Court will require Zurich to produce Eric Schwalbach's employment/personnel file, which is relevant to his handling of Lamar's claims and may contain some information covered by this request, the Court will not

require Zurich to independently locate, review and produce such documents with respect to contracts with non-parties in an effort to determine whether they could be construed as involving Mr. Schwalbach and otherwise responsive.

**Lamar's Request for Production No. 14, 15, and 33**

Lamar's Request for Production No. 14 seeks Zurich's "manuals, guidelines, philosophies, policies, procedures, or practices" regarding Zurich's claims handing under its commercial property insurance policies that were in effect between September 20, 2017 and December 3, 2018. (R. Doc. 19-4 at 21-22). Lamar's Request for Production No. 15 seeks production "of all training materials used any time from 2014 to the present to train Zurich's commercial property insurance adjusters, claims handlers, consultants, and accountants." (R. Doc. 19-4 at 22). Lamar's Request for Production No. 33 seeks production of Zurich's "best practices" or "claim best practices" that "are applicable or potentially applicable" to the policy at issue or any claim made under a "Zurich Edge" policy form. (R. Doc. 19-4 at 26). Zurich raised objections based on overbreadth, irrelevance, confidentiality, attorney-client privilege, and work production protection. (R. Doc. 19-9 at 19-20, 30).

Lamar argues that the information sought is discoverable in light of its bad faith claims. (R. Doc. 19-3 at 20). In opposition, Zurich argues that the request is overly broad with respect to the time period to the extent they are not limited to policies in effect on September 20, 2017, and overly broad with respect to scope because Zurich "has already produced claim guidelines related to the adjustment of business interruption claims, off-premises services interruption, and depreciation." (R. Doc. 28 at 14).

The Court agrees with Zurich with respect to the temporal scope and will limit all three requests to the period of September 20, 2017 to December 3, 2018. Otherwise, Zurich must

produce "any documents that establish the procedures for adjusting claims under commercial property policies similar to the one at issue in this action that were in effect and available to [Zurich's] employees at the time [Lamar's] claim was adjusted" as these documents are relevant to the bad faith claims in this action. *See Weimar v. Liberty Mut. Ins. Co.*, No. 17-584, 2018 WL 6070344, at *3 (M.D. La. Nov. 20, 2018).

**Lamar's Request for Production No. 16 and 18**

Lamar's Request for Production No. 16 seeks production of Zurich's communications with its insurers and reinsurers from September 20, 2017 to the present regarding Lamar's claim. (R. Doc. 19-4 at 22). Lamar's Request for Production No. 18 seeks production of any "policies, contracts, and/or agreements providing or potentially providing coverage to Zurich" with respect to its claims against Zurich in this litigation. (R. Doc. 19-4 at 22). Zurich raised objections based on overbreadth, irrelevance, confidentiality, attorney-client privilege, and work production protection. (R. Doc. 19-9 at 20-21).

In argument, Lamar limits these requests to Zurich's communications with its reinsurers and its reinsurance policies and argues that any reinsurance agreements should have been produced as part of Zurich's initial disclosures under Rule 26(a)(1)(A)(iv). (R. Doc. 19-3 at 20-22). That rule requires disclosure of "insurance agreement(s) under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv). In opposition, Zurich represents that even if any such communications would be relevant it "does not possess any responsive documents" and suggests that the Court should conduct an *in camera* inspection to determine whether any reinsurance documents and agreements are discoverable. (R. Doc. 28 at 14-16).

The Court agrees with Lamar that Zurich was required to produce its reinsurance agreements as part of its initial disclosures under Rule 26(a)(1)(A)(iv), and, to the extent it has not done so, is now required to produce any reinsurance agreement to which Zurich is a party that obligates a reinsurer "to satisfy all or part of a possible judgment [against Zurich] in the action or to indemnify or reimburse [Zurich] for payments made to satisfy the judgment." *See Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, No. 06-4262, 2009 WL 1247122, at *2 (E.D. La. May 5, 2009). The Court similar finds that discovery of communications between Zurich and its reinsurers regarding Lamar's insurance claims are relevant to Lamar's claims for bad faith penalties under Louisiana law. *See id.* Communications between Zurich and its reinsurers regarding Zurich's insurance claims, if any, will contain information relevant to whether Zurich acted in good faith in explaining its reasons for granting or denying portions of the claims or otherwise described or explained its handling of the claims. *See id.* at *3.

To the extent Zurich has no responsive documents (including communications between it and any reinsurers) in its possession, custody, or control, it may say so in a supplemental response.

**Lamar's Request for Production No. 21**

Lamar's Request for Production No. 21 seeks the production of documents, communications, and other information "which reflect, show, explain, or provide guidance on how Zurich computed and/or arrived at the premium charged for the Zurich Policy." (R. Doc. 19-4 at 24). Zurich raised objections based on overbreadth, irrelevance, confidentiality, attorney-client privilege, and work production protection. (R. Doc. 19-9 at 24). In its supplemental response, Zurich referred Lamar to the underwriting file it previously produced. (R. Doc. 27-1 at 8).

It is unclear what information Lamar is seeking outside of the underwriting file that would be responsive to this request for production. Zurich shall supplement its response to clarify that no information was withheld based upon its objections. Otherwise, the production of the underwriting file is sufficient to respond to this request.

**Lamar's Request for Production No. 22**

Lamar's Request for Production No. 22 seeks the production of documents, communications, and other information "which interpret, explain, provide guidance on, comment on, or discuss Zurich's practice of retaining 'holdbacks' for depreciation in the event of direct physical loss or damage to Covered Property." (R. Doc. 19-4 at 24). Zurich raised objections based on overbreadth, irrelevance, confidentiality, attorney-client privilege, and work production protection, otherwise stating that the Policy "speaks for itself and is the best evidence of its terms, conditions, limitations, and exclusions." (R. Doc. 19-9 at 24-25). In its supplemental response, Zurich referred to certain produced documents. (R. Doc. 27-1 at 8-9).

Lamar argues that the information sought is relevant because it claims that Zurich improperly withheld depreciation and Zurich denies that it did. (R. Doc. 19-3 at 22-23). Zurich does not raise any arguments in opposition with respect to this request for production. Similarly, Lamar does not raise any additional arguments with respect to this request in its reply.

It is unclear what documents Zurich has produced and whether that production moots this request for production. Absent any arguments from Zurich, the Court will require Zurich to inform Lamar whether it produced all non-privileged documents in its possession, custody, or control. If not, Zurich must produce the documents sought.

**Lamar's Request for Production No. 23 and 24**

Lamar's Request for Production No. 23 seeks the production of documents, communications, and other information "which interpret, explain, and/or provide guidance regarding the business interruption (time element) coverage offered and/or provided under 'The Zurich Edge' policy form." (R. Doc. 19-4 at 24). Lamar's Request for Production No. 23 seeks the production of documents, communications, and other information "which interpret, explain, and/or provide guidance regarding the 'Off Premises Service Interruption' coverage offered and/or provided under 'The Zurich Edge' policy form." (R. Doc. 19-4 at 24). Zurich raised objections based on overbreadth, irrelevance, confidentiality, attorney-client privilege, and work production protection, otherwise stating that the Policy "speaks for itself and is the best evidence of its terms, conditions, limitations, and exclusions." (R. Doc. 19-9 at 25-26). In its supplemental response, Zurich referred to certain produced documents. (R. Doc. 27-1 at 9-10).

In argument, Lamar represents that it is seeking "training information, bulletins, directives, guidelines, etc." regarding the business and service interruption provisions of the policy at issue. (R. Doc. 19-3 at 23-24). Zurich represents that it has produced the requested information and argues that Lamar has not demonstrated how the responses are insufficient. (R. Doc. 28 at 16).

The Court will require Zurich to produce any "training information, bulletins, directives, guidelines" regarding the business and service interruption provisions of the policy at issue that were in effect and available to Zurich's employees between September 20, 2017 and December 3, 2018. As with Request for Production Nos. 14, 15, and 33, these documents are relevant to the bad faith claims in this action. *See Weimar*, 2019 WL 6070344, at *3. Zurich may otherwise certify that it has produced all responsive documents in its possession, custody, or control.

**Lamar's Request for Production No. 25**

Lamar's Request for Production No. 25 seeks the production "of all marketing materials created, distributed, and/or issued by Zurich from 2008 to the present regarding the: (1) Service its adjusters and/or claims handlers provide insureds; and/or (2) The coverages offered and/or provided under 'The Zurich Edge' policy form." (R. Doc. 19-4 at 25). Zurich raised objections based on overbreadth, irrelevance, confidentiality, attorney-client privilege, and work production protection, otherwise stating that the Policy "speaks for itself and is the best evidence of its terms, conditions, limitations, and exclusions." (R. Doc. 19-9 at 27).

Zurich's representations in marketing materials regarding the services of its adjusters and/or claims handlers and coverages under the "Zurich Edge" policy at the center of this lawsuit are relevant to Lamar's claims in this action and otherwise fall within the scope of discovery. While Lamar may have used a broker to purchase the policy at issue, Zurich makes no argument that the broker would not have received marketing materials and conveyed those materials to Lamar. *See Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 680 (N.D. Ala. 2015), *as amended* (July 10, 2015). Any marketing materials regarding how the policy at issue would be adjusted is relevant to Lamar's bad faith claims. Similarly, any marketing materials regarding the coverage provided by the policy at issue is relevant to the interpretation of any ambiguous language in the policy.

Lamar provides no argument, however, for why it is seeking marketing materials as early as 2008 and after the issuance of the policy. The Court will limit the temporal scope of the marketing materials distributed and/or issued by Zurich from March 1, 2014 to March 1, 2017 (the beginning of the policy period at issue).

### 5.    Lamar's Second Set of Discovery

Lamar's Second Set of Discovery consists of three requests for production that respectively seek production of (1) "Zurich's manuals, guidelines, policies, procedures, or practices relating to the retention and/or destruction of Documents and/or Communications," (2) "Zurich's manuals, guidelines, policies, procedures, or practices that Zurich requires its agents, including Patrick Menke, Eric Schwalbach, and/or Crawford & Company, to follow relating to the retention, destruction, and/or recovery of Documents and/or Communications," and (3) "all training Zurich provides to and/or requires of its claims-handling or claims adjustment relating to the retention and/or destruction of Documents and/or Communications." (R. Doc. 19-10 at 7-8). Zurich raised objections based on overbreadth, irrelevance, confidentiality, attorney-client privilege, and work production protection. (R. Doc. 19-11).

Lamar argues that the information sought is relevant because Donald Heering, a Zurich adjuster at Crawford Global Technical Services, stated the following on May 25, 2018 email sent to a representative of Lamar: "I finally received [Patrick Menke's] computer today, but the Hard Drive had been erased, so I was not able to recover anything." (R. Doc. 19-19 at 1; *see* R. Doc. 19-3 at 24-25).  In opposition, Zurich argues that the information regarding its document retention policy is irrelevant because this is not a "missing policy" case and Mr. Menke "is not an employee of Zurich and Zurich did not have custody or control of his computer." (R. Doc. 28 at 17).

While there is no claim of spoliation in this action, the record provides that Mr. Heering stated that Mr. Menke's hard drive on his computer had been erased.  Accordingly, this is not a situation where the plaintiff issued baseless discovery requests regarding whether there have been any deleted records. *See Cangelosi v. New York Life Ins. Co.*, No. 15-325, 2016 WL

4944131, at *7 (M.D. La. Sept. 15, 2016).  This Court has allowed "limited discovey regarding any document retention policies of the custodian(s) of relevant documents." *Id.* at 7 n.2. Accordingly, the Court will require production of the documents sought to the extent they pertain to the documents produced in this action and/or Mr. Menke and his hard drive.

Zurich also argues that any written litigation hold that it issued is exempt from production under the attorney-client privilege and the work product doctrine. (R. Doc. 28 at 18).[6]  To the extent Zurich withholds the production of any written litigation hold, it must produce a privilege log.

### 6.      Lamar's Third Set of Discovery

 Lamar's Third Set of Discovery consists of two requests for production that respectively seek production of "all Documents relating to Zurich's policies, procedures, practices, and/or processes for assigning, transferring, and/or reassigning insurance claims such as Lamar's Hurricane Maria Claim" and "all Documents and Communications relating to the assignment, transfer, and/or re-assignment of any Person involved in Lamar's Hurricane Maria Claim by Zurich." (R. Doc. 19-12).  Zurich raised objections based on overbreadth, irrelevance, confidentiality, attorney-client privilege, and work production protection. (R. Doc. 19-13).

Lamar argues that the information sought with respect to the assignment and reassignment of claims handlers is relevant because Zurich used four different adjusters over the course of two years to adjust the claims. (R. Doc. 19-3 at 25).  In response, Zurich argues that the information sought has "nothing to do" with the elements of a bad faith claim under Louisiana law. (R. Doc. 28 at 18).

---

[6]In support of this proposition, Zurich relies upon *Retractable Techs. Inc. v. Abbott Labs., Inc.*, No. 05-157, 2010 WL 11531179, at *4 (E.D. Tex. May 20, 2010).  In the absence of a privilege log and sufficient argument, the Court will not address whether a written litigation hold is privileged in this action.

The Court finds the information sought is relevant to Lamar's claims that Zurich unreasonably delayed the resolution and payment of claims under the policy. Zurich must produce non-privileged responsive documents.

### 7.    Lamar's Fourth Set of Discovery

Lamar seeks an order requiring Zurich to fully respond to its Fourth Set of Discovery, without objections, as Zurich failed to timely respond to the discovery requests. (R. Doc. 53). The Fourth Set of Discovery consists of six requests for production served on August 28, 2019. (R. Doc. 53-4). Zurich provided responses on October 11, 2019, seven days after Lamar filed its Motion to Compel. (R. Doc. 55-1). In its opposition, Zurich provides no explanation for why the responses were not timely provided. (R. Doc. 55).

Zurich has waived its objections to Lamar's Fourth Set of Discovery with the exception of those pertaining to any applicable privileges or immunities. *See In re United States*, 864 F.2d at 1156; *B&S Equip. Co.*, 2011 WL 2637289, at *6. Zurich must provided a supplemental response to Lamar's Fourth Set of Discovery without any objections other than those pertaining to any applicable privileges or immunities. If any documents are withheld based on such objections, Zurich must produce a privilege log.

Having considered the record, the Court will not award fees with respect to Lamar's Second Motion to Compel, however, because the extent of the parties' discovery disputes render the award of expenses with respect to this one set of discovery unjust. *See* Fed. R. Civ. P. 36(a)(5)(iii).

### 8.     Zurich's Rule 30(b)(6) Deposition

Lamar also seeks an order compelling Zurich to submit to Topic Nos. 1, 16, 17, 18, 19, 26, 27, 30, 31, 32, 33, 34, 35, and 36 of the first noticed Rule 30(b)(6) deposition.  The topics are as follows:

1.     Information related to the advertisement and/or marketing of the "Zurich Edge" policy form;

16.    Information related to Eric Schwalbach's employment at Zurich;

17.    Information related to the claims Eric Schwalbach was involved in any time during the October 16, 2017 to July 25, 2018 time period;

18.    Information related to the calendars or diaries kept, maintained, or otherwise used by Eric Schwalbach in the course of his employment for Zurich;

19.    Information related to complaints, petitions, claims, demands, and/or allegations made against Zurich or Eric Schwalbach which meet both of the following criteria: a. Bad faith, wrongful or improper claims handling, and/or deceptive unfair trade practices were alleged; and b. The complaint, petition, claim, demand, and/or allegations related, in any way, to Eric Schwalbach's involvement in an insurance claim (whether processing, adjusting, overseeing, handling, or otherwise);

26.    Information related to Zurich's communications with its insurers or reinsurers regarding Lamar's Hurricane Maria Claim;

27.    Information related to any agreements (reinsurance or otherwise) that provide or potentially provide indemnity, defense, and/or coverage to Zurich for any of the claims alleged by Lamar against Zurich in the Lawsuit;

30.    Information related to Zurich's manuals, guidelines, philosophies, policies, procedures, or practices relating to claims handling or claims adjustment;

31.    Information related to Zurich's training of its claims handlers and/or adjusters;

32.    Information related to resources available to Zurich's claims handlers and/or adjusters regarding Zurich's duties and obligations to its insureds;

33.     Information related to Zurich's understanding of its duties and obligations to its insureds;

34.     Information related to Zurich's "best practices" or "claim best practices" which are applicable or potentially applicable to the Policy and/or any claim made under any "Zurich Edge" policy form;

35.     Information relating to Zurich's manuals, guidelines, policies, procedures, or practices for data and/or Document retention and/or claims/litigation holds; [and]

36.     Information relating to Zurich's manuals, guidelines, policies, procedures, or practices for documenting its adjustment and/or handling of claims.

(R. Doc. 19-14 at 7-9). Zurich refused to produce a Rule 30(b)(6) corporate representative in light of objections similar to those raised with respect to the corresponding document requests. (R. Doc. 19-15).

The Court will require Zurich to provide a Rule 30(b)(6) corporate representative on the foregoing topics to the extent consistent with the Court's rulings on written discovery.

For Topic No. 1, Zurich must provide a corporate representative testify with respect to marketing materials distributed and/or issued by Zurich from March 1, 2014 to March 1, 2017.

For Topic Nos. 16-19, Zurich must provide a corporate representative to testify with respect to Eric Schwalbach's employment as it related to Lamar's claims and Eric Schwalbach's employment/personnel file in general. Zurich need not provide testimony with respect to Topic No. 19 and/or Eric Schwalbach's handling of claims other than the one at issue.

Zurich must provide a corporate representative to testify with respect to Topic No. 26 and 27 as written.

Zurich must provide a corporate representative to testify with respect to Topic Nos. 30-36, but the temporal scope of the testimony to be provided is limited to September 20, 2017 to December 3, 2018.

Prior to resolution of its First Motion to Compel, which sought a ruling with respect to the foregoing topics in its first deposition notice, Lamar served a second deposition notice modifying its areas of inquiry. (R. Doc. 37-4). This second deposition notice does not merely add supplemental topics not found in the first deposition notice; instead, it completely restructures the listed topics found in the first deposition notice. It is unclear why Lamar chose to seek relief with respect to one set of deposition topics and then, prior to obtaining the relief sought, served a second set of deposition topics seeking duplicative discovery prior to obtaining any relief from the Court. This approach to discovery has caused needless waste of judicial resources. The Court will not address a moving target. Accordingly, the Court will grant Zurich's Motion for Protective Order with respect to the second deposition notice to the extent it is inconsistent with the first deposition notice (as limited by this Order). The Court will not award fees with respect to Zurich's Motion for Protective Order, however, as Zurich failed to submit a "certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1); *see* Fed. R. Civ. P. 26(c)(3).

## III.    Conclusion

Based on the foregoing,

**IT IS ORDERED** that Lamar's First Motion to Compel (R. Doc. 19) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that Zurich's Motion for Protective Order (R. Doc. 37) is **GRANTED**.

**IT IS FURTHER ORDERED** that Lamar's Second Motion to Compel (R. Doc. 53) is **GRANTED**.

**IT IS FURTHER ORDERED** that Zurich must provide the responses and productions, as detailed in the body of this Order, within **21 days** of the date of this Order.

**IT IS FURTHER ORDERED** that Zurich's Rule 30(b)(6) deposition must occur, consistent with the limitations detailed in the body of this Order, within **45 days** of the date of this Order.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on January 28, 2020.

                **RICHARD L. BOURGEOIS, JR.**
                **UNITED STATES MAGISTRATE JUDGE**