# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| LAMAR ADVERTISING COMPANY | CIVIL ACTION |
|---|---|
| VERSUS | |
| ZURICH AMERICAN INSURANCE COMPANY | NO. 18-1060-JWD-RLB |

## ORDER

Before the Court is Lamar's Motion to Compel Matson, Discroll & Damico LLP ("First Motion to Compel"). (R. Doc. 36). The motion is opposed. (R. Doc. 42). Lamar filed a reply. (R. Doc. 51).

Also before the Court is Lamar's Supplemental Motion to Compel Matson, Discroll & Damico LLP ("Second Motion to Compel") and Motion for Leave to File Transcript. (R. Doc. 52). The motion is opposed. (R. Doc. 54). Lamar filed a reply. (R. Doc. 59).[1]

This is an action for recovery under a commercial property insurance policy. (R. Docs. 1, 12). Lamar seeks recovery under a "Zurich Edge" policy with an aggregate policy limit of $145,557,696. (R. Doc. 12 at 4; *see* R. Doc. 1-1). Lamar asserts that it sustained property damage, loss of business income, professional fees, and other losses as a result of Hurricane Maria on September 20, 2017 at its Puerto Rico location. Among other things, Lamar is seeking recovery for breach of contract, unfair trade practices, and violations of Louisiana's bad faith statutes, La. R.S. 22:1773 and La. R.S. 22:1892. Lamar asserts that Zurich failed to timely pay its claims of business interruption losses and professional fees, arbitrarily and capriciously failed

---

[1] Lamar's Motion for Leave to File Transcript (R. Doc. 52) seeks leave to file a final transcript of Matson, Discroll & Damico LLP's Rule 30(b)(6) deposition once available. The relied upon portions of the transcript are attached to Lamar's reply. (R. Doc. 59-1). Accordingly, the court will deny Lamar's Motion for Leave to File Transcript (R. Doc. 52) as moot.

to timely pay these and other claims, and failed to make a timely written offer to settle Lamar's property damages claims. Lamar commenced the instant action on December 3, 2018.

The instant motions concern a Rule 45 subpoena served on the non-party Matson, Discroll & Damico LLP ("MDD") that seeks the production of certain documents in Baton Rouge, Louisiana on June 28, 2019. (R. Doc. 36-5). There is no dispute that the subpoena was served on Corporation Service Company, MDD's registered agent for service of process in Louisiana, on May 29, 2019. (R. Doc. 36-3 at 5; *see* R. Doc. 42 at 1). According to Zurich, MDD is a public accounting firm retained by Zurich "to perform an analysis of the economic damages and losses allegedly sustained by Lamar" as a result of Hurricane Maria. (*See* R. Doc. 42 at 1).

The subpoena seeks the following information:

A. All contracts and/or agreements between [MDD] and Zurich applicable to or governing the services [MDD] provided to Zurich in connection with Lamar's Hurricane Maria Claim.

B. All manuals, guidelines, policies, procedures, practices, standards, and/or directives – whether issued by [MDD], Zurich, or any other Person – applicable to or governing any work performed by Patrick Menke in connection with Lamar's Hurricane Maria Claim.

C. All Documents and Communications regarding Lamar's Hurricane Maria Claim.

D. All final and draft documents reflecting any work performed by [MDD] and/or the Adjusters in adjusting Lamar's Hurricane Maria Claim for business interruption loss.

(R. Doc. 36-5 at 4-5).

Lamar represents that MDD did not timely object to the subpoena, but otherwise produced certain documents including a privilege log by Zurich. (R. Doc. 36 at 2-3; *see* R. Doc. 36-4). Lamar asserts that MDD's productions are deficient because they did not include any

contracts of agreements as sought in Category A or any manuals or guidelines as sought in in Category B. (R. Doc. 36 at 2). Through its First Motion to Compel, Lamar seeks an order compelling MDD to "(a) produce true and correct copies of all documents in its possession, custody or control that are responsive [to] the Subpoena; and (b) certify that it has conducted a search for the information reasonably available to it through its agents, attorneys, or others subject to its control and has determined that the information requested either does not exist or that it has been produced to Lamar." (R. Doc. 36 at 3).

In opposition, MDD represents that while Corporation Service Company, MDD's registered agent for service of process in Louisiana, was served with the subpoena on May 29, 2019, it did not receive a copy until it was provided such by Plaintiff's counsel on July 1, 2019. (R. Doc. 42 at 1-2). MDD submitted Zurich's privilege log on July 5, 2019, which raised certain objections with respect to "draft expert reports" and emails on the bases of confidentiality, attorney-client privilege, and work product immunity. (R. Doc. 42-2). MDD represents that it has produced 9,000 pages of responsive documents, that it does not have any written "Zurich guidelines" responsive to Category B, and that it has withheld as confidential a Professional Services Agreement between MDD and Zurich on the basis that it is confidential and lacks relevance. (R. Doc. 42 at 2, 5-6). MDD argues that the Professional Services Agreement is "confidential, proprietary, and irrelevant" and that its objections to Lamar's subpoena (through Zurich's privilege log) were timely in light of the date of its actual receipt of the subpoena. (R. Doc. 42 at 6-7).

The record indicates that MMD did not serve any objections "before the earlier of the time specified for compliance or 14 days after the subpoena [was] served" under Rule 45(d)(2)(B) or otherwise file a timely motion to quash under Rule 45(d)(3). Under these

circumstances, a party generally waives all grounds for objection, including privilege. *Louisiana Generating, L.L.C. v. Illinois Union Ins. Co.*, No. 10-516, 2011 WL 6259052, at *2 (M.D. La. Dec. 14, 2011) ("Courts within the Fifth Circuit have consistently held that failure to serve timely objections to a Rule 45 subpoena generally results in a waiver of all grounds for objection, including privilege.") (citing cases).

Courts within the Fifth Circuit have also held, however, that "the failure to act timely will not bar consideration of objections in unusual circumstances and for good cause shown." *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 43 (N.D. Tex. 2015). Furthermore, the rule governing claims of privilege in response to a subpoena does not provide an explicit deadline for raising claims of privilege. *See* Fed. R. Civ .P. 45(e)(2). Here, MDD asserts that although it was served the subpoena on its registered agent on May 9, 2019, it only actually received a copy of the subpoena when notified by Plaintiff's counsel on July 1, 2019, and then it immediately retained Zurich's counsel for the purposes of responding to the subpoena. (R. Doc. 54 at 2). MDD produced Zurich's privilege log on July 5, 2019 and produced over 9,000 pages of documents. (R. Doc. 54 at 2). Given these circumstances, the Court finds that MDD did not waive any assertions of attorney-client privilege or work product immunity found in the privilege logs.

Given MDD's representations with respect to its production of all non-privileged responsive documents with respect to Categories B, C, and D of the subpoena, the sole substantive issue with respect to Lamar's First Motion to Compel is whether MDD must produce the withheld Professional Services Agreement. Even if MDD had timely objected on the basis of confidentiality and irrelevance with respect to that document (and any other documents responsive to Category A), the Court would overrule the objections. The subpoena is narrowly

tailored to obtain information relevant to Lamar's claims. Given MDD's role with respect to the adjustment of the claims, the Professional Services Agreement is relevant with respect to Zurich's control over MDD's work production with respect to business interruption calculations. To the extent MDD has concerns regarding confidentiality, it may produce the documents as "confidential" under the Joint Stipulated Protective Order in this case. (*See* R. Doc. 17).

Lamar's Second Motion to Compel asserts that at MDD's Rule 30(b)(6) deposition, it learned for the first time that MDD withheld certain responsive documents responsive to the subpoena (estimates of business interruption loss calculated by MDD, "XactAnalysis" documents, and "Deltek" documents) and that MDD "did not produce a corporate representative who could testify about the amounts of business interruption loss MDD had calculated Lamar sustained as a result of Hurricane Maria." (R. Doc. 52 at 2).[2] Brian Mohlenhoff, the individual who served as MDD's corporate representative at the deposition, has been retained by Zurich as an expert in forensic accounting in this action.

MDD represents that "XactAnalysis is a web portal used by Zurich and its vendors to upload documents" and there are no separate "XactAnalysis" documents. (R. Doc. 54 at 6-7). MDD further represents that it has produced all "Deltek" documents, which "are simply screenshots of a computer program that MDD uses for its electronic filing system." (R. Doc. 54 at 7). The Court accepts MDD's representations with respect to the so-called "XactAnalysis" documents and "Deltek" documents and will not require further production with respect to those documents.

The sole remaining issues are whether MDD must produce unredacted versions of the withheld calculations of business interruption loss and whether MDD must appear for a second

---

[2] Lamar also raises additional arguments with respect to documents responsive to Categories A and B of the subpoena that the Court has sufficiently addressed in addressing Lamar's First Motion to Compel.

5

deposition with respect to its testimony on these calculations. In his capacity as MDD's Rule 30(b)(6) representative, Mr. Mohlenhoff testified that prior to his deposition he did not look at any business interruption loss estimates that MDD prepared, but that he did review unredacted versions of certain business loss estimates prepared by MDD for mediation purposes that "corrected" the claims submitted by Lamar for business loss using the data from Lamar's profit and loss statements. (R. Doc. 59-1 at 8-10). Mr. Mohlenhoff further testified that he reviewed the unredacted version of the document to refresh his recollection. (R.Doc. 59-1 at 16-17). MDD represents that this document "is not an estimate of what MDD believes Zurich owes for Lamar's business interruption claim, and MDD did not prepare a separate estimate of its own." (R. Doc. 54 at 4).

MDD represents that the withheld calculations are the same as those identified as a March 22, 2019 "draft expert report" (MDD000119-146) on Zurich's privilege log. (R. Doc. 54 at 4; *see* R. Doc. 36-4 at 1). MDD argues that the calculated estimates (which it refers to as a "corrected claim") is Lamar's own claim presentation with "numbers that reflect its own profit and loss statements" and does not reflect the amount that MDD belies is owed to Lamar, as Mr. Mohlenhoff has produced an expert report providing that that "he does not believe Zurich owes Lamar anything for its alleged business interruption loss." (R. Doc. 54 at 6). MDD argues that the withheld calculations constitute a draft expert report subject to protection under Rule 26(b)(4)(B) and Rule 26(b)(3).

The work product doctrine is a matter of federal procedural law in diversity cases. *See N. Am. Specialty Ins. Co. v. Iberville Coatings, Inc.,* No. 99-859, 2002 WL 34423316, at *3 (M.D. La. Mar. 22, 2002). The work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. "Ordinarily, a party may not discover documents and tangible things that are

6

prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The moving party may discover relevant information, however, if the "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). "The burden of establishing that a document is work product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production." *Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury, I.R.S.,* 768 F.2d 719, 721 (5th Cir. 1985).

Regardless of whether the withheld calculations were produced for the purposes of an expert report, there appears to be no dispute that the calculated estimates constitute "ordinary" work product under Rule 26(b)(3)(A). The calculations were made by Zurich's accountant at counsel's direction for the purposes of mediation and constitute documents "prepared in anticipation of litigation or for trial by or for another party or its representatives." Fed. R. Civ. P. 26(b)(3)(A). The Court does not find, however, that the withheld calculations constitute "opinion" work product, which include "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). If anything, MDD has asserted that the conclusions offered by the withheld calculations are based solely on Lamar's proffered methodologies and do not constitute MDD's conclusions or opinions.

"'Ordinary' work product will be ordered produced 'only upon a showing that the party seeking discovery has a substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the

7

materials by other means.'" *Conoco, Inc. v. Boh Bros. Constr. Co.*, 191 FRD 107, 118 (W.D. La. 1998) (citing Fed. R. Civ. P. 26(b)(3) and *Thomas v. General Motors Corp.*, 174 FRD 386, 388 (E.D. Tex. 1997)). "Some cases have found substantial need by emphasizing the importance of the documents themselves. One common justification for discovery is the claim which relates to the opposite party's knowledge that can only be shown by the documents themselves." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1241 (5th Cir. 1982). With respect to the undue hardship prong, "discovery of work product will be denied if a party can obtain the information he seeks by deposition." *In re International Systems and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1240 (5th Cir. 1982). *See also*, *In re Hardwood P-G, Inc.*, 403 BR 445, 464 (W.D. Tex. 2009) ("Undue hardship can be demonstrated if witnesses cannot remember key facts or are unavailable for depositions or if there is unusual expense incurred [in] interviewing or discovering the sought-after person or information, as the case may be.").

The Court need not reach Lamar's additional arguments with respect to "waiver" of the work product doctrine to the extent they have not already been addressed. That is because the Court concludes that Lamar has established substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. For example, the Court has considered whether this information could be obtained by deposition. MDD, through its representative, could simply be asked to do the alternative calculations at the deposition. Considering the complexity of this case, that would not be reasonable in a deposition. Indeed, Mr. Mohlenhoff's mere preparation for the deposition necessitated a review of the unredacted documents themselves. Lamar has substantial need for the estimates for the purposes of determining whether the estimates substantiate its claim that Zurich actually calculated the business interruption loss to Lamar (through the calculations) and failed to timely

pay that amount. The Court is aware that Zurich and MDD have both taken the position that the withheld calculations do not reflect their position with respect to Lamar's actual business interruption losses. But not allowing Zurich to review these estimates prevents Lamar from testing its theory. Lamar is unable to obtain a substantial equivalent of the estimates by other means as it is unclear what numbers Zurich "corrected" in the calculations provided by Lamar. MDD only asserts that the "corrected claim" consists of "Lamar's claim presentation, with numbers that reflect its own profit and loss statements" that "Lamar could easily reproduce if it used real financial information and not inflated numbers." (R. Doc. 54 at 6).

Based on the foregoing, the Court will require MDD to produce an unredacted version of the withheld calculations, i.e., the document identified on Zurich's privilege log as a March 22, 2019 "draft expert report" (MDD000119-146). MDD must also produce a Rule 30(b)(6) deponent for the limited purpose of providing testimony on the unredacted version of this document.

Finally, given the discovery disputes between the parties in this action, the Court will require MDD to certify that it has conducted a diligent search for documents and electronically stored information ("ESI") responsive to the subpoena and has produced all non-privileged documents and ESI in its possession, custody, or control located after such a search.

Based on the foregoing,

**IT IS FURTHER ORDERED** that Lamar's Motion to Compel (R. Doc. 36) and Lamar's Supplemental Motion (R. Doc. 52) are **GRANTED IN PART and DENIED IN PART**. MDD must produce the foregoing documents and certification within **14 days** of the date of this Order. MDD must also produce a Rule 30(b)(6) representative for the limited purpose of providing testimony on the unredacted version of the document identified on Zurich's

privilege log as a March 22, 2019 "draft expert report" (MDD000119-146). This deposition must occur within **45 days** of production of the withheld document, or as otherwise agreed upon by the parties.

**IT IS FURTHER ORDERED** that Lamar's Motion for Leave to File Transcript. (R. Doc. 52) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED that** the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on January 28, 2020.

	**RICHARD L. BOURGEOIS, JR.**
	**UNITED STATES MAGISTRATE JUDGE**