**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

LAMAR ADVERTISING COMPANY

VERSUS

ZURICH AMERICAN INSURANCE COMPANY

CIVIL CASE NO.

18-1060-JWD-RLB

RULING AND ORDER

This matter is before the Court on the *Motion for Partial Summary Judgment Regarding Zurich's Untimely August 13, 2018 Payment to Lamar and Zurich's Failure to Ever Make Any Written Offers to Settle Lamar's Property Damage Claim* ("*Motion*") filed by Lamar Advertising Company ("Lamar" or "Plaintiff"). (Doc. 75.) Zurich American Insurance Company ("Zurich" or "Defendant") filed a memorandum in opposition to the *Motion*. (Doc. 77.) Lamar filed a reply. (Doc. 78.) Oral argument is not necessary. Having considered the facts, the arguments by the parties, and the applicable law, the Court will grant in part and deny in part the *Motion*.

FACTS

Lamar is an outdoor advertising company that operates billboards, logo signs, and transit displays in the United States. (Doc. 75-7 at 179.) Lamar is headquartered in Baton Rouge, Louisiana. (*Id.*) Lamar has a single office and warehouse in Puerto Rico. (*Id.*) Lamar contracted with Zurich to obtain insurance for its business locations. (*Id.*) As such, Zurich issued and delivered Policy No. MLP 4856733-06 ("Policy") to Lamar at 5551 Corporate Boulevard, Baton Rouge, Louisiana 70808. (Doc. 75-4 at 19.) The Policy was in effect from March 1, 2017 to March 1, 2018. (*Id.*) Any loss payable under the Policy is payable to Lamar, unless otherwise directed by Lamar. (*Id.* at 57.) Lamar's Puerto Rico office is an "Insured Location" under the Policy. (Doc. 75-5 at 2; Doc. 75-7 at 9:19-10:25.)

1

Hurricane Maria made landfall in Puerto Rico on September 20, 2017 as a Category 4 hurricane, and damaged Lamar's Puerto Rico office and its contents. (Doc. 75-5 at 2; Doc. 75-7 at 9:19-10:4.) Hurricane Maria was a "Named Storm" as defined by the Policy.[1] (Doc. 75-4 at 68.)   Zurich received notice that Lamar's Puerto Rico office was damaged by Hurricane Maria on September 22, 2017. (Doc. 75-7 at 12:14-16; *id.* at 95-96.)

Zurich conducted a series of inspections to view the damage at Lamar's Puerto Rico office. On October 11, 2017, Independent Adjuster Patrick Menke made an initial visit to the property. (Doc. 75-6 at 4.) On October 18, 2017, Mr. Menke inspected the warehouse and office along with Ricky Raven and Jacie Strader of Lamar, and representatives of Marsh Brokerage and Target Development Corporation. (*Id.*) On October 23, 2017, Mr. Menke inspected the property with Robert Pumphrey of J.S. Held and Joey Wild and Manuel Papadakis of Target Development Corporation. (*Id.*) On January 22, 2018, Zurich issued a payment of $544,668.00 to Lamar for property damages. (*Id.* at 3.) Under the Policy, a $250,000 deductible applies to all of Lamar's Hurricane Maria losses. (*Id.* at 4.) Zurich subtracted the $250,000 deductible from the loss it paid Lamar for on January 22, 2018 and no further deductible is owed to Zurich for any of Lamar's Hurricane Maria losses. (Doc. 75-6 at 4.) On April 10, 2018, Zurich issued a second payment of $262,468.56 to Lamar for property damages. (*Id.* at 3.)

On May 12, 2018, Lamar's Puerto Rico office was inspected by International General Adjuster Donald Heering. (*Id.* at 4.)  On June 12, 2018, Zurich's in-house adjuster, Eric Schwalbach, received a report entitled "Statement of Loss," and invoices from Mr. Heering. (Doc. 75-7 at 23:13-24:22.) The Statement of Loss reported that Lamar had sustained losses of

---

[1] "Named Storm" is defined in the policy as "Any storm or weather disturbance that is named by the U.S. National Oceanic and Atmospheric Administration (NOAA) or the U.S. National Weather Service or the National Hurricane Center or any comparable worldwide equivalent." (Doc. 75-4 at 68.)

$417,925.76 as a result of Hurricane Maria that were in addition to those losses Zurich had paid Lamar for on January 22, 2018 and April 10, 2018. (*Id.* at 184-185.) The Statement of Loss also recommended that Zurich consider the additional $417,925.76 loss for payment. (*Id.*) On August 13, 2018, Zurich issued a final payment of $417,925.76 to Lamar for property damages. (Doc. 75-6 at 3.) Zurich never made any written offers to settle any of Lamar's claims for property damage caused by Hurricane Maria. (Doc. 75-5 at 10.)

## APPLICABLE STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

## DISCUSSION

3

*a. Parties arguments*

1. <u>Lamar's arguments in support</u>

Lamar argues that under Louisiana Revised Statutes 22:1892, Zurich was required to promptly pay and offer to settle insurance claims within thirty days of receiving a satisfactory proof of loss. (Doc. 75-3 at 14.) If an insurer fails to promptly pay and offer to settle, the insured can seek statutory penalties and attorneys' fees by proving, (1) the insurer received satisfactory proof of the loss; (2) the insurer failed to pay the claim (or make a written offer of settlement) within thirty days; and (3) the insurer's failure to pay the claim (or make a written offer of settlement) was arbitrary, capricious, or without probable cause. (*Id.* (citing La. R.S. 22:1892(A)(1), (3), & (4)).)

Lamar contends that there is no genuine dispute of fact that Zurich received "satisfactory proof of loss" no later than June 12, 2018. (*Id.*) Lamar states that "satisfactory proof of loss" is a flexible requirement, that does not need to be in a formal style and is satisfied by an insurer "receiv[ing] sufficient information to act on the claim." (Doc. 75-3 at 14 (citing *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 368 (5th Cir. 2009)).) As examples of satisfactory proof of loss, Lamar outlines that Louisiana courts have accepted: (1) a handwritten estimate of the cost of repairs (*id.* at 15 (citing *Sevier v. United States Fid. & Guar. Co.*, 497 So. 2d 1380 (La. 1986)); (2) personal inspection of an insured's property by an independent adjuster (*id* (citing *J.R.A. Inc. v. Essex Ins. Co.*, 2010-0797 (La. App. 4 Cir. 5/27/11); 72 So. 3d 862, 881)); (3) proof of insurance, photographs, and salvage information (*id.* (citing *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 2011-1355 (La.App. 3 Cir. 4/4/12); 88 So. 3d 1245)); and (4) an independent adjuster's opportunity to discover but failure to do so (*id*. (citing *Aghighi v. Louisiana Citizens Prop. Ins. Corp.*, 2012-1096 (La. App. 4 Cir. 6/19/13), 119 So. 3d 930, 934).)

4

In this case, Lamar argues that Zurich received satisfactory proof of loss because: (1) Zurich's agents inspected the damaged property, at least four times; (2) it received documentation supporting the loss amount in April 2018; (3) it represented that it could support a recommendation for payment on May 3, 2018; and (4) valued Lamar's loss at 417,925.76 on June 12, 2018, which was the amount paid to Lamar on August 13, 2018. (*Id.* at 15-16.) Under the flexible standard for satisfactory proof of loss, Lamar contends that there is no genuine issue of material fact that Zurich received satisfactory proof of loss by June 12, 2018. (*Id.* at 16.)

Because Zurich received satisfactory proof of loss by June 12, 2018, Lamar argues that there is no genuine dispute of material fact that Zurich failed to pay any of the loss or make a written settlement offer within 30 days. (*Id.* at 16.) Further, Lamar states that Zurich did not tender payment to Lamar until August 13, 2018, which was 62 days later. (*Id.* at 17.) Lamar maintains that Zurich never made a written offer to settle any of the property damage. Therefore, Lamar states that there is no genuine issue of material fact as to whether Zurich failed to pay or make a written offer to settle within thirty days of receiving satisfactory proof of loss. (*Id.*)

Last, Lamar argues that there is no genuine dispute of fact that Zurich's failure to timely pay was "by definition, arbitrary, capricious, or without probable cause." (Doc. 75-3 at 17.) Lamar maintains that Louisiana courts have found an insurers' actions to be arbitrary, capricious or without probable cause when they are unjustified, lack a reasonable basis or are without probable cause or excuse. (*Id.* (citing *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08); 988 So. 2d 186, 206 – 07).) Lamar argues that in *La. Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08); 999 So.2d 1104, the Louisiana Supreme Court explained that under Louisiana Revised Statutes 22:1892,

> an insurer need not pay a disputed amount in a claim for which there are substantial, reasonable and legitimate questions as to the extent of the insurer's liability or of

5

> the insured's loss. However, an insurer must pay any undisputed amount over which reasonable minds could not differ. Any insurer who fails to pay said undisputed amount has acted in a manner that is, by definition, arbitrary, capricious or without probable cause, and will be subject to penalties.

(*Id.* at 18.)

Lamar argues that because, as of June 12, 2018, the $417,925.76 was undisputed and reported by at least two of Zurich's adjustors, the failure to pay within the statutory time frame is by definition arbitrary, capricious and without probable cause. (*Id.* at 19.) Therefore, Lamar asks the Court to find Zurich liable for penalties, attorneys' fees, and costs under Louisiana Revised Statutes 22:1892(B)(1). (*Id.* at 20.)

2. Zurich's response

    A. *Claims under Louisiana Revised Statutes 22:1892.*

Zurich agrees that the elements under Louisiana Revised Statutes 22:1892 are "(i) that the insurer received a satisfactory proof of loss, (ii) that the insurer failed to pay the claim within the applicable statutory period, and (iii) that the insurer's failure to pay was arbitrary and capricious." (Doc. 77 at 9 (citing *Grilleta v. Lexington Ins. Co.*, 558 F.3d 359, 368 (5th Cir. 2009)).) Zurich does not dispute that there are no genuine issues of material fact as to the first two elements. (Doc. 77 at 1-2.) Zurich contends, however, that there is no evidence that establishes the third element of its claim, and that the arbitrary and capricious standard cannot be found on summary judgment because it is a finding of fact that depends on factual determinations of the reasonableness of the insurer's actions. (*Id.* at 9 (citing *Marcelle v. Southern Fidelity Ins. Co.*, 954 F. Supp. 2d 429, 435 (E.D. La. June 19, 2013).) Zurich also argues that because Louisiana Revised Statutes 22:1892 is penal in nature, it must be strictly construed. (*Id.* at 10.)

6

B.  *Zurich's Actions were not arbitrary, capricious or without probable cause.*

Zurich first distinguishes Lamar's reliance on *Louisiana Bag*, explaining that the Louisiana Supreme Court "recognized that when there is a 'reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist.'" (*Id.* (citing *Louisiana Bag*, 999 So. 2d at 1114).) Furthermore, Zurich outlines that the Louisiana Supreme Court found that "whether an insurer's action was arbitrary, capricious or without probable cause is essentially a fact issue to be determined by the trial court and not to be disturbed on appeal absent manifest error." (*Id.* at 11.) Zurich maintains that on the facts of the case, *Louisiana Bag* is distinguishable because the damage found by the adjusters in *Louisiana Bag* was well in excess of the policy limits, whereas in this case it was clearly within the policy limits. Further, Zurich maintains that there were reasonable and legitimate questions about the extent of Lamar's damage and there were revisions made until the final submission of all documents and information from Lamar. (*Id.* at 11.)

Zurich explains the timeline from June 2018-August 2018 as follows:

> On June 11, 2018, Mr. Heering revised the loss schedules based on the additional information provided by Lamar, and on June 12, 2018 he sent an extensive email to Raven and Strader explaining how the various aspects of the remaining loss were categorized and adjusted. On that same day, he sent a report to Schwalbach recommending an additional payment of $417,925.76.42
>
> On July 18, 2018, [Mr.] Schwalbach left Zurich and Lamar's claim was transferred to Executive General Adjuster Mike Mastilak ("Mastilak"). As expert Thomas Segalla has noted, "[i]t is not unusual for the new adjuster, upon the assignment of a particular matter to coduct his own investigation, evaluation, and verification, especially when the prior adjuster left the company." On August 9, 2018, Mastilak completed an analysis and evaluation of the file and emailed deBarros to confirm payee information and advise that an unconditional tender of $417, 925.76 would be issued.

(Doc. 77 at 7-8.)

7

Zurich cites *Cooper v. Liberty Mutual Insurance Co.*, 699 So. 2d 115 (La.App. 4 Cir. 1997) as support for the argument that unconditional tender beyond the statutory period does not automatically entitle an insured to penalties and attorney's fees because there must also be a finding of fact that the insurer was arbitrary and capricious. (*Id.* at 11-12.) Zurich argues that in this case, there is a genuine dispute of material fact as to whether its actions were reasonable. (*Id.*) Zurich points to the expert testimony of Mr. Segella, which states that a review of the records in the claim file shows that there was not a willful refusal to pay the claim nor were Zurich's actions based on an unfounded motivation. (*Id.* at 13 (citing, Doc. 77-1 at 20).) Further, Zurich outlines that the evidence supports the conclusion that it did not act in an arbitrary and capricious manner because Mr. Segalla concludes, "[B]ased upon a reasonable degree of professional certainty, including the standards, customs, and practices in the insurance industry, that Zurich's claims representatives acted as a reasonable, prudent insurer would have acted under the totality of the circumstances and acted consistent with the standards, customs, and practices in the insurance industry." (*Id.*)

    C. *Lamar's claim regarding written offers to settle is misplaced.*

Zurich argues that Lamar's arguments regarding the "failure" to make a written offer to settle are without merit because: (1) there is no evidence that making an unconditional tender rather than a written offer to settle was arbitrary capricious or without probable cause; and (2) there was nothing to settle once Zurich made an unconditional tender for the amounts owed for the property damage. (*Id.* at 13-14.)

  3.  <u>Lamar's reply</u>

In reply, Lamar argues that because Zurich fails to dispute any of the material facts of the case, it cannot dispute that Lamar is entitled to summary judgment. (Doc. 78 at 1.) Further, Lamar states that Zurich cannot rely on legal argument from its expert to defeat summary

8

judgment. (Doc. 78 at 1-2.) Lamar contends that the controlling law is set by *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729 (5th Cir. 2010) and *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08); 999 So. 2d 1104, not the earlier decided cases relied upon by Zurich. (*Id.* at 2.) Based on the holdings in *Versai* and *Louisiana Bag*, as applied to the facts of the case, Lamar contends it is entitled to summary judgment. (*Id.* at 3.)

Lamar also argues that there is no genuine issue of material fact as to Lamar's separate and independent claim under 22:1892(A)(4) for Zurich's failure to make a written offer to settle Lamar's property damage claim. (*Id.* at 4.) Because Zurich does not dispute the material facts but merely argues the law, Lamar contends that summary judgment is appropriate. (*Id.*) Lamar states that Louisiana Revised Statutes 22:1892 requires both an attempt to settle and prompt payment of claims and rejects Zurich's arguments to the contrary. (*Id.* at 5.)

b.  *Applicable law: Louisiana Revised Statutes 22:1892(A)(1), (A)(4), and (B)(1)*

Louisiana Revised Statutes 22:1892(A)(1), (A)(4) and (B)(1), entitled, "Payment and adjustment of claims, policies other than life and health and accident; personal vehicle damage claims; extension of time to respond to claims during emergency or disaster; penalties; arson-related claims suspension," sets out:

> A. (1) All insurers issuing any type of contract, . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damage claims made in accordance with this Paragraph.
>
> . . .
>
> (4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim.
>
> B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty

9

days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) of this Section when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

La. R.S. 22:1892.

In interpreting a statute, the Court looks first to its plain meaning. As the Supreme Court of Louisiana instructs:

> [T]he interpretation of any statutory provision starts with the language of the statute itself. *In re Succession of Faget,* 10–0188, p. 8 (La.11/30/10), 53 So.3d 414, 420. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. Civ.Code art. 9; La.Rev.Stat. § 1:4; *In re Clegg,* 10–0323, p. 20 (La.7/6/10), 41 So.3d 1141, 1154. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. La. Civ.Code art. 11; La.Rev.Stat. § 1:3; *see also Snowton v. Sewerage and Water Bd.,* 08–0399, pp. 5–6 (La.3/17/09), 6 So.3d 164, 168.
>
> Words and phrases must be read with their context and construed according to the common and approved usage of the language. La.Rev.Stat. § 1:3. "The word 'shall' is mandatory and the word 'may' is permissive." *Id.* Further, every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. *Colvin v. Louisiana Patient's Compensation Fund Oversight Bd.,* 06–1104, p. 6 (La.1/17/07), 947 So.2d 15, 19; *Moss v. State,* 05–1963, p. 15 (La.4/4/06), 925 So.2d 1185, 1196. Consequently, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found. *Colvin,* 06–1104 at p. 6, 947 So.2d at 19–20; *Moss,* 05–1963 at p. 15, 925 So.2d at 1196.

*Oubre v. Louisiana Citizens Fair Plan*, 2011-0097 (La. 12/16/11), 79 So. 3d 987, 997. Further, as applied to Louisiana Revised Statutes 22:1892, "[t]his statute must be strictly construed because it is penal in nature. *Richardson v. GEICO Indem. Co.*, 2010-0208 (La. App. 1 Cir. 9/10/10), 48 So. 3d 307, 314, *writ denied,* 2010-2473 (La. 12/17/10), 51 So. 3d 7.").

The Court concludes that the plain language of subsection (A) provides separate affirmative duties on the insurer when paying claims to its insured and/or third parties. Subsection (A)(1) states an insurer "shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured." Whereas subsection (A)(4) states, "All insurers shall make a written offer to settle any property damage claim, *including a third-party claim*, within thirty days after receipt of satisfactory proofs of loss of that claim." As such, subsection (A)(4) extends obligations beyond first party insureds to a third-party claim. Because the subsections provide separate affirmative duties, an insured can bring a claim for violation of any of the subsections.

Subsection (B)(1) provides a penalty for any insurer who is found to have arbitrarily and capriciously violated one or more of the subsections (A)(1), (A)(2), or (A)(4). The first clause of subsection (B)(1) inclusively lists, "Failure to make such payment within thirty days . . . failure to make a written offer to settle any property damage claim . . . or failure to make such payment within thirty days after written agreement or settlement" thereby setting out the affirmative duties that, if breached could subject the insurer to penalties. The second clause of subsection (B)(1) imposes "a penalty" on an insurer "when such failure is found to be arbitrary, capricious, or without probable cause." Importantly, this clause imposes "a penalty" for an insurer's failure to comply with one or more of the affirmative duties set forth in the first clause. As such, the Court concludes that for any given property damage claim by an insured, an insurer has multiple

11

affirmative duties to promptly pay or settle that claim. The failure to comply with one or more of those duties can subject that insurer to a penalty, if the insurer's failure is found to be arbitrary, capricious or without probable cause. In other words, the plain language of the statute does not support the conclusion that an insured can recover statutory penalties for each of an insurer's failures to comply with its affirmative duties. Instead, the statute provides ***a penalty*** for any and all of an insurer's failures when handling a property damage claim.

Courts in Louisiana have set forth that an insured seeking to recover the statutory penalties under Louisiana Revised Statutes 22:1892 must establish three elements: "(i) that the insurer received a satisfactory proof of loss, (ii) that the insurer failed to pay the claim [or failed to make a written offer of settlement] within the applicable statutory period, and (iii) that the insurer's failure to pay was arbitrary and capricious." *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 368–69 (5th Cir. 2009). "Satisfactory proof of loss" is a flexible standard that means "the insurer must receive sufficient information to act on the claim." *Id.* In this case, there are no genuine issues of material fact that Zurich received satisfactory proof of loss by June 12, 2018 and did not tender payment on the claim until August 3, 2018, which is outside the applicable statutory period.

The parties' dispute instead centers on the third element, whether the failure to tender payment within the applicable statutory period was arbitrary and capricious. Whether an insurer's conduct is arbitrary and capricious is a finding of fact. *Id.* The Louisiana Supreme Court has explained:

> [T]he New Oxford English American Dictionary defines an arbitrary act as one based on random choice or personal whim, rather than reason or system, and capricious as given to sudden and unaccountable changes in behavior. The phrase arbitrary, capricious, or without probable cause is synonymous with vexatious, and a vexatious refusal to pay means unjustified, without reasonable or probable cause

12

or excuse. Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense.

This court has also stated that penalties should be imposed only when the facts negate probable cause for nonpayment. An insurer's conduct depends on the facts known to the insurer at the time of its action, and this court has declined to assess penalties when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. Specifically, when there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist. In these instances, when there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause.

While an insurer need not tender payment for amounts that are reasonably in dispute, this court has explicitly found that there can be *no good reason*—or no probable cause—for withholding an undisputed amount. Where there is a substantial, reasonable and legitimate dispute as to the extent or amount of the loss, the insurer can avoid the imposition of penalties *only* by unconditionally tendering the undisputed portion of the claim . . . Where the exact extent of the damages is unclear, an insurer must tender the reasonable amount which is due. We have defined the amount that is due as a figure over which reasonable minds could not differ.

. . .

In sum, an insurer need not pay a disputed amount in a claim for which there are substantial, reasonable and legitimate questions as to the extent of the insurer's liability or of the insured's loss. However, an insurer must pay any undisputed amount over which reasonable minds could not differ. Any insurer who fails to pay said undisputed amount has acted in a manner that is, by definition, arbitrary, capricious or without probable cause and will be subject to penalties therefore on the difference between the amount paid or tendered and the amount found to be due.

*Louisiana Bag Co. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So. 2d 1104, 1114–16; *see also Grilletta*, 558 F.3d at 369 ("A failure to pay a claim is arbitrary and capricious if the insurer's refusal to pay is vexatious. The Louisiana Supreme Court defined vexatious in this context as unjustified, without reasonable or probable cause or excuse. The court concluded that this standard describe[s] an insurer whose willful refusal of a claim is not based on a good-faith defense. As the Louisiana Supreme Court recently stated, there can be no good reason—or no

13

probable cause—for withholding an undisputed amount.") (internal quotation marks and citations omitted). As the Fifth Circuit explained in *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 739 (5th Cir. 2010), the Louisiana Supreme Court's holding in *Louisiana Bag* "recognized that '[a]ny insurer *who fails to pay [an] undisputed amount* has acted in a manner that is, by definition, arbitrary, capricious or without probable cause ....' Thus, the failure to pay an undisputed amount is a per se violation of the statute."

However, the Louisiana Supreme Court has also cautioned that summary judgment is rarely appropriate when determining if an insurers actions were arbitrary and capricious. In *Merwin v. Spears*, 2012-0946 (La. 6/22/12), 90 So. 3d 1041, 1042, the Louisiana Supreme Court reversed a district court's grant of summary judgment explaining:

> [F]or purposes of plaintiffs' penalty claim, the issue is whether Farmers' failure to make timely payment was arbitrary, capricious, or without probable cause. La. R.S. 22:1892. We conclude there are genuine issues of material fact as to whether Farmers' initial decision to deny the claim, based on its investigation and consultation with plaintiffs' expert, was reasonable under the totality of the facts. Therefore, the district court erred in granting summary judgment on this issue.

*Merwin v. Spears*, 2012-0946 (La. 6/22/12), 90 So. 3d 1041, 1042.

c. *Analysis*

Other than the undisputed fact that Zurich waited more than 30 days from receiving a satisfactory proof of loss before paying the claim, Lamar provides no evidence that Zurich's failure to pay the $417,925.76 within the statutory time period was arbitrary, capricious, or without probable cause. Similarly, other than the undisputed fact that Zurich never made a settlement offer to Lama of any kind, Lamar points the Court to no evidence that Zurich's failure to make a written offer of settlement was arbitrary, capricious, or without probable cause. Instead, Lamar asks the Court to apply the per se violation rule set forth in *Louisiana Bag,* arguing that because Zurich failed to pay an undisputed amount or make a written offer of

settlement within 30 days, it "acted in a manner that is, by definition, arbitrary, capricious or without probable cause." *Louisiana Bag Co. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So. 2d 1104, 1116. In opposition, Zurich argues that there is no evidence in support of the argument that it was arbitrary, capricious, and without probable cause and points to its expert witness's conclusions that it acted in a reasonably prudent manner in investigating and adjusting the claim.

Although Zurich is correct that Lamar did not present evidence to show that it acted in an arbitrary, capricious, or without probable cause, the Court finds that the per se rule announced by the Louisiana Supreme Court in *Louisiana Bag* applies in this case. Application of the per se rule is appropriate because Zurich does not raise a legitimate question of fact regarding why payment was not made within 30 days of June 12, 2018. Zurich provides as an explanation that on "July 18, 2018, [Mr.] Schwalbach left Zurich and Lamar's claim was transferred to Executive General Adjuster Mike Mastilak." (Doc. 77 at 7.) This, indeed, is the information relied upon by Zurich's expert to support his opinion that Zurich's conduct was reasonably prudent. (Doc. 77-1 at 22-23.)

Had Mr. Schwalbach left Zurich prior to the thirty-day period expiring, whether or not the delay in paying the claim was reasonable would be a material question of fact and might provide support for the expert's opinion and a denial of the Motion. However, Mr. Schwalbach left *after* the thirty-day period expired and no other explanation or facts were provided by Zurich as to why the claim was not paid within thirty days.

Zurich's failure to provide an explanation as to why it did not pay within the thirty-day period is the definition of the "unjustified without reasonable or probable cause or excuse" behavior the Louisiana Supreme Court held was a per se violation of Louisiana Revised Statutes 22:1892. *Louisiana Bag*, 999 So. 2d at 1114; *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597

15

F.3d at 739; *see also Kief Hardware, Inc. v. Hartford Fire Ins. Co.*, No. CV 16-15762, 2018 WL 2289902, at *2 (E.D. La. May 18, 2018). ("In the absence of reasonable and legitimate questions as to the extent of the insurer's liability, an insurer who fails to pay the undisputed amount has acted in a manner that is, by definition, arbitrary, capricious, or without probable cause, and will be subject to penalties under the statute."). Therefore, Zurich will be subject to penalties under the statute for its failure to pay the undisputed amount within the thirty-day period.

Lamar also seeks partial summary judgment on the issue of whether Zurich's failure to make a written offer of settlement within thirty-days justifies a second imposition of penalties under Louisiana Revised Statutes 22:1892. Zurich responds that because it tendered payment for the undisputed amount, albeit untimely, a written offer of settlement was not necessary in this case. Lamar, in reply, argues that it is bringing a separate claim under Louisiana Revised Statutes 22:1892(A)(4), which independently allows for the imposition of penalties and attorney's fees for the failure to make a written offer to settle the property damage claim. Lamar states that not imposing separate penalties for both (A)(1) and (A)(4), would make section (A)(4) superfluous.

As previously explained, the plain language of the statute does not support the conclusion that the penalty is imposed for each failure to comply with each affirmative duty. Instead, the penalty imposed in subsection (B)(1) applies if the insurer fails to comply with one, more, or all of its affirmative duties when handling the insured's property damage claim. *Bourg v. Safeway Ins. Co. of Louisiana*, 2019-0270 (La. App. 1 Cir. 3/5/20) ("The statute mandates the imposition of penalties and attorney's fees when an insurer fails to pay a claimant or make a written offer to settle a property damage claim in accord with the statutory provisions.")

Lamar is correct that there are no genuine disputes of material facts regarding whether Zurich failed to make a written offer of settlement within thirty days of June 12, 2018, and for

the reasons given above, the Court concludes that Zurich's failure was arbitrary and capricious under the *per se* rule announced in *Louisiana Bag*. However, the Court holds that Lamar is limited to collecting "a penalty" for Zurich's failure to comply with its affirmative duty to either tender payment within thirty days or make a written offer of settlement, or both. Under the plain language of the statute, and given that penal statutes are strictly construed, as a matter of law, Lamar cannot collect duplicative statutory damages based on Zurich's mishandling of its property damage claim.

## CONCLUSION

Accordingly,

IT IS ORDERED that the *Motion for Partial Summary Judgment Regarding Zurich's Untimely August 13, 2018 Payment to Lamar and Zurich's Failure to Ever Make Any Written Offers to Settle Lamar's Property Damage Claim* (Doc. 75) filed by Lamar Advertising Company is GRANTED in part and DENIED in part.

Signed in Baton Rouge, Louisiana, on July 20, 2020.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**