UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LAMAR ADVERTISING
COMPANY

VERSUS

ZURICH AMERICAN
INSURANCE COMPANY

CIVIL ACTION

NO. 18-1060-JWD-RLB

## RULING AND ORDER

This matter is before the Court on the *Motion for Partial Summary Judgment Regarding Zurich's Untimely January 22, 2018 Payment to Lamar* (Doc. 99) filed by Plaintiff Lamar Advertising Company ("Lamar" or "Plaintiff"). Zurich American Insurance Company ("Zurich" or "Defendant") opposes the motion. (Doc. 114.) Lamar filed a reply. (Doc. 127.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is denied.

**I.   Background**

    **A.  Relevant Facts**

Lamar contracted with Zurich to obtain insurance for its business locations. Zurich issued and delivered Policy No. MLP 4856733-06 ("Policy") to Lamar at 5551 Corporate Boulevard, Baton Rouge, Louisiana 70808. (*Lamar's Statement of Material Facts That Are Not in Dispute* ("*SMF*") ¶ 1, Doc. 99-1; *Zurich's Opposing Statement of Material Facts* ("*OSMF*") ¶ 1, Doc. 114-1.)[1] The Policy was in effect from March 1, 2017 to March 1, 2018. (*SMF* ¶ 2; *OSMF* ¶ 2.) Lamar is the "First Named Insured" under the Policy. (*SMF* ¶ 3; *OSMF* ¶ 3.) Any loss payable

---

[1] Many of the facts in this case are undisputed. Generally speaking, when both the *SMF* and *OSMF* are cited, the fact is undisputed, and the statement is taken almost verbatim from the *SMF*.

under the Policy is payable to Lamar, unless otherwise directed by Lamar. (*SMF* ¶ 4; *OSMF* ¶ 4.) Lamar's Puerto Rico office is an "Insured Location" under the Policy. (*SMF* ¶ 5; *OSMF* ¶ 5.)

Hurricane Maria made landfall in Puerto Rico on September 20, 2017 as a Category 4 hurricane, and damaged Lamar's Puerto Rico office and its contents. (*SMF* ¶ 6; *OSMF* ¶ 6.) Hurricane Maria was a "Named Storm" as defined by the Policy.[2] (*Id.*) Zurich received notice that Lamar's Puerto Rico office was damaged by Hurricane Maria on September 22, 2017. (*SMF* ¶ 7; *OSMF* ¶ 7.)

Thereafter, Zurich's representatives inspected damages caused by Hurricane Maria at Lamar's Puerto Rico office four times in October of 2017. (*SMF* ¶ 8; *OSMF* ¶ 8.) On October 11, 2017, Zurich's Independent Adjuster, Patrick Menke, made an initial visit to the property. (Doc. 99-5 at 4.) On October 18, 2017, Menke inspected the warehouse and office along with Ricky Raven and Jacie Strader of Lamar, and representatives of Marsh Brokerage and Target Development Corporation. (*Id.*) On October 23, 2017, Menke inspected the property with Robert Pumphrey of J.S. Held and Joey Wild and Manuel Papadakis of Target Development Corporation. (*Id.*) On October 31, 2017, Menke re-inspected Lamar's office and warehouse, along with representatives from J.S. Held, Lamar, and Target. (*Id.*)

On October 13, 2017, Zurich received the following documents from Lamar: (a) "before" hurricane photos; (b) "after" hurricane photos; (c) a copy of the lease agreement for Lamar's Puerto Rico office; (d) a cost summary of improvements and furniture, fixtures, and equipment in the office prior to the Hurricane (totaling more than $1.3 million); (e) an invoice for 80%

---

[2] "Named Storm" is defined in the policy as "Any storm or weather disturbance that is named by the U.S. National Oceanic and Atmospheric Administration (NOAA) or the U.S. National Weather Service or the National Hurricane Center or any comparable worldwide equivalent." (Doc. 99-3 at 68.)

2

cleanup and 75% of gypsum demolition; and (f) an e-mail outlining the cost for cleanup and gypsum demolition. (*SMF* ¶ 9; *OSMF* ¶ 9; Doc. 99-8 at 28.)

Also, on October 13, 2017, Lucas Theesfeld, the initial claims adjuster from Zurich, wrote in an email that Lamar's Hurricane Maria loss "is a large loss for sure" and that he "just got paperwork from our insured, showing damages well in excess of $1,300,000.00." (Doc. 99-8 at 14–15.) Responsibility for this claim was subsequently transferred from Theesfeld to Eric Schwalbach, Zurich's National General Adjuster, because it was a large loss. (Doc. 114-2 at 9.)

On November 7, 2017, Schwalbach, received an estimate from Lamar that it would cost $882,964 to remediate and repair the Hurricane damage to Lamar's Puerto Rico office. (*SMF* ¶ 10; *OSMF* ¶ 10.) On November 10, 2017, Zurich's construction consultant, J.S. Held, issued a preliminary report and Rough Order of Magnitude ("ROM") estimate providing that the damage sustained by Lamar's Puerto Rico office totaled $1,032,335. (Menke Dep., Doc. 99-7 at 15, 17.)

As to the ROM, Lamar points out that Menke testified that he "frequently" relied on ROM estimates to make initial payments of undisputed amounts to insureds while he was working for Zurich and other insurance companies. (Menke Dep., Doc. 99-7 at 18.) On the other hand, Zurich cites to Schwalbach's deposition wherein he explained that the ROM was not an estimate and that J.S. Held is not an adjuster. (Schwalbach Dep., Doc. 114-3 at 6–8.) Specifically, he testified that: "A rough order of magnitude from a building consultant is, hey, I looked at this, and I think it's x amount, but I don't have enough information yet. That's what a rough order of magnitude is. It's not an estimate... It's what [potential damages] could possibly be based what information they have to date." (*Id*. at 7–8.)

On December 1, 2017, Menke advised Schwalbach that J.S. Held's ROM estimate exceeded Lamar's November 7, 2017 estimate. (Doc. 99-6 at 25.) Schwalbach then instructed

3

Menke to "get the [Actual Cash Value]" of Lamar's loss so that Zurich could "get some money out" to Lamar. (*Id*. at 29.)

On December 6, 2017, Schwalbach received a "Follow-up Report" from J.S. Held regarding Lamar's Hurricane Maria loss. (*SMF* ¶ 11; *OSMF* ¶ 11.) J.S. Held's "Follow-Up Report" provided, in part, as follows:

> Please consider this report as a follow up to our initial report dated 11/10/2017.
>
> As you are aware, our initial Rough Order of Magnitude estimate for the damage sustained by the Lamar Advertising offices in Guaynabo, Puerto Rico during Hurricane Maria totaled $1,032,335, included in Appendix A of this report.
>
> We have also received and reviewed an estimated cost of repairs submitted by Lamar in the amount of $882,964 the summary of which is included in Appendix B of this report. We have also had a follow up conversation with Ricky Raven with Lamar and his lead architect, Joey Wilde and we feel that estimate as presented represents a fair proposal for repairs, understanding that the original buildout was completed two years ago for a total of $1,206,135 and a certain amount of that buildout is salvageable.
>
> We do however recommend holding an additional 5% ($45,000) in reserve to cover any unforeseen costs.
>
> Finally, again given that the buildout is relatively new at two years old, we recommend applying a ten (10) percent depreciation to arrive at an Actual Cash Value of $794,668.

(*Id.*)

Also, on December 6, 2017, Zurich agreed that Lamar's November 7, 2017 estimate of $882,964 for remediation and repairs to Lamar's Puerto Rico office was reasonable and instructed Lamar that it could proceed with repairs. (*SMF* ¶ 12; *OSMF* ¶ 12.)

On January 17, 2018, Schwalbach received a report and recommendations and supporting documentation from its Independent Adjuster, Menke. (Doc. 114-2 at 14.) Schwalbach reviewed Menke's report and supporting documentation and requested payment two days later. (*Id.*)

4

Schwalbach explained in his deposition that in addition to the inspections Zurich had done, the receipt of Lamar's estimate, J.S. Held's ROM, and the Actual Cash Value ("ACV"), he still needed Menke's report before he could issue a payment to Lamar. (Schwalbach Dep., Doc. 114-3 at 9–10.) He testified:

> Q. So, with all that, what additional information do you or Patrick Menke or anyone else need to pay that claim?
>
> A. We need confirmation of the report from Patrick to tell me that I should be paying it or at least to discuss with me that I should be paying it.
>
> Q. But why do you need a report?
>
> A. Because I need documentation to show why I am doing something. I don't – just because my builder says, here is the number, I can't just go pay it.

(*Id*. at 9–10.)

On January 22, 2018, Zurich issued a payment of $544,668.00 to Lamar for property damages. (*SMF* ¶ 13; *OSMF* ¶ 13.) Zurich did not make any payments to Lamar for damages caused by Hurricane Maria until this January 22, 2018 payment. (*Id.*) Under the Policy, a $250,000 deductible applies to all of Lamar's Hurricane Maria losses. (*SMF* ¶ 14; *OSMF* ¶ 14.) Zurich subtracted the $250,000 deductible from the January 22, 2018 check it sent Lamar. (*Id.*)

### B. Defendant's Statement of Opposing Facts

The Court must next determine the admissibility of the two additional facts Defendant submitted in its *Opposing Statement of Material Facts* ("*OSMF*"), (Doc. 114-1). These facts provide:

> 1. Whether Zurich received "satisfactory proof of loss" for its January 22, 2018 payment, as required by La. R.S. 22:1892, before it received Independent Adjuster Patrick Menke's ("Menke") report and recommendations and supporting documentation on January 17, 2018.
>
> 2. Whether Menke's January 17, 2018 report and recommendations and supporting documentation were reasonably necessary under the standards, customs, and

5

practices in the insurance industry to verify and valuate the payment Zurich made to Lamar on January 22, 2018.

(*OSMF*, Doc. 114-1 at 2.)

Plaintiff argues that these facts must be stricken because they: (1) are legal questions in violation of Local Rule 56(c); and (2) cite to inadmissible evidence—Thomas Segalla's affidavit and report. (Doc. 127-1 at 1–2.)

As to Plaintiff's first argument, that these facts are legal questions, the Court agrees. *See* Local Rule 56(c) (requiring a party opposing summary judgment to submit "a separate, short, and concise statement of material facts."); *N & D E Co. v. Gustings*, No. 90-4445, 1992 WL 77581, at *6 (E.D. La. Apr. 9, 1992) (finding the statement that "whether Franklin has copied the 1980, 1981, or 1982 posters in violation of copyright law" was a vague legal question); *Venable v. EnLink Midstream Operating, LP*, No. 18-847-SDD-RLB, 2020 WL 853518, at *6 (M.D. La. Feb. 20, 2020). As such, the Court will disregard these two additional questions included by Zurich. However, the Court will still consider the evidence cited therein for purposes of this motion, subject to the limitation discussed below.[3]

As to Plaintiff's second argument regarding Segalla's testimony, the Court notes that in advance of its consideration of the instant motion, it previously granted in part and denied in part Lamar's motion to exclude the testimony of Segalla (Doc. 121).[4] Lamar's motion was granted in that Segalla is precluded from offering expert testimony on the ultimate legal questions to be determined by the trier of fact. This includes parts of Segalla's report in which he opines that Zurich acted reasonably and in good faith. Lamar's motion was denied in that Segalla's report

---

[3] The Court notes that it has discretion to disregard technical deficiencies in the opponent's statement of material facts or to grant leave to the opponent to cure the deficiencies. *See Porter v. Dauthier*, 2015 WL 5611647, at *8, *13. In this case, the Court finds it unnecessary to do so.

[4] On February 23, 2021, the Court issued an oral ruling on Lamar's motion to exclude (Doc. 121) with a written ruling to be forthcoming.

and testimony about insurance industry customs, practices, and standards for claim handling are permissible. Therefore, the Court will consider Segalla's report to the extent that it is in accordance with its prior ruling.

### C. Zurich's Expert Report

Segalla, Zurich's insurance expert, testified that Menke's report was reasonably necessary under the standards, customs, and practices in the insurance industry, to verify and valuate a claim. (Doc. 114-2 at 14.) Segalla's report states in relevant part:

> Specifically, to the extent that Lamar, in this litigation, contends that J.S. Held's Cost Summary or its Rough Order of Magnitude (dated 11/10/17, and 12/6/17 respectively) constitutes a "Proof of Loss" that triggers Zurich's obligation to pay its building claim, such a position is inconsistent with the standards, customs, and practices in the insurance industry. Under the standards, customs, and practices in the insurance industry, an insurer should not pay a claim without proper validation or verification, including because the interests of other policy holders and shareholders must also be taken into consideration and protected. Furthermore, under the standards, customs, and practices in the insurance industry, a claims adjuster may need to consult with various experts, such as in this case, a building consultant and a forensic accountant. However, it is understood in the insurance industry that these experts do not supplant the role of the insurer, specifically the claims adjuster (here Eric), who is responsible for making the claims determinations and approvals as to whether the policy requires payment for the loss, and if so, in what amount. Neither a building consultant nor an independent adjuster, supplants the insurer's claims adjuster, who is entitled to critically evaluate, validate, and verify (and accept and/or adjust as may be necessary) the submissions of its experts, including here, the building consultant's rough order of magnitude. It should also be noted that in addition, from an insurance regulatory standpoint, a building consultant could not replace the role of a claims adjuster or an independent adjuster in adjusting the claim where the building consultant is not a licensed independent adjuster, as was the case with Rob and J.S. Held with respect to Puerto Rico.

(Doc. 114-2 at 14–15.)

Based on the above, Segalla concludes that the timing of the payment of Lamar's building claim was consistent with the standards, customs, and practices in the insurance industry in light of the totality of the circumstances. (*Id*. at 15.)

7

## II. Relevant Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

## III. Discussion

### A. Parties' Arguments

The instant motion centers on the applicability of La. R.S. 22:1892. Both parties agree that to recover under this statute, an insured must prove that: (1) the insurer received satisfactory proof of the loss; (2) the insurer failed to pay the claim within thirty days of receiving satisfactory proof of loss; and (3) the insurer's failure to pay the claim was arbitrary, capricious, or without probable cause. (Doc. 102-1 at 19; Doc. 114 at 5.)

8

**1. Lamar's Motion**

Lamar argues that Zurich is liable for penalties, attorneys' fees, and costs under La. R.S. 22:1892 because all three of the above elements are met. (Doc. 102-1 at 19.) It first contends that there is no genuine dispute of fact that Zurich received "satisfactory proof of loss" no later than December 6, 2017. (*Id.*) According to Lamar, "satisfactory proof of loss" is a flexible requirement, that does not need to be in a formal style and is satisfied by an insurer "receiv[ing] sufficient information to act on the claim." (*Id.* (citing *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 368 (5th Cir. 2009)).) As examples of satisfactory proof of loss, Lamar outlines that Louisiana courts have accepted: a handwritten estimate of the cost of repairs (*id.* at 19–20 (citing *Sevier v. United States Fid. & Guar. Co.*, 497 So. 2d 1380 (La. 1986)); a personal inspection of an insured's property by an independent adjuster (*id.* at 20 (citing *J.R.A. Inc. v. Essex Ins. Co.*, 2010-0797 (La. App. 4 Cir. 5/27/11); 72 So. 3d 862, 881)); proof of insurance, photographs, and salvage information (*id.* (citing *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 2011-1355 (La. App. 3 Cir. 4/4/12); 88 So. 3d 1245)); and an independent adjuster's opportunity to discover but failure to do so (*id.* (citing *Aghighi v. Louisiana Citizens Prop. Ins. Corp.*, 2012-1096 (La. App. 4 Cir. 6/19/13), 119 So. 3d 930, 934).)

In this case, Lamar argues that Zurich received satisfactory proof of loss because Zurich's agents had inspected the damaged property at least four times in October 2017 and received: (1) pictures from Lamar showing significant damages to the office and its contents on October 13, 2017; (2) paperwork from Lamar showing damages in excess of $1,300,000 on October 13, 2017; (3) an estimate from Lamar of $882,964 in damages to its office on November 7, 2017; (4) a higher ROM estimate of the damages prepared by its own construction consultant on November 10, 2017; and (5) an ACV calculation of the loss from its own construction consultant

9

on December 6, 2017. (*Id.* at 20–21.) Under the flexible standard for satisfactory proof of loss, Lamar contends that there is no genuine issue of material fact that Zurich received satisfactory proof of loss by December 6, 2017. (*Id.* at 21.)

Lamar then avers that there is no genuine dispute of material fact that Zurich failed to pay any of the loss within 30 days of receiving satisfactory proof of loss on December 6, 2017, since it did not tender payment until January 22, 2018 (47 days later). (*Id.*)

Lastly, Lamar argues that there is no genuine dispute of fact that Zurich's failure to timely pay was "by definition, arbitrary, capricious, or without probable cause." (*Id.*) Lamar maintains that Louisiana courts have found an insurers' actions to be arbitrary, capricious or without probable cause when they are unjustified, lack a reasonable basis, or are without probable cause or excuse. (*Id.* at 22 (citing *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08); 988 So. 2d 186, 206–07).) According to Lamar, the Louisiana Supreme Court in *La. Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08); 999 So. 2d 1104, explained that under La. R.S. 22:1892,

> an insurer need not pay a disputed amount in a claim for which there are substantial, reasonable and legitimate questions as to the extent of the insurer's liability or of the insured's loss. However, an insurer must pay any undisputed amount over which reasonable minds could not differ. Any insurer who fails to pay said undisputed amount has acted in a manner that is, by definition, arbitrary, capricious or without probable cause, and will be subject to penalties.

(*Id.* at 23.)

In sum, Lamar asks the Court to find Zurich liable under La. R.S. 22:1892 because, as of December 6, 2017, Zurich had received satisfactory proof of loss and did not issue a payment until 47 days later, which is by definition arbitrary, capricious, and without probable cause. (*Id.* at 25.)

**2. Zurich's Opposition**

Preliminarily, Zurich contends that summary judgment is not appropriate when a claim for bad faith penalties depends on factual determinations concerning the reasonableness of the insurer's actions. (Doc. 114 at 5 (citing *Hartenstein v. State Farm Fire and Cas. Ins. Co.*, No. 07–4594, 2008 WL 2397713, at *3 & n.22 (E.D. La. June 10, 2008)).) It also points out that because La. R.S. 22:1892 is penal in nature, it must be strictly construed. (*Id.* at 6.)

Zurich then raises an issue with the first element of the statute—satisfactory proof of loss. It contends that there are genuine issues of material fact in dispute as to whether and when it received satisfactory proof of loss from Lamar. Specifically, it argues that it did not receive satisfactory proof of loss until it received Menke's January 17, 2018 report and recommendation. (*Id.* at 6.) Zurich avers:

> In its previous Motion for Partial Summary Judgment Regarding Zurich's Untimely August 13, 2018 Payment to Lamar (R. Doc. 75), Lamar argued that it was entitled to penalties and attorney's fees under La. R.S. 22:1892 because the June 12, 2018 report and recommendations of Zurich's independent adjuster constituted "satisfactory proof of loss" for that payment, and Zurich's payment was made more than thirty days after it received the report. Lamar now takes the position that Zurich should have tendered payment *before* it received its Independent Adjuster's report because the repair estimate from its own contractor, the ROM from J.S. Held, and several visual inspections constituted satisfactory proof of loss. Lamar's argument is misplaced, for several reasons.

(*Id.*) (emphasis by Zurich.)

First, Zurich points to Schwalbach's testimony in which he makes "clear that the documents and information Zurich received prior to the report from its Independent Adjuster did not constitute satisfactory proof of loss." (*Id.* at 7–8.) Zurich then argues that Lamar's contractor's estimate of $882,964 in repair damages could not be accepted on its face without further validation and verification by its adjusters. As to the ROM, Zurich reiterates that J.S. Held was not an adjuster, and the ROM was not an estimate. (*Id.* at 6–7 (citing Schwalbach Dep.,

11

Doc 114-3 at 6–8).) As such, even though Zurich had done four property inspections, received Lamar's repair estimate, and J.S. Held's ROM, Schwalbach still needed Menke's report and recommendations before he could verify the amount owed and issue a payment. (*Id.* at 7 (citing Schwalbach Dep., Doc 114-3 at 9–10).) Therefore, it contends that it did not receive satisfactory proof of loss until January 17, 2018, when Schwalbach received Menke's report.

Second, Zurich argues that its actions did not violate La. R.S. 22:1892 and were consistent with the standards, customs, and practices of the insurance industry. (*Id.*) Relying on Segalla's report, Zurich contends that Schwalbach followed the standard practice in the insurance industry when he waited for the report, recommendation, and supporting documentation from Menke to evaluate and verify that a payment was owed to Lamar. (*Id.* at 9.) It further emphasizes that Lamar's repair estimate was not undisputed until Schwalbach completed his review of Menke's report and recommendation. "Far from being a case of bad faith," the evidence shows "that Zurich worked diligently to gather and process the information needed to pay Lamar everything it was owed." (*Id.*)

Finally, Zurich argues that the cases Lamar relies on are easily distinguishable from the case at hand. (*Id.* at 10–16.) Accordingly, Zurich concludes that Lamar's motion must be denied because Lamar's assertion that it had satisfactory proof of loss by December 6, 2017 is "clearly contradicted by both the facts and the law." (*Id*. at 16–17.)

### 3. Lamar's Reply

In reply, Lamar argues that because Zurich fails to dispute any of the material facts of the case, it cannot dispute that Lamar is entitled to summary judgment. (Doc. 127 at 1.) Further, Lamar states that Zurich cannot rely on its expert's report to alter the undisputed material facts in this case. (*Id*. at 1–2.) Lamar contends that the sole legal issue raised by Zurich is—"whether, as

12

a matter of Louisiana law, an insurance company who has received enough information to pay undisputed amounts to its insured can nevertheless insist on receiving a formal report from its adjuster before paying anything to its insured"—to which it answers "no." (*Id*.)

Lamar then re-iterates that there is no genuine issue of material fact that Zurich received "satisfactory" proof that Lamar sustained at least a $544,668 loss by December 6, 2017. (*Id*. at 2–3.) It also claims that Menke's four-month delay in providing Schwalbach with his report and recommendation was unjustified and is contrary to Louisiana's "flexible" satisfactory proof of loss standard. (*Id.* at 3–7.) Lamar argues that Zurich is responsible for Menke's acts and omissions and cannot insulate itself from liability because Menke failed to timely file his report. (*Id.* at 6.)

Next, Lamar contends that Zurich's argument "that the 'ROM was not an estimate' is contrary to Zurich's own Rule 30(b)(6) testimony" and ignores the other undisputed facts which "clearly establish that Zurich received satisfactory proof of loss regardless of the ROM." (*Id*. at 7–8 (citing Zurich Opp., Doc. 114 at 6).) As evidence to support this contention, Lamar cites to: (a) Zurich's in-house adjuster's statement that Lamar's damages were "well in excess of $1,300,000.00" (*id*. (quoting Doc. 99-8 at 14–15)); (b) the fact that Zurich had inspected the damage to the office four times (*id*.); (c) Zurich's receipt of Lamar's paperwork, pictures, and estimate (*id*.); and (d) the fact that Zurich had the exact ACV calculation that its in-house adjuster admitted he needed to "get some money out" to Lamar on December 6, 2017 (*id*. (quoting Doc. 99-6 at 29–30)).

Finally, Lamar argues that "the cases Zurich attempts to distinguish are not distinguishable at all – and, in fact, demonstrate exactly why Zurich received satisfactory proof

13

of loss as a matter of law in the instant case." (*Id*. at 8.) It then goes on to explain why Zurich's reliance on these legal authorities is misplaced. (*Id*. at 8–13.)

### B. Applicable Law

La. R.S. 22:1892 entitled "Payment and adjustment of claims, policies other than life and health and accident; personal vehicle damage claims; extension of time to respond to claims during emergency or disaster; penalties; arson-related claims suspension," sets out:

> A. (1) All insurers issuing any type of contract, . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damage claims made in accordance with this Paragraph.
>
> . . .
>
> B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) of this Section when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

La. R.S. 22:1892.

Courts in Louisiana have set forth that an insured seeking to recover the statutory penalties under this statute must establish three elements: "(i) that the insurer received a satisfactory proof of loss, (ii) that the insurer failed to pay the claim within the applicable statutory period, and (iii) that the insurer's failure to pay was arbitrary and capricious." *Grilletta*

*v. Lexington Ins. Co.*, 558 F.3d 359, 368–69 (5th Cir. 2009). One who claims entitlement to penalties and attorney fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. *Reed v. State Farm*, 857 So. 2d 1012, 1020 (La. 2003). Further, La. R.S. 22:1892 "must be strictly construed because it is penal in nature." *Richardson v. GEICO Indem. Co.*, 2010-0208 (La. App. 1 Cir. 9/10/10), 48 So. 3d 307, 314, *writ denied,* 2010-2473 (La. 12/17/10), 51 So. 3d 7.).

With regard to the first factor, Louisiana has adopted "liberal rules concerning the lack of formality relative to proof of loss." *Sevier v. U.S. Fid. & Guar. Co.,* 497 So. 2d 1380, 1384 (La. 1986). Satisfactory proof of loss, as required for an insured to obtain penalties from an insurer, is that which is sufficient to fully apprise the insurer of the claim and extent of the damage. *Louisiana Bag Co.,* 2008-0453, p.16, 999 So. 2d at 1115; *McDill v. Utica Mutual Insurance Company*, 475 So. 2d 1085, 1089 (La. 1985). So long "as the insurer obtains sufficient information to act on the claim, 'the manner in which it obtains the information is immaterial.' " *Sevier,* 497 So. 2d at 1384 (quoting *Austin v. Parker,* 672 F.2d 508, 520 (5th Cir. 1982)). Thus, a "satisfactory proof of loss occurs when the insurer has adequate knowledge of the loss." *In re Hannover Corp. of America,* 67 F.3d 70, 73 (5th Cir. 1995) (citations omitted).

Whether and when the insurer received "satisfactory proof of loss" sufficient to trigger the payment periods is a question of fact. 15 William Shelby McKenzie & H. Alston Johnson, III, La. Civ. L. Treatise: Insurance Law and Practice § 11:5 (4th ed. 2020) (citing *McDill,* 475 So. 2d at 1089; *La Louisiane Bakery Co. Ltd. v. Lafayette Ins. Co.,* 61 So. 3d 17 (La. Ct. App. 5th Cir. 2011); *Iteld v. Four Corners Const., L.P.,* 133 So. 3d 312 (La. Ct. App. 4th Cir. 2014); *Lemoine v. Mike Munna, L.L.C.*, 148 So. 3d 205 (La. Ct. App. 1st Cir. 2014)).

### C. Analysis

Having carefully considered the law and facts in the record, the Court finds that there are genuine issues of material fact which preclude summary judgment. Construing the evidence in a light most favorable to Defendant and drawing reasonable inferences in its favor (as required), the Court concludes that there are fact questions as to when Zurich received satisfactory proof of loss.

A reasonable juror could conclude that Defendant did not receive satisfactory proof of loss until January 17, 2018, when it received the report and recommendations of its Independent Adjuster, Menke. The best evidence of this is Schwalbach's testimony which shows that although Zurich had conducted four inspections of the property, and received Lamar's estimate, J.S. Held's ROM, and the ACV by December 6, 2017, he still did not have enough information to verify and valuate the claim until he received Menke's report. Again, Schwalbach testified:

> Q. So, with all that, what additional information do you or Patrick Menke or anyone else need to pay that claim?
>
> A. We need confirmation of the report from Patrick to tell me that I should be paying it or at least to discuss with me that I should be paying it.
>
> Q. But why do you need a report?
>
> A. Because I need documentation to show why I am doing something. I don't – just because my builder says, here is the number, I can't just go pay it.

(Schwalbach Dep., Doc. 114-3 at 9–10.)

Segalla's expert report also supports this. It provides in relevant part:

> … it is understood in the insurance industry that these experts [a building consultant and forensic accountant] do not supplant the role of the insurer, specifically the claims adjuster (here Eric), who is responsible for making the claims determinations and approvals as to whether the policy requires payment for the loss, and if so, in what amount. Neither a building consultant, nor an independent adjuster, supplants the insurer's claims adjuster, who is entitled to critically

16

> evaluate, validate, and verify (and accept and/or adjust as may be necessary) the submissions of its experts…

(Doc. 114-2 at 14–15.)

There is also a factual dispute as to whether the ROM constitutes satisfactory proof of loss. Segalla's report states that:

> Specifically, to the extent that Lamar, in this litigation, contends that J.S. Held's Cost Summary or its Rough Order of Magnitude (dated 11/10/17, and 12/6/17 respectively) constitutes a "Proof of Loss" that triggers Zurich's obligation to pay its building claim, such a position is inconsistent with the standards, customs, and practices in the insurance industry.

(*Id*. at 14.)

Based on the above, a reasonable juror could conclude that Zurich did not receive satisfactory proof of loss until it received the report and recommendation of Menke on January 17, 2018. Therefore, at present, genuine issues of material fact preclude summary judgment on Lamar's bad faith claims related to Zurich's January 22, 2018 payment. *See Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.,* 597 F.3d 729, 739 (5th Cir. 2010) (finding summary judgment precluded based on genuine issue of material fact as to when excess property damage insurers first received "satisfactory proofs of loss" for the $2,972,991.38 claimed by insured, when they received sworn proof of loss forms from insured in that amount, or on earlier date, when joint adjuster issued a report indicating that insurers each owed, at minimum, an "undisputed amount of $2,972,991.38."); *Faith Prods., LLC v. St. Paul Travelers Ins. Co*., No. 07-4726, 2009 WL 2823654, at *5 (E.D. La. Aug. 27, 2009) (finding summary judgment precluded based on genuine issue as to whether and when insurer received satisfactory proof of loss); *Wood v. Allstate Indem. Co.,* No. 15-2327, 2017 WL 217754, at *5 (W.D. La. Jan. 18, 2017).

Moreover, the cases Lamar relies on in support of its motion are distinguishable. *Sevier* is factually distinguishable as the issue in that case was whether a handwritten estimate from the

17

insured's contractor constituted "an adequate proof of loss" for purposes of determining if the insurer had waived its right to an appraisal under the insurance policy. *J.R.A., Norcold*, and *Aghighi* are procedurally distinguishable from the instant case in that the factual findings and determinations therein were rendered after a trial on the merits, not on a motion for summary judgment. *See Kennett v. Dep't of Pub. Works ex rel. City of Bogalusa*, 2013-0824 (La. App. 1 Cir. 12/27/13) (distinguishing a case on the same grounds). Thus, while those cases provide guidance to the trier of fact on the merits, they do not constrain this Court's analysis in determining whether satisfactory proof of loss was received as a matter of law. As the Court has previously set out, this is a question of fact, and thus summary judgment is not appropriate.

    Finally, to the extent that Lamar contends Zurich's adjusters did not act reasonably, the Court likewise finds that genuine issues of material fact preclude summary judgment. "An insurer's conduct depends on the facts known to the insurer at the time of its action ...." *La. Bag*, 999 So. 2d at 1114. "When the insured claims penalties for refusal to pay a claim timely, the inquiry usually focuses on whether the insurer acted reasonably in its adjustment of the claim based on the facts known or that should have been known by the insurer. Normally, the reasonableness of the insurer's claims handling will be a factual issue, and cases involving this issue will be fact specific." 15 William Shelby McKenzie & H. Alston Johnson, III, La. Civ. L. Treatise: Insurance Law and Practice § 11:15 (4th ed. 2020). Summary judgment is rarely appropriate where motivation and intent, in this case Defendant's reasons for delaying payment, are at issue. *Goree v. Lincoln Parish Detention Center Com'n*, No. 09-745, 2010 WL 4295328, at *3 (W.D. La. Oct. 22, 2010) (citing *Thornbrough v. Columbus and Greenville R. Co.*, 760 F.2d 633, 641 (5th Cir. 1985) (*rev'd on other grounds*)).

**IV.     Conclusion**

Accordingly,

**IT IS ORDERED** that the *Motion for Partial Summary Judgment Regarding Zurich's Untimely January 22, 2018 Payment to Lamar* (Doc. 99) filed by Plaintiff Lamar Advertising Company is **DENIED**.

Signed in Baton Rouge, Louisiana, on March 22, 2021.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**