UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LAMAR ADVERTISING COMPANY | |
| | CIVIL ACTION |
| VERSUS | |
| | NO.  18-1060-JWD-RLB |
| ZURICH AMERICAN INSURANCE COMPANY | |

## RULING AND ORDER

This matter is before the Court on the *Motion for Partial Summary Judgment Regarding Zurich's Untimely April 10, 2018 Payment to Lamar* (Doc. 100) filed by Plaintiff Lamar Advertising Company ("Lamar" or "Plaintiff"). Zurich American Insurance Company ("Zurich" or "Defendant") opposes the motion. (Doc. 113.)  Lamar filed a reply. (Doc. 125.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule.  For the following reasons, the motion is denied.

**I.    Background**

**A.  Relevant Facts**

Lamar contracted with Zurich to obtain insurance for its business locations. Zurich issued and delivered Policy No. MLP 4856733-06 ("Policy") to Lamar at 5551 Corporate Boulevard, Baton Rouge, Louisiana 70808. (*Lamar's Statement of Material Facts That Are Not in Dispute* ("*SMF*") ¶ 1, Doc. 100-1; *Zurich's Opposing Statement of Material Facts* ("*OSMF*") ¶ 1, Doc. 113-4.)[1]  The Policy was in effect from March 1, 2017 to March 1, 2018. (*SMF* ¶ 2; *OSMF* ¶ 2.) Lamar is the "First Named Insured" under the Policy. (*SMF* ¶ 3; *OSMF* ¶ 3.) Any loss payable

---

[1] Many of the facts in this case are undisputed.  Generally speaking, when both the *SMF* and *OSMF* are cited, the fact is undisputed, and the statement is taken almost verbatim from the *SMF*.

under the Policy is payable to Lamar, unless otherwise directed by Lamar. (*SMF* ¶ 4; *OSMF* ¶ 4.) Lamar's Puerto Rico office is an "Insured Location" under the Policy. (*SMF* ¶ 5; *OSMF* ¶ 5.)

Hurricane Maria made landfall in Puerto Rico on September 20, 2017 as a Category 4 hurricane, and damaged Lamar's Puerto Rico office and its contents. (*SMF* ¶ 6; *OSMF* ¶ 6.) Hurricane Maria was a "Named Storm" as defined by the Policy.[2] (*Id.*) Zurich received notice that Lamar's Puerto Rico office was damaged by Hurricane Maria on September 22, 2017. (*SMF* ¶ 7; *OSMF* ¶ 7.)

Thereafter, Zurich's representatives inspected damages caused by Hurricane Maria at Lamar's Puerto Rico office on October 11, 2017, October 18, 2017, October 23, 2017, and October 31, 2017. (*SMF* ¶ 8; *OSMF* ¶ 8.) On October 13, 2017, Zurich received the following documents from Lamar: (a) "before" hurricane photos; (b) "after" hurricane photos; (c) a copy of the lease agreement for Lamar's Puerto Rico office; (d) a cost summary of improvements and furniture, fixtures, and equipment in the office prior to the Hurricane (totaling more than $1.3 million); (e) an invoice for 80% cleanup and 75% of gypsum demolition; and (f) an e-mail outlining the cost for cleanup and gypsum demolition. (*SMF* ¶ 9; *OSMF* ¶ 9; Doc. 100-8 at 31.)

Also, on October 13, 2017, Lucas Theesfeld, the initial claims adjuster from Zurich, wrote in an email that Lamar's Hurricane Maria loss "is a large loss for sure" and that he "just got paperwork from our insured, showing damages well in excess of $1,300,000.00." (Doc. 100-8 at 14–15.) Responsibility for this claim was subsequently transferred from Theesfeld to Eric Schwalbach, Zurich's National General Adjuster, because it was a large loss. (Doc. 113-1 at 9.)

---

[2] "Named Storm" is defined in the policy as "Any storm or weather disturbance that is named by the U.S. National Oceanic and Atmospheric Administration (NOAA) or the U.S. National Weather Service or the National Hurricane Center or any comparable worldwide equivalent." (Doc. 100-3 at 68.)

2

On January 12, 2018, Zurich received documentation estimating that Lamar sustained an additional $470,485.12 in damages to its computer equipment, furniture, phones, artwork, security system, shop equipment, and digital parts inventory at Lamar's Puerto Rico office as a result of Hurricane Maria. (*SMF* ¶ 10; *OSMF* ¶ 10.)

On January 17, 2018, Zurich received a report from its independent adjuster stating, in part, the following:

> Rain water which penetrated the building caused significant damage to the FF&E throughout the office. All electronics, office partitions and paperwork appear to have been a total loss. (See photographs included in Enclosure 8).

(*SMF* ¶ 11; *OSMF* ¶ 11.)

By February 8, 2018, Zurich received invoices substantiating that Lamar had sustained at least $262,468.56 in additional damages to its computer equipment, furniture, phones, and security system at Lamar's Puerto Rico office as a result of Hurricane Maria. (*SMF* ¶ 12; *OSMF* ¶ 12.)

On March 27, 2018, Schwalbach received a report and recommendations and supporting documentation from its Independent Adjuster, Menke. (Doc. 113-2 at 31-32.) Schwalbach reviewed Menke's report and supporting documentation and requested payment thirteen days later. (*Id*.)

No payment was issued by Zurich for the additional $262,468.56 in damages Lamar sustained to its computer equipment, furniture, phones, and security system at Lamar's Puerto Rico office as a result of Hurricane Maria until April 10, 2018. (*SMF* ¶ 13; *OSMF* ¶ 13.)

Under the Policy, a $250,000 deductible applies to all of Lamar's Hurricane Maria losses. (*SMF* ¶ 14; *OSMF* ¶ 14.) Zurich subtracted the $250,000 deductible from the January 22, 2018 check it sent Lamar. (*Id.*)

### B. Defendant's Statement of Opposing Facts

The Court must next determine the admissibility of the two additional facts Defendant submitted in its *Opposing Statement of Material Facts* ("*OSMF*"), (Doc. 113-4). These facts provide:

> 1. Whether Zurich received "satisfactory proof of loss" for its April 10, 2018 Payment, as required by La. R.S. 22:1892, before it received Independent Adjuster Patrick Menke's ("Menke") report and recommendations and supporting documentation on March 27, 2018.
>
> 2. Whether Menke's March 27, 2018 report and recommendations and supporting documentation were reasonably necessary under the standards, customs, and practices in the insurance industry to verify and valuate the payment Zurich made to Lamar on April 10, 2018.

(*OSMF*, Doc. 113-4 at 2.)

Plaintiff argues that these facts must be stricken because they: (1) are legal questions in violation of Local Rule 56(c); and (2) cite to inadmissible evidence—Thomas Segalla's affidavit and report. (Doc. 125-1 at 1–2.)

As to Plaintiff's first argument, that these facts are legal questions, the Court agrees. *See* Local Rule 56(c) (requiring a party opposing summary judgment to submit "a separate, short, and concise statement of material facts."); *N & D E Co. v. Gustings*, No. 90-4445, 1992 WL 77581, at *6 (E.D. La. Apr. 9, 1992) (finding the statement that "whether Franklin has copied the 1980, 1981, or 1982 posters in violation of copyright law" was a vague legal question); *Venable v. EnLink Midstream Operating, LP*, No. 18-847-SDD-RLB, 2020 WL 853518, at *6 (M.D. La. Feb. 20, 2020). As such, the Court will disregard these two additional questions included by

4

Zurich. However, the Court will still consider the evidence cited therein for purposes of this motion, subject to the limitation discussed below.[3]

As to Plaintiff's second argument regarding Segalla's testimony, the Court notes that in advance of its consideration of the instant motion, it previously granted in part and denied in part Lamar's motion to exclude the testimony of Segalla (Doc. 121).[4] Lamar's motion was granted in that Segalla is precluded from offering expert testimony on the ultimate legal questions to be determined by the trier of fact. This includes parts of Segalla's report in which he opines that Zurich acted reasonably and in good faith. Lamar's motion was denied in that Segalla's report and testimony about insurance industry customs, practices, and standards for claim handling are permissible. Therefore, the Court will consider Segalla's report to the extent that it is in accordance with its prior ruling.

### C. Lamar's Expert Testimony

Peter Hildebrand, Lamar's insurance expert, explained that an interim proof of loss is "a proof of loss based on the materials already provided…knowing that additional material will be provided at a later date. So in other words, if you get a proof of loss that shows you owe 'X' number of dollars or if you know that there's going to be additional monies, you have to pay an undisputed amount from the interim proof of loss pending receipt of additional materials." (Hildebrand Dep., Doc. 113-2 at 8; *see also, id.* (explaining an interim proof of loss "would indicate that additional materials were coming, while final proof of loss would indicate that all materials were submitted.").)

---

[3] The Court notes that it has discretion to disregard technical deficiencies in the opponent's statement of material facts or to grant leave to the opponent to cure the deficiencies. *See Porter v. Dauthier*, 2015 WL 5611647, at *8, *13. In this case, the Court finds it unnecessary to do so.

[4] On February 23, 2021, the Court issued an oral ruling on Lamar's motion to exclude (Doc. 121) with a written ruling to be forthcoming.

5

He also testified that Zurich had satisfactory proof of loss to make a payment to Lamar as of January 30, 2018.[5] (Hildebrand Dep., Doc. 125-2 at 6–7.) As to this issue, his testimony provides as follows:

> A.  I believe that they had satisfactory proof of loss to make an undisputed payment as of January 30th, regardless of the fact that they were still going to have to provide some items of additional damage documentation.
>
> You don't have to wait, you know, four months in order to make one payment, I mean, especially when you're sitting here on a claim that's been around since when? – September 20th. Here we are six months down the road. I mean, six months they've had to adjust this loss.
>
> Q.  I mean, an insurer is not obligated to make a payment just because the insured demands it; are they?
>
> A.  An [insurer]'s obligated to make a payment when they have sufficient information in their file to show that there's an undisputed amount that they are required to pay.
>
> Q.  Okay. But you would agree that Zurich was required to verify the cost of every item of contents in this claim; wouldn't you?
>
> A.  Are they entitled to verify every item in this claim?
>
> Q.  Yeah.
>
> A.  Well, if they -- are you saying they're entitled to do that and wait until the end of the claim to make a payment? Is that what you're saying?
>
> Q.  No. I'm saying that, before they make a payment, they're entitled to verify the cost of all of the items of business personal property that Lamar's claiming; right?
>
> Mr. deBarros: Objection.
>
> A.  They're entitled to see verification of items. And once they've had verification of some of those items, they're obligated to pay the undisputed amount.….

---

[5] The Court notes that, depending on how the question is asked, this testimony may (or may not) constitute an impermissible legal conclusion. *Tingle v. Hebert*, No. 15-626, 2018 WL 2287028, at *5 (M.D. La. Ap. 23, 2018). Thus, this evidence is considered for purposes of this motion. No *Daubert* motion was filed to consider this issue pretrial.

> I'm not saying that [Zurich] should pay unverified costs. I'm saying that they should pay money once they've got sufficient information in their file to justify making an undisputed payment, which they had.

(*Id*. at 7–8.)

### D. Zurich's Expert Report

Thomas Segalla, Zurich's insurance expert, explains the timeline of this claim in relevant part as follows:

> On 1/17/18, Eric emailed [Menke] the "interim proof of loss" received on 1/12/18, and stated that "the items under BPP and EE need to be confirmed, and a recommendation made ASAP." A few minutes later on 1/17/18, [Menke] submitted a fixed asset register with its first report to Zurich, and [Menke] stated "...we asked the insured to provide, to show the value of the FF&E."
>
> The proposed course of action regarding FF&E was to "...continue to work with the insured to obtain documentation to support their claims for FF&E..." Later on 1/17/18, [Menke] emailed Eric and noted:
>
>> We have not been provided with supporting documentation for most of the costs in this submission. Before we are in a position to make a recommendation, we will need to review the support for all the figures in their initial 'proof.'
>
> On 1/17/18, [Menke] sent a request for documentation to the insured's attorney and also rejected the proof of loss. On 1/30/17, Attorney deBarros sent [Menke] an email, … with certain documentation and information. On 2/8/18, Attorney deBarros sent a supplement of its 1/12/18 proof of loss reflecting a decrease in computers printer and scanner a well as furniture to Eric…
>
> On 3/26/18, Eric followed up with [Menke] via email…On 3/27/18, [Menke] issued an interim report. The report noted that Crawford rejected the 1/17/18 and 2/8/18 proofs of loss via email to insured and insured's attorney and with each rejection Crawford had requested additional documentation.
>
> The report … noted that Crawford had:
>
>> ...reviewed all charges for the items that the insured replaced and find them to be consistent with both our observations of damage seen during the site inspections. Based upon information included in the Fixed Asset Register provided by the insured prior to our initial site inspection, all of the replacement items appear to be of like kind and quality to the items damaged by the storm. We recommend full consideration of the

7

> $262,468.56 of damaged FF&E. which the insured has replaced and supported with invoices.
>
> On 3/30/18, Eric sent a Statement of Loss to Attorney deBarros, which included BPP, and advised that [Menke] is supposed to be reaching out for additional information, noting that Eric will get the payment due issued. On 4/10/18, Zurich issued payment on the FF&E and contents in the amount of $262,468.56. Although that amount coincides with amounts claimed by the insured in its rejected proofs of loss, Zurich was entitled to investigate, evaluate and verify those claimed amounts. An important part of this process, which is consistent with the standards, customs, and practices in the insurance industry, was for Eric to receive a report from Crawford, a licensed independent adjuster in Puerto Rico, who confirmed that based upon their observations, and when compared to the Fixed Asset Register, the items were indeed damaged, and the purchased items were of like kind and quality.

(Doc. 113-1 at 15–17.)

Based on the above, Segalla concludes that the timing of the payment of Lamar's FF&E and contents claim was consistent with the standards, customs, and practices in the insurance industry in light of the totality of the circumstances. (*Id*. at 17.)

## II.     Relevant Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotation marks omitted). "Where the record taken as a whole could not lead a

8

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' "

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

### III.  Discussion

#### A.  Parties' Arguments

The instant motion centers on the applicability of La. R.S. 22:1892. Both parties agree that, to recover under this statute, an insured must prove that: (1) the insurer received satisfactory proof of the loss; (2) the insurer failed to pay the claim within thirty days of receiving satisfactory proof of loss; and (3) the insurer's failure to pay the claim was arbitrary, capricious, or without probable cause. (Doc. 100-2 at 18; Doc. 113 at 1, 6.)

#### 1. Lamar's Motion (Doc. 100-2)

Lamar argues that Zurich is liable for penalties, attorneys' fees, and costs under La. R.S. 22:1892 because all three of the above elements are met. (Doc. 100-2 at 17–18.)  It first contends that there is no genuine dispute of fact that Zurich received "satisfactory proof of loss" no later than February 8, 2018. (*Id.* at 18) According to Lamar, "satisfactory proof of loss" is a flexible requirement, that does not need to be in a formal style and is satisfied by an insurer "receiv[ing] sufficient information to act on the claim." (*Id*. at 18–19 (citing *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 368 (5th Cir. 2009)).) As examples of satisfactory proof of loss, Lamar outlines that Louisiana courts have accepted: a handwritten estimate of the cost of repairs (*id.* at 19 (citing *Sevier v. United States Fid. & Guar. Co.*, 497 So. 2d 1380 (La. 1986)); a personal inspection of an insured's property by an independent adjuster (*id.* (citing *J.R.A. Inc. v. Essex*

9

*Ins. Co.*, 2010-0797 (La. App. 4 Cir. 5/27/11); 72 So. 3d 862, 881)); proof of insurance, photographs, and salvage information (*id.* (citing *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 2011-1355 (La. App. 3 Cir. 4/4/12); 88 So. 3d 1245)); and an independent adjuster's opportunity to discover the extent of damages but failure to do so (*id*. (citing *Aghighi v. Louisiana Citizens Prop. Ins. Corp.*, 2012-1096 (La. App. 4 Cir. 6/19/13), 119 So. 3d 930, 934).)

In this case, Lamar argues that Zurich received satisfactory proof of loss because Zurich's agents had inspected the damaged property at least four times in October 2017 and received: (1) pictures from Lamar showing significant damages to the office and its contents on October 13, 2017; (2) paperwork from Lamar showing damages in excess of $1,300,000 on October 13, 2017; (3) an estimate from Lamar showing an additional $470,485.12 in damages to its computer equipment, furniture, phones, artwork, security system, shop equipment, and digital parts and inventory on January 12, 2018; (4) a report from its adjuster noting that the contents of Lamar's office "appear to have been a total loss" on January 17, 2018; and (5) documentation that it would cost $262,468.56 to replace the damaged computer equipment, furniture, phones, and security system. (*Id.* at 19–20.) Under the flexible standard for satisfactory proof of loss, Lamar contends that there is no genuine issue of material fact that Zurich received satisfactory proof of loss by February 8, 2018. (*Id.* at 20.)

Lamar then avers that there is no genuine dispute of material fact that Zurich failed to pay any of the loss within 30 days of receiving satisfactory proof of loss on February 8, 2018, since it did not tender payment until April 10, 2018 (61 days later). (*Id.* at 20–21.)

Lastly, Lamar argues that there is no genuine dispute of fact that Zurich's failure to timely pay was "by definition, arbitrary, capricious, or without probable cause." (*Id*. at 21.) Lamar maintains that Louisiana courts have found an insurers' actions to be arbitrary, capricious

or without probable cause when they are unjustified, lack a reasonable basis or are without probable cause or excuse. (*Id.* (citing *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08); 988 So. 2d 186, 206–07).) According to Lamar, the Louisiana Supreme Court in *La. Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08); 999 So. 2d 1104, explained that under La. R.S. 22:1892,

> an insurer need not pay a disputed amount in a claim for which there are substantial, reasonable and legitimate questions as to the extent of the insurer's liability or of the insured's loss. However, an insurer must pay any undisputed amount over which reasonable minds could not differ. Any insurer who fails to pay said undisputed amount has acted in a manner that is, by definition, arbitrary, capricious or without probable cause, and will be subject to penalties.

(*Id.* at 21–22.)

In sum, Lamar asks the Court to find Zurich liable under La. R.S. 22:1892 because, as of February 8, 2018, Zurich had received satisfactory proof of loss and did not issue a payment until 61 days later, which is by definition arbitrary, capricious, and without probable cause. (*Id.* at 23.)

### 2. Zurich's Opposition (Doc. 113)

Preliminarily, Zurich contends that summary judgment is not appropriate when a claim for bad faith penalties depends on factual determinations concerning the reasonableness of the insurer's actions. (Doc. 113 at 6 (citing *Hartenstein v. State Farm Fire and Cas. Ins. Co.*, No. 07–4594, 2008 WL 2397713, at *3 & n.22 (E.D. La. June 10, 2008).) It also points out that because La. R.S. 22:1892 is penal in nature, it must be strictly construed. (*Id.* at 7.)

Zurich then raises an issue with the first element of the statute—satisfactory proof of loss. It contends that there are genuine issues of material fact in dispute as to whether and when it received satisfactory proof of loss from Lamar. Specifically, it argues that it did not receive satisfactory proof of loss until it received Menke's March 27, 2018 report and recommendations. (*Id.* at 7.) Zurich avers:

11

> In its previous Motion for Partial Summary Judgment Regarding Zurich's Untimely August 13, 2018 Payment to Lamar (R. Doc. 75), Lamar argued that it was entitled to penalties and attorney's fees under La. R.S. 22:1892 because the June 12, 2018 report and recommendations of Zurich's independent adjuster constituted "satisfactory proof of loss" for that payment, and Zurich's payment was made more than thirty days after it received the report. Lamar now takes the position that Zurich should have tendered payment *before* it received its Independent Adjuster's report for this portion of its claim because it had submitted an "interim proof of loss" for $470,485.12 with partial documentation. As with its Motion for Partial Summary Judgment Regarding Zurich's Untimely January 22, 2018 Payment (R. Doc. 99), Zurich's [sic] argument fails for several reasons.

(*Id.*) (emphasis by Zurich.)

First, Zurich re-iterates that it did not have satisfactory proof of loss until it received Menke's report. In support of this, Zurich points to Hildebrand's testimony, which shows that: (1) Lamar presented this claim as an interim proof of loss, which "indicate[s] that additional materials were coming"; (2) Lamar's claim submission for FF&E and BPP "was essentially a moving target and continued to fluctuate over the course of the adjustment process"; (3) back-and-forth communications between the adjuster and the insured requesting and providing additional documentation happen often in large hurricane losses such as this one; and (4) Zurich was entitled to verify all of the items Lamar was claiming before it was obligated to pay, and that it was not obligated to pay unverified costs. (*Id*. at 7–8.)

Additionally, upon receiving Lamar's claim submission for this loss:

> Menke had to review and verify the partial documentation submitted by Lamar, reconcile it with Lamar's fixed asset register, and confirm that the replacement items were of like kind and quality and not upgrades. Schwalbach then had to review and evaluate that information and documentation in order to determine that an undisputed amount was actually owed per the terms of the Policy.

(*Id*. at 8.)

Second, Zurich argues that its actions did not violate La. R.S. 22:1892 and were consistent with the standards, customs, and practices of the insurance industry. (*Id.* at 9.) Relying

12

on Segalla's report, Zurich contends that Schwalbach followed the standard practice in the insurance industry when he waited for the report, recommendation, and supporting documentation from Menke to evaluate and verify that a payment was owed to Lamar. (*Id.*)

It further emphasizes that Lamar's claim submission was not undisputed until Schwalbach completed his review of Menke's report and recommendation. (*Id.* at 10.) According to Zurich, just because the amount it paid coincides with a portion of the amount claimed in Lamar's interim proof of loss, this does not mean that amount was undisputed on its face. (*Id.* at 9–10.) Again, Zurich still had to evaluate and verify all items of FF&E and BPP included in the claim. Thus, "Far from being a case of bad faith," the evidence shows "that Zurich worked diligently to gather and process the information needed to pay Lamar what was owed, promptly and in good faith." (*Id.* at 10.)

Finally, Zurich argues that the cases Lamar relies on are easily distinguishable from the case at hand. (*Id.* at 10–16.) Accordingly, Zurich concludes that Lamar's motion must be denied. (*Id.* at 16–17.)

### 3. Lamar's Reply (Doc. 125)[6]

In reply, Lamar argues that because Zurich fails to dispute any of the material facts of the case, it cannot dispute that Lamar is entitled to summary judgment. (Doc. 125 at 1.) Further, Lamar states that Zurich cannot rely on its expert's report to alter the undisputed material facts in this case. (*Id.* at 1–2.) Lamar contends that the sole legal issue raised by Zurich is—"whether, as a matter of Louisiana law, an insurance company who has received enough information to pay

---

[6] Lamar also contends that "Zurich paints a distorted picture of Louisiana's law on 'satisfactory' proof of loss." In support of this contention, Lamar cites to its Reply Memo in support of its motion for partial summary judgment regarding Zurich's untimely January 22, 2018 payment (Doc. 124-2), which it does not repeat in this reply memo, but incorporates "that discussion herein." (Doc. 125 at 6.)

13

undisputed amounts to its insured can nevertheless insist on receiving a formal report from its adjuster before paying anything to its insured"—to which it answers "no." (*Id*.)

Lamar then re-iterates that there is no genuine issue of material fact that Zurich received "satisfactory" proof that Lamar sustained at least a $262,468.56 loss by February 8, 2018. (Doc. 125 at 2–3.) It claims that the following undisputed fact alone is dispositive of the issue: "By February 8, 2018, Zurich received invoices substantiating that Lamar had sustained at least $262,468.56 in additional damages to its computer equipment, furniture, phones, and security system at Lamar's Puerto Rico office as a result of Hurricane Maria." (*Id*. at 3 (citing *SMF* ¶ 12; *OSMF* ¶ 12).)

Additionally, it argues that Zurich cannot dispute that "it received documentation substantiating Lamar's additional $262,468.56 loss by February 8, 2018, because its own in-house adjuster testified under oath, without contradiction, that it did." (*Id*. at 3–4 (citing Schwalbach Dep., Doc. 100-6 at 38–40).)

Lastly, Lamar avers that Zurich misrepresents Hildebrand's testimony. While Zurich suggests that it did not receive satisfactory proof of the $262,468.56 loss because Hildebrand "admitted that Lamar's claim submission for FF&E and BPP was essentially a moving target" and "admitted that Zurich was entitled to verify all of the items of BPP that Lamar was claiming, before Zurich was obligated to pay," his actual testimony is as follows:

> [Zurich is] entitled to see verification of items. And once they've had verification of some of those items, they're obligated to pay the undisputed amount…..
>
> I'm not saying that they should pay unverified costs. I'm saying that they should pay money once they've got sufficient information in their file to justify making an undisputed payment, **which they had** [as of January 30, 2018].

(*Id*. at 6–7 (citing Hildebrand Dep., Doc. 125-2 at 6–8).) (emphasis by Lamar).

14

Thus, Lamar argues that there is no genuine issue of material fact that Zurich received satisfactory proof of its additional $262,468.56 loss no later than February 8, 2018, and there is no genuine issue of material fact that Zurich failed to pay for that loss until April 10, 2018. (*Id*. at 7.) Accordingly, it concludes that it is entitled to judgment as a matter of law that Zurich is liable under La. R.S. 22:1892. (*Id*. at 7–8.)

### B. Applicable Law

La. R.S. 22:1892 entitled "Payment and adjustment of claims, policies other than life and health and accident; personal vehicle damage claims; extension of time to respond to claims during emergency or disaster; penalties; arson-related claims suspension," sets out:

> A. (1) All insurers issuing any type of contract, . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damage claims made in accordance with this Paragraph.
>
> . . .
>
> B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) of this Section when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

La. R.S. 22:1892.

15

Courts in Louisiana have set forth that an insured seeking to recover the statutory penalties under this statute must establish three elements: "(i) that the insurer received a satisfactory proof of loss, (ii) that the insurer failed to pay the claim within the applicable statutory period, and (iii) that the insurer's failure to pay was arbitrary and capricious." *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 368–69 (5th Cir. 2009). One who claims entitlement to penalties and attorney fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. *Reed v. State Farm*, 857 So. 2d 1012, 1020 (La. 2003). Further, La. R.S. 22:1892 "must be strictly construed because it is penal in nature." *Richardson v. GEICO Indem. Co.*, 2010-0208 (La. App. 1 Cir. 9/10/10), 48 So. 3d 307, 314, *writ denied,* 2010-2473 (La. 12/17/10), 51 So. 3d 7).

With regard to the first factor, Louisiana has adopted "liberal rules concerning the lack of formality relative to proof of loss." *Sevier v. U.S. Fid. & Guar. Co.,* 497 So. 2d 1380, 1384 (La. 1986). Satisfactory proof of loss, as required for an insured to obtain penalties from an insurer, is that which is sufficient to fully apprise the insurer of the claim and extent of the damage. *Louisiana Bag Co.,* 2008-0453, p.16, 999 So. 2d at 1115; *McDill v. Utica Mutual Insurance Company*, 475 So. 2d 1085, 1089 (La. 1985). So long "as the insurer obtains sufficient information to act on the claim, 'the manner in which it obtains the information is immaterial.' " *Sevier,* 497 So. 2d at 1384 (quoting *Austin v. Parker,* 672 F.2d 508, 520 (5th Cir. 1982)). Thus, a "satisfactory proof of loss occurs when the insurer has adequate knowledge of the loss." *In re Hannover Corp. of America,* 67 F.3d 70, 73 (5th Cir. 1995) (citations omitted).

Whether and when the insurer received "satisfactory proof of loss" sufficient to trigger the payment periods is a question of fact. 15 William Shelby McKenzie & H. Alston Johnson,

16

III, La. Civ. L. Treatise: Insurance Law and Practice § 11:5 (4th ed. 2020) (citing *McDill,* 475 So. 2d at 1089; *La Louisiane Bakery Co. Ltd. v. Lafayette Ins. Co.,* 61 So. 3d 17 (La. Ct. App. 5th Cir. 2011); *Iteld v. Four Corners Const., L.P.,* 133 So. 3d 312 (La. Ct. App. 4th Cir. 2014); *Lemoine v. Mike Munna, L.L.C*., 148 So. 3d 205 (La. Ct. App. 1st Cir. 2014)).

### C. Analysis

Having carefully considered the law and facts in the record, the Court finds that there are genuine issues of material fact which preclude summary judgment. Construing the evidence in a light most favorable to Defendant and drawing reasonable inferences in its favor (as required), the Court concludes that there are fact questions as to when Zurich received satisfactory proof of loss.

Although Lamar's expert testified that he believed that Zurich had satisfactory proof of loss to make a payment to Lamar as of January 30, 2018, this conclusion is controverted by other evidence in the record, namely, Segalla's report. Thus, a reasonable juror could conclude that Defendant did not receive satisfactory proof of loss until March 27, 2018, when it received the report and recommendations of its Independent Adjuster, Menke.

In his expert report, Segalla explained that on January 12, 2018, Schwalbach received an interim proof of loss from Lamar. (Doc. 113-1 at 15.) Lamar's expert testified that an interim proof of loss is "a proof of loss based on the materials already provided…knowing that additional material will be provided at a later date. So in other words, if you get a proof of loss that shows you owe 'X' number of dollars or if you know that there's going to be additional monies, you have to pay an undisputed amount from the interim proof of loss pending receipt of additional materials." (Hildebrand Dep., Doc. 113-2 at 8; *see also, id.* (explaining an interim

17

proof of loss "would indicate that additional materials were coming, while final proof of loss would indicate that all materials were submitted.").)

Subsequently, this interim proof of loss was rejected by Zurich on January 17, 2018 and February 8, 2018 because it lacked supporting documentation to support the claimed amount. (Doc. 113-1 at 16.) Segalla's report explains:

> On 3/27/18, [Menke] issued an interim report. The report noted that Crawford rejected the 1/17/18 and 2/8/18 proofs of loss via email to insured and insured's attorney and with each rejection Crawford had requested additional documentation.
>
> The [3/27/18] report … noted that Crawford had:
>
>> ...reviewed all charges for the items that the insured replaced and find them to be consistent with both our observations of damage seen during the site inspections. Based upon information included in the Fixed Asset Register provided by the insured prior to our initial site inspection, all of the replacement items appear to be of like kind and quality to the items damaged by the storm. We recommend full consideration of the $262,468.56 of damaged FF&E. which the insured has replaced and supported with invoices.

(Doc. 113-1 at 16–17.) Segalla then goes on the explain that:

> … On 4/10/18, Zurich issued payment on the FF&E and contents in the amount of $262,468.56. Although that amount coincides with amounts claimed by the insured in its rejected proofs of loss, Zurich was entitled to investigate, evaluate and verify those claimed amounts. An important part of this process, which is consistent with the standards, customs, and practices in the insurance industry, was for Eric to receive a report from Crawford, a licensed independent adjuster in Puerto Rico, who confirmed that based upon their observations, and when compared to the Fixed Asset Register, the items were indeed damaged, and the purchased items were of like kind and quality.

(*Id*. at 17.)

Based on the above, a reasonable juror could conclude that Zurich did not receive satisfactory proof of loss until it received the report and recommendation of Menke on March 27, 2018. Therefore, at present, genuine issues of material fact preclude summary judgment on Lamar's bad faith claims related to Zurich's April 10, 2018 payment. *See Versai Mgmt. Corp. v.*

*Clarendon Am. Ins. Co.,* 597 F.3d 729, 739 (5th Cir. 2010) (finding summary judgment precluded based on genuine issue of material fact as to when excess property damage insurers first received "satisfactory proofs of loss" for the $2,972,991.38 claimed by insured, when they received sworn proof of loss forms from insured in that amount, or on earlier date, when joint adjuster issued a report indicating that insurers each owed, at minimum, an "undisputed amount of $2,972,991.38."); *Faith Prods., LLC v. St. Paul Travelers Ins. Co.*, No. 07-4726, 2009 WL 2823654, at *5 (E.D. La. Aug. 27, 2009) (finding summary judgment precluded based on genuine issue as to whether and when insurer received satisfactory proof of loss); *Wood v. Allstate Indem. Co.,* No. 15-2327, 2017 WL 217754, at *5 (W.D. La. Jan. 18, 2017).

Moreover, the cases Lamar relies on in support of its motion are distinguishable. *Sevier* is factually distinguishable as the issue in that case was whether a handwritten estimate from the insured's contractor constituted "an adequate proof of loss" for purposes of determining if the insurer had waived its right to an appraisal under the insurance policy. *J.R.A., Norcold*, and *Aghighi* are procedurally distinguishable from the instant case in that the factual findings and determinations therein were rendered after a trial on the merits, not on a motion for summary judgment. *See Kennett v. Dep't of Pub. Works ex rel. City of Bogalusa*, 2013-0824 (La. App. 1 Cir. 12/27/13) (distinguishing a case on the same grounds). Thus, while those cases provide guidance to the trier of fact on the merits, they do not constrain this Court's analysis in determining whether satisfactory proof of loss was received as a matter of law. As the Court has previously set out, this is a question of fact, and thus summary judgment is not appropriate.

Finally, to the extent that Lamar contends Zurich's adjusters did not act reasonably, the Court likewise finds that genuine issues of material fact preclude summary judgment. "An insurer's conduct depends on the facts known to the insurer at the time of its action ...." *La. Bag*,

999 So. 2d at 1114. "When the insured claims penalties for refusal to pay a claim timely, the inquiry usually focuses on whether the insurer acted reasonably in its adjustment of the claim based on the facts known or that should have been known by the insurer. Normally, the reasonableness of the insurer's claims handling will be a factual issue, and cases involving this issue will be fact specific." 15 William Shelby McKenzie & H. Alston Johnson, III, La. Civ. L. Treatise: Insurance Law and Practice § 11:15 (4th ed. 2020). Summary judgment is rarely appropriate where motivation and intent, in this case Defendant's reasons for delaying payment, are at issue. *Goree v. Lincoln Parish Detention Center Com'n*, No. 09-745, 2010 WL 4295328, at *3 (W.D. La. Oct. 22, 2010) (citing *Thornbrough v. Columbus and Greenville R. Co.*, 760 F.2d 633, 641 (5th Cir. 1985) (*rev'd on other grounds*)).

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Partial Summary Judgment Regarding Zurich's Untimely April 10, 2018 Payment to Lamar* (Doc. 100) filed by Plaintiff Lamar Advertising Company is **DENIED**.

Signed in Baton Rouge, Louisiana, on March 22, 2021.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**