## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**LAMAR ADVERTISING COMPANY**

**VERSUS**

**ZURICH AMERICAN INSURANCE COMPANY**

**CIVIL ACTION**

**NO. 18-1060-JWD-RLB**

## RULING AND ORDER

This matter is before the Court on two Motions for Partial Summary Judgment. The first *Motion for Partial Summary Judgment* (Doc. 105) was filed by Defendant Zurich American Insurance Company ("Zurich" or "Defendant"). Plaintiff Lamar Advertising Company ("Lamar" or "Plaintiff") opposes the motion. (Doc. 118.)  Zurich filed a reply. (Doc. 128.)

The second *Motion for Partial Summary Judgment Regarding Zurich's Failure to Pay for Any of Lamar's Lost Business Income* (Doc. 111) was filed by Lamar. Zurich opposes the motion. (Doc. 120.) Lamar filed a reply. (Doc. 129.)

Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule.  For the following reasons, both motions are denied.

### I.    Background

#### A.  Relevant Facts

Zurich issued and delivered Policy No. MLP 4856733-06 ("Policy"), an "all risks" commercial property insurance policy, to Lamar at 5551 Corporate Boulevard, Baton Rouge, Louisiana 70808. (*Lamar's Statement of Material Facts That Are Not in Dispute* ("*SMF*") ¶ 1,

Doc. 111-2; *Zurich's Opposing Statement of Material Facts* ("*OSMF*") ¶ 1, Doc. 120-1.)[1]  The Policy was in effect from March 1, 2017 to March 1, 2018. (*SMF* ¶ 3; *OSMF* ¶ 3.) Lamar is the "First Named Insured" under the Policy. (*SMF* ¶ 4; *OSMF* ¶ 4.) Lamar's Puerto Rico office is an "Insured Location" under the Policy.  (*SMF* ¶ 5; *OSMF* ¶ 5.)

Hurricane Maria made landfall in Puerto Rico on September 20, 2017, as a Category 4 hurricane, and damaged Lamar's Puerto Rico office and its contents. (*SMF* ¶ 6; *OSMF* ¶ 6.) Hurricane Maria was a "Named Storm" and a "Covered Cause of Loss" as defined by the Policy. (*Id.*) Zurich received notice that Lamar's Puerto Rico office was damaged by Hurricane Maria on September 22, 2017.[2] (*SMF* ¶ 7; *OSMF* ¶ 7.)

Thereafter, Zurich's representatives inspected damages caused by Hurricane Maria at Lamar's Puerto Rico office on October 11, 2017, October 18, 2017, October 23, 2017, October 31, 2017, April 13, 2018, and May 12, 2018. (*SMF* ¶ 8; *OSMF* ¶ 8.)

On October 13, 2017, Zurich received the following documents from Lamar: (a) "before" hurricane photos; (b) "after" hurricane photos; (c) a copy of the lease agreement for Lamar's Puerto Rico office; (d) a cost summary of improvements and furniture, fixtures, and equipment in the office prior to the Hurricane (totaling more than $1.3 million); (e) an invoice for 80% cleanup and 75% of gypsum demolition; and (f) an e-mail outlining the cost for cleanup and gypsum demolition. (*SMF* ¶ 9; *OSMF* ¶ 9.)

---

[1] Many of the facts in this case are undisputed.  Generally speaking, when both the *SMF* and *OSMF* are cited, the fact is undisputed, and the statement is taken almost verbatim from the *SMF*. Additionally, since the statements of material fact are largely identical as it relates to both Zurich and Lamar's motions for partial summary judgment, the Court only cites to Lamar's *SMF* and Zurich's *OSMF* submitted with Lamar's motion for the sake of judicial economy.

[2] The damages to Lamar's Puerto Rico office caused by Hurricane Maria were not fully repaired until at least mid-April 2018. (*SMF* ¶ 11; *OSMF* ¶ 11.)

On March 19, 2018, Zurich's representatives received documentation estimating that Lamar had sustained more than $4 million in total business income losses as a result of Hurricane Maria. (*SMF* ¶ 12; *OSMF* ¶ 12.)

On July 13, 2018, Zurich's representatives received documentation estimating that at least $1,111,189 of Lamar's total business income losses were attributable to a suspension of Lamar's business activities at its Puerto Rico office. (*SMF* ¶ 13; *OSMF* ¶ 13.)  In reaching this number, Lamar took its total estimated business income loss of $5 million and allocated it between those losses attributable to income lost from damage to "billboards" and income loss attributable to damage to the "office." (MDD Dep., Doc. 110-3 at 16–17.)

On March 18, 2019, Zurich's representatives received the following documents: a copy of Lamar's lease for its Puerto Rico office; detailed monthly statements from January 2014 through March 2018; monthly revenues broken down by charted panel from January 2014 to March 2018; a list of contracts that were put on hold due to Hurricane Maria; and payroll information from January 1, 2017 to March 31, 2018. (*SMF* ¶ 15; *OSMF* ¶ 15.)

### B.  Zurich's "Estimate"

Zurich retained Brian Mohlenhoff to serve as its expert in forensic accounting in this action. Mohlenhoff is employed by Matson, Driscoll, and Damico, LLP ("MDD") and served as its Rule 30(b)(6) corporate representative.

In March 2019, MDD prepared an estimate of the amount of business income loss Lamar sustained attributable to its Puerto Rico office. The parties heavily dispute this document and its significance.

Specifically, Lamar contends that MDD calculated its business income loss and estimated that was more than $1 but less than $500,000. It cites to the following deposition testimony:

Q.      Okay. For office related was it less than five hundred thousand dollars?

A.      I believe so….

Q.      Okay. Was it more than a dollar?

A.      Yes.

(MDD Dep., Doc. 110-3 at 12–13.)

Zurich, on the other hand, denies this assertion based on Mohlenhoff's and MDD's testimony that the estimate was a "corrected claim" which was prepared and given solely for purposes of mediation. (MDD Dep., Doc. 120-4 at 11–12, 13–14; Mohlenhoff Dep., Doc. 120-5 at 13–17, 18–20.) According to Mohlenhoff, MDD's "corrected claim" is actually Lamar's July 2018 claim presentation with numbers that reflect its own profit and loss statements.  (MDD Dep., Doc. 110-3 at 18; Mohlenhoff Dep., Doc. 120-5 at 17.) Additionally, MDD testified that it disagreed with the allocation used in Lamar's July 2018 claim and explained that it would allocate the loss based on revenues by looking at "the various sources of revenue that were achieved for this operation and where they were from and apply what was related to billboard and what was related to the office." (MDD Dep., Doc. 120-4 at 8–10.)

In response, Lamar argues that the fact that Mohlenhoff calls them " 'corrected claims' does not change the undisputed fact that Zurich's accountants could, and did, prepare estimates of the amount of business interruption loss resulting from damage" to Lamar's office. (Doc. 129-1 at 1–2.)[3]

Lamar points out that Mohlenhoff, in his capacity as MDD's corporate representative, testified that prior to his deposition, he reviewed unredacted versions of certain business loss

---

[3] In its reply *SMF*, Lamar requests that the Court strike Zurich's above response because "the record materials Zurich cited do not support its denial of Fact No. 16." (Doc. 129-1 at 1–2.)  However, Lamar does not cite to any rule, case, or law that requires the Court strike a response to a statement of material fact on this basis. Therefore, the Court declines to do so.

estimates prepared by MDD for mediation purposes. (MDD Dep., Doc 110-3 at 6–7.) As to that

estimate, Mohlenhoff testified:

> Q.     And in the unredacted version that you looked at of that document was there
>        any Business Interruption loss estimates of the office that MDD prepared?
>
> A.     Yes. It was utilizing the claim percentages.…
>
> Q.     Did you make any assumptions in forming that estimate?
>
> A.     We utilized what we had to make some corrections to the claim where we
>        felt weren't correct for, for trending and expenses…. I was asked by the
>        attorneys to come up with an estimate of loss based on the documentation I
>        had and to utilize what I had to come up with something to go to mediation
>        and try to settle the file….

(MDD Dep., Doc 110-3 at 7, 8–9.)

Moreover, during MDD's deposition in March 2019, it testified that it currently had

enough information to prepare an estimate of at least $1. (MDD Dep., Doc. 110-3 at 23.)

> Q.     …Does MDD currently have enough information to prepare any estimate
>        of Lamar's Business Interruption loss that's attributable to damage to the
>        Puerto Rico office?
>
> A.     Yes, I have information, but I cannot attribute.
>
> Q.     And you have enough information to prepare an estimate?
>
> A.     Any is a big word.
>
> Q.     Any estimate?
>
> A.     That's my –
>
> Q.     Any estimate—
>
> A.     – so it's clear any –
>
> Q.     – one dollar?
>
> A.     You can – yeah

Q.      Okay, it has enough information?

A.      It can be very high level not real specific, but you can, yes.

(MDD Dep., Doc. 110-3 at 23–24; Doc. 120-4 at 14 ("Q. - - but MDD came to an estimate,

correct? A. - - for settlement purposes in a mediation only, for no other reason.").)

### C.  Lamar's Estimate

Lamar retained Ralph Stephens as its expert forensic accountant to calculate its business

income loss resulting from Hurricane Maria for the period of September 20, 2017 through March

2018. (Stephens Rep., Doc. 105-5 at 5.)  On August 30, 2019, Zurich's representatives received

Stephens' report, which provides in part:

> Hurricane Maria made landfall in Puerto Rico on September 20, 2017, causing damage to Lamar Advertising Company's business operations in Puerto Rico. It is estimated that the Puerto Rican operation's total business interruption loss ranges from approximately $3,077,000 to $3,926,000.
>
> To determine the business interruption loss that is attributable to the office building that housed Lamar Advertising Company's business operations in Puerto Rico, the scope of operations at the office building and the value the office building adds to the Puerto Rican operations revenue generation were considered. A majority of the operations occurs at this office building, including sales, billing, billboard design, staging, and other activities. The office building is an integral and critical part of the revenue generation for Lamar's Puerto Rican operations. Based on these considerations, a 50 percent allocation of business interruption loss is appropriate.
>
> Based on the importance of the office building, the business interruption loss attributable to the office building as a result of Hurricane Maria is estimated to range from approximately $1,539,000 to $1,963,000.
>
> Although the allocation based on importance is an appropriate approach, an alternative allocation method based on expenses was also considered. Based on an expense allocation, the business interruption loss attributable to the office building as a result of Hurricane Maria is estimated to range from approximately $663,000 to $859,000.

(Stephens Rep., Doc. 105-5 at 3.)

In reaching these estimates, Stephens explains in his report that:

… the Office and the billboards were dependent on each other and reported together within Lamar PR's financial statements. As such, the business interruption loss incurred by Lamar PR will need to be allocated between the Office and the billboards because the Zurich Policy covers business interruption loss resulting from a suspension of Lamar PR's business activities at the Office.

(*Id*. at 14.)

Likewise, Stephens explained in his deposition that:

Q.     … In bold in the middle of this page, it says, "Based on the importance of the ops building, the business interruption loss attributable to the office building as a result of Hurricane Maria is estimated to range from approximately $1,539,000 to $1,963,000." How was that determined?

A.     That was determined by looking at the total business interruption losses and then allocating it 50 percent to the billboards and 50 percent to the office.

Q.     And how did you determine that 50 percent of the allocation should be to the billboards and 50 percent should be to the office?

A.     Because looking at it in this particular case, you had two -- two integral parts of the business. One, you had the billboards in which the advertising was displayed; and the other, you had the office in which all of the business operations that -- that allowed for the billboard operations to take place.

So you had all the billing, all the contracts, all the legal, all the setup, all the staging was done in the office. So, to have an office and no billboards, you'd have no revenue. To have billboards and no office, you'd have no revenue, so...

(Stephens Dep., Doc. 110-11 at 15–16.)

Zurich points out that Stephens testified that his calculations included lost revenues from damaged billboards.[4] (Stephens Dep., Doc. 105-4 at 8.)  Specifically, Zurich cites to the following portion of Stephens' deposition:

Q.     … Can you calculate Lamar's business interruption loss without using loss of revenue from damaged billboards?

---

[4] In its reply *SMF*, Lamar requests that the Court strike Zurich's above response because the record materials Zurich cited do not support its "qualified" response. (Doc. 129-1 at 2–3.) While the Court declines to strike Zurich's response, it will deem the undisputed portions of Lamar's *SMF* admitted.

A.     To calculate -- to calculate the loss of business revenue, you need to calculate the loss of revenue from -- from the operations in Puerto Rico, which include the billboards, absolutely.

Q.     So, the answer is, no, you cannot calculate Lamar's business interruption loss without using loss of revenue from damaged billboards, correct?

       Mr. DeBarros: Objection; misstates the testimony.

A.     Right. You would need to calculate the loss of revenue from the operations in Puerto Rico in order to do that, which includes the revenue from the billboards. That's correct.

(Stephens Dep., Doc. 105-4 at 9.)

### D.  Additional Evidence[5]

Under the Policy, a $250,000 deductible applies to all of Lamar's Hurricane Maria losses. (*SMF* ¶ 20; *OSMF* ¶ 20.) Zurich subtracted the $250,000 deductible from a January 22, 2018 check it sent to Lamar for property damage. (*Id.*)  By August 30, 2018, Zurich had paid Lamar $1,225,062.32 for property damage to Lamar's Puerto Rico office and contents caused by Hurricane Maria. (*SMF* ¶ 14; *OSMF* ¶ 14.) However, to date, Zurich has not paid Lamar a single cent for any business income Lamar lost as a result of Hurricane Maria. (*SMF* ¶ 19; *OSMF* ¶ 19.)

### 1. Lamar's Other Evidence

Lamar asserts that "Zurich's accountant has no opinion as to whether the business income Lamar lost" was a result of damage to its office, its billboards, "or anything else." (Doc. 111-2 at 7.)  In support of this contention, Lamar relies on MDD's testimony where it testified that "we

---

[5] The Court notes that certain facts relating to off-premises service interruption time element loss have been omitted as irrelevant for the purposes of both motions. As Zurich correctly contends, Lamar's business interruption claim, according to its own expert, is based on lost revenues related to its Puerto Rico office and its damaged billboards. (*See* Doc. 128 at 3.) Nowhere does Lamar's expert mention a business interruption claim for losses arising from an off-premises service interruption.

cannot attribute what amount of any loss is related to the office or billboards or anything else."

(MDD Dep., Doc. 110-3 at 19.)

Lamar also cites to the following portion of Mohlenhoff's deposition:

Q.    You do not opine in your August 30th, 2019 report that there was no suspension of business activities at Lamar's Puerto Rico office as a result of Hurricane Maria, correct?

A.    Correct.

Q.    You do not opine in your August 30th, 2019 report that Lamar sustained no business interruption loss as a result of a suspension of business activities at Lamar's Puerto Rico office caused by damage to that office, correct?

A.    Correct.

(Mohlenhoff Dep., Doc. 110-4 at 3.)

Zurich denies this assertion arguing that: "(1) Lamar has failed to produce sufficient evidence to show that it sustained a business interruption loss solely attributable to damage to its office; (2) Lamar has not produced any evidence to show that its office generated any revenue at all; and (3) the evidence Lamar has produced in support of its claim shows that all of its revenue was derived from billboards."  (Doc. 120-1 at 2–3.) In support of this, Zurich likewise relies on MDD's and Mohlenhoff's testimony.

MDD testified that "we've never been provided all the documents we needed to prepare an estimate" and that "all the revenue information provided [to it] was revenues from billboards." (MDD Dep., Doc. 120-4 at 18, 19; *id*. at 15–17 ("[Lamar] suffered a loss of revenue. I have not been able to determine what it's related to.").) MDD explained:

Q.    Okay. Is it MDD's opinion that it was not essential for the operation of Lamar's Puerto Rico business operations to have an office or warehouse?

A.    We were never provided enough information to fully understand the, the operations.…

9

> Q.      Okay. Is it MDD's opinion that MDD does not currently have enough information to prepare any estimate of Lamar's Business Interruption loss attributable to damage to the Puerto Rico office and warehouse caused by Hurricane Maria?
>
> A.      Yes.… We've never been provided all the documents we needed to prepare an estimate…. We have general information, but I don't have enough to fully apply it to the pieces.

(MDD Dep., Doc. 120-4 at 17, 18.)

Likewise, Mohlenhoff testified that he still doesn't have enough information to estimate with reasonable certainty what amount of business interruption loss was attributable to Lamar's office. (Mohlenhoff Dep., Doc. 120-5 at 6.) When asked what additional information he needed, Mohlenhoff explained:

> A.      As we've talked about, I need to understand the various documents and what they represent. And there's revenue streams that I don't know what they are. There's revenues not assigned to a panel. I don't know why not. …I think it's just a blank for some reason. I would like to know why. Should it be, should it not be? Those are some questions I have….
>
> … it's kind of a wide-ranging question. I'd like to walk through the expenses, pre- and post-loss, understanding each one, what it is, what it represents, is it related to a billboard, is it related to an office…. [If] it's fixed? Is it variable?

(Mohlenhoff Dep., Doc. 120-5 at 7.)

He also testified that Lamar has not supported how the office generates revenue and that his understanding of Lamar's income generation was that "the revenue comes from the billboard[s]…it comes from the panels that they rent." (Mohlenhoff Dep., Doc. 120-5 at 7–9, 10; *id*. at 12 (Lamar has "totally different" revenue generation in that if the billboards are there, "they're getting revenue. If [they are] not, then they couldn't charge revenue.").)

In response, Lamar again cites to Mohlenhoff's testimony that: (a) he "cannot attribute what amount of [Lamar's business interruption] loss is related to the office or billboards or

anything else" (MDD Dep., Doc. 110-3 at 19); and (b) in his August 30th, 2019 report, he does not opine that Lamar sustained no business interruption loss as a result of a suspension of business activities at its office caused by damage to that office. (Mohlenhoff Dep., Doc. 110-4 at 3.)[6]

## 2. Zurich's Other Evidence

Zurich contends that Lamar has failed to produce sufficient evidence to show that it sustained a business interruption loss solely attributable to damage to its office. In support of this contention, Zurich re-iterates that Stephens testified that he included damaged billboards in his calculations in reaching his August 30, 2019 estimate. (Stephens Dep., Doc. 120-3 at 8; *id*. at 9 (testifying that to calculate Lamar's business interruption loss, he would need to calculate the loss of revenue from the operations in Puerto Rico, which include the billboards).)

Zurich also relies on portions of MDD's and Mohlenhoff's deposition testimony where they explain that they cannot determine what amount of loss (if any) is attributable to Lamar's office because they still do not have enough information. (*See* MDD Dep., Doc. 120-4 at 18, 19 ("we've never been provided all the documents we needed to prepare an estimate."); *id*. at 15–17.) (*See also*, Mohlenhoff Dep., Doc. 120-5 at 6 (testifying that he still doesn't have enough information to estimate with reasonable certainty what amount of business interruption loss was attributable to Lamar's office); *id*. at 7, 8–9, (Lamar has not supported how the office generates revenue); *see also id*. at 10, 12).)

Zurich's representative similarly testified:

Q.    …What policy provision is Zurich relying on in this case to refuse payment for Lamar's claim for lost business income? I want Zurich's position on that.

---

[6] In its reply *SMF*, Lamar requests that the Court strike Zurich's above response because "the record materials Zurich cited do not support its denial of Fact No. 18." (Doc. 129-1 at 3.) However, Lamar does not cite to any rule, case, or law that requires the Court strike a response to a statement of material fact on this basis. Therefore, the Court declines to do so.

A.    Well, again, it's -- it's my understanding that they have not refused to pay, we just need more information to determine the correct amount to pay…

Q.    And so it is Zurich's position today that it still doesn't have enough information to pay Lamar one penny for the business interruption loss Lamar sustained as a result of Hurricane Maria, even though Zurich was entitled to take discovery from Lamar in this case; is that correct?....

A.    We need additional information, from my understanding of the file.

(Zurich Dep., Doc. 118-4 at 18–19, 20; *id*. at 14 ("Q. As of today, Zurich has never made any offer whatsoever to Lamar to settle any of Lamar's claim for lost business income as a result of Hurricane Maria, has it? A. No. My understanding is Zurich is still waiting on documentation to support the claim.").)

In response, Lamar contends that the above cited evidence fails to dispute that at least $1 of its business income loss resulted from a suspension of business operations at its office due to physical damage to the office.[7] (Doc. 129-1 at 3.) It then cites to Zurich's Rule 30(b)(6) testimony wherein Zurich's representative testified that he was not aware of any provision in the Policy stating that if Lamar sustained damage to both its billboards and its office, then there is no coverage at all for Lamar's business income losses. (Zurich Dep., Doc. 110-1 at 21–22.)

### E.  Policy Provisions

The parties identify the following Policy provisions as relevant to the instant motions:

SECTION IV – TIME ELEMENT

4.01.   LOSS INSURED

4.01.01.    The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary

---

[7] In its reply *SMF*, Lamar again asks the Court to strike Zurich's above response because "the record materials Zurich cited do not support a denial of Fact No. 21." (Doc. 129-1 at 3.) However, Lamar does not cite to any rule, case, or law that requires the Court strike a response to a statement of material fact on this basis. Therefore, the Court again declines to do so.

**Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location**[.]

(Policy, Doc. 105-3 at 31.)

4.02. TIME ELEMENT COVERAGES

4.02.01.        GROSS EARNINGS

4.02.01.01.    Gross Earnings loss is the actual loss sustained by the Insured during the Period of Liability.

4.02.01.02.    Gross Earnings value is determined as follows:

4.02.01.02.01.        The sum of:

4.02.01.02.01.01.                Total net sales value of production;

4.02.01.02.01.02.                Total net sales of **Merchandise**;

4.02.01.02.01.03.                The rental income; and

4.02.01.02.01.04.                Other income derived from the Insured's business activities.

4.02.01.02.02.        Less the cost of the following:

4.02.01.02.02.01.                **Raw Stock** from which production is derived;

4.02.01.02.02.02.                Supplies consisting of materials consumed directly in conversion of **Raw Stock** into **Finished Stock** or in supplying the service(s) sold by the Insured;

4.02.01.02.02.03.                **Merchandise** sold, including related packaging materials; and

4.02.01.02.02.04.                Service(s) purchased from outsiders (not Insured's employees) for resale, which do not continue under contract.

4.02.01.02.03.        Gross Earnings loss is determined as follows:

Gross Earnings value that would have been earned during the Period of Liability, less charges and expenses that do not necessarily continue during the Period of Liability.

(Policy, Doc. 105-3 at 31–32.)

SECTION VII - DEFINITIONS

The following term(s) wherever used in this Policy means:

7.11.        **Covered Cause of Loss** - All risks of direct physical loss of or damage from any cause unless excluded….

13

7.56.        **Suspension** (**Suspended**) -

7.56.01.            The slowdown or cessation of the Insured's business activities: or

7.56.02.            As respects rental income that a part or all of the Insured Location is rendered untenantable.

(Policy, Doc. 105-3 at 64–65, 70.)

Finally, Endorsement Number 3 of the Policy provides:

**It is hereby agreed and understood that the following changes are made to the policy:**

Billboards, highway signs, and bus stop advertising structures are excluded from Covered Property on this policy. (Doc. 105-3 at 93; Doc. 105-2 at ¶ 2; Doc. 118-2 at ¶ 2.)

## II.   Relevant Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

### III.   Parties' Arguments[8]

#### A.  Zurich's Motion for Partial Summary Judgment

#### 1. Zurich's Original Memorandum (Doc. 105-1)

Zurich argues that it is entitled to a partial summary judgment holding: (1) that the Policy excludes billboards from "Covered Property," and (2) thus, there is no coverage for Lamar's business interruption claim. (Doc. 105-1 at 1.)

In support of its first argument, Zurich cites to Endorsement Number 3 of the Policy which provides, "Billboards… are excluded from Covered Property on this policy." (*Id*. at 3 (citing Policy, Doc. 105-3 at 93).)

In support of its second argument, Zurich also cites to the Policy, specifically, the Time Element coverage section, which provides in relevant part:

> The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location**, …

(*Id*. at 4 (citing Policy, Doc. 105-3 at 31 (emphasis in original)).) Based on the "plain language" of this provision, Zurich represents that "a Time Element loss must result from the suspension of Lamar's business activities at an 'Insured Location,' and that the suspension must be due to direct physical loss or damage to Property covered by the Policy – in this case, its office and/or warehouse." (*Id*.) However, since billboards are not Covered Property under the Policy, the Time Element coverage does not apply to any physical loss of or damage to them. (*Id*.)

---

[8] The Court notes that certain arguments relating to off-premises service interruption time element loss have been omitted as irrelevant for the purposes of both motions.

Despite this, Zurich points out that Lamar made a business interruption claim using lost revenues from damage to its billboards. In support of this contention, Zurich relies on the testimony of Lamar's forensic accountant, Stephens, who testified: (1) that the business interruption calculations he prepared for Lamar included lost revenues from damaged billboards and (2) that he did not and could not calculate a business interruption loss without using loss of revenues from its damaged billboards. (*Id*. at 4–5 (citing Stephens Dep., Doc. 105-4 at 64, 65).) Therefore, based on Stephens' testimony, and the fact that billboards are not Covered Property under the Policy, Zurich concludes that it is entitled to a partial summary judgment holding that there is no coverage for Lamar's business interruption claim. (*Id*. at 5.)

### 2. Lamar's Opposition (Doc. 118)

In opposition, Lamar argues that Zurich's position should be rejected for three reasons. First, Zurich mischaracterizes Stephens' testimony. (Doc. 118 at 10–12.)  According to Lamar, it is "not Stephens' testimony (as Zurich represents) that all of Lamar's lost business income was due 'solely' to the damaged billboards." (*Id*. at 12.) On the contrary, Stephens testified that at least $663,000 of Lamar's business income losses were due to a suspension of business operations at its office resulting from physical damage to that office, which is covered by the Policy. (*Id*.)

> Additionally,
>
> Stephens testified that his business interruption calculations "include lost revenues from damaged billboards" and that he "would need" to consider lost revenues from damaged billboards in his calculations because he took the total business income losses Lamar sustained due to all causes of loss (including lost revenues due to damage to the office, as well as lost revenues due to damage to the billboards) and then segregated those total business income losses between: (i) losses attributable to a suspension of business operations at Lamar's Puerto Rico office because of damage to the Puerto Rico office and its contents; and (ii) losses attributable to damage to Lamar's billboards. … Therefore, the only evidence Zurich relies on to support its motion does not even support its position.

(*Id*. at 10–11, 12 (citing Stephens Dep., Doc. 118-2; Stephens Rep., Doc. 118-2 at 28).)

Second, the issue raised in Zurich's motion—whether Lamar's lost business income resulted solely from damage to its office or damage to billboards—"is inherently a factual issue as to the cause of Lamar's business income loss," which cannot be decided on summary judgment "unless reasonable minds could not differ" on the issue after drawing all reasonable inferences in Lamar's favor. (*Id*. at 2, 12–13 (citing *Int'l Shortstop*, 939 F.2d at 1263).)

Lamar then cites to four cases which "demonstrate the insured's minimal burden in opposing its insured's summary judgment motion on the issue of the causation of a business income loss." (*Id*. at 13–16.) Specifically, Lamar cites to *Evans* and *Clover*, wherein the court denied the insurer's motion for summary judgment because there was a dispute as to whether the business interruption claim was caused by roof damage (as the insured testified) or other factors (as the insurer contended). (*Id*. at 13–14 (citing *Evans v. Lafayette Ins. Co*., 2007 WL 4545883 (E.D. La. Dec. 18, 2007); *Clover v. Allstate Ins. Co*., 2008 WL 821961 (E.D. La. Mar. 26, 2008)).)

Lamar cites *ABM Industries* for the proposition that "the concurrence of damage to property that is covered by the policy and damage to property that is not covered by the policy does not bar an insured's claim for lost business income due to damage to property that is covered by the policy." (*Id*. at 15–16 (citing *Zurich Am. Ins. Co. v. ABM Indus., Inc.,* 397 F.3d 158, 167 (2d Cir. 2005)).)

Lastly, Lamar points out that the court in *Courtenay* noted, "[t]he cause of the suspension is a question of fact to be determined at trial, and if Plaintiff meets its burden of establishing that the suspension was caused by direct physical loss to property resulting from a Covered Cause of

17

Loss, then coverage is triggered." (*Id*. at 14–15 (quoting *Courtenay, Hunter & Fontana, LLP v. Massachusetts Bay Ins. Co.,* 2008 WL 3876421, at *3 (E.D. La. Aug. 19, 2008)).)

Thus, applying the above principles to this case, Lamar argues that reasonable jurors, drawing all reasonable inferences in its favor, could render a verdict that its business income losses were due to "direct physical loss of or damage" to its Puerto Rico office, which it contends is covered by the Policy. (*Id*. at 16–17.)

Finally, Lamar argues that:

> While Zurich failed to prove that all of Lamar's business income losses are unambiguously excluded from coverage under the Policy, Lamar met its burden of opposing Zurich's motion for summary judgment simply by showing that: (a) Lamar sustained a business income loss; [and] (b) there was significant damage to the office, warehouse, paperwork, computers, desks, phones, chairs, stock, and other equipment resulting in a suspension of business activities at the Office for months….
>
> When Ralph Stephens' testimony is put in its correct context and the full summary judgment record is considered, not only is summary judgment in Zurich's favor unwarranted because a juror drawing all reasonable inferences in Lamar's favor could render a verdict that Lamar's business income loss was due to "direct physical loss of or damage" to Lamar's office, warehouse, and contents (covered by [the] Policy), […] but Lamar is affirmatively entitled to a summary judgment that Zurich is liable for penalties, attorneys' fees, and costs due to Zurich's failure to timely pay even $1 of Lamar's lost business income claim.

(*Id*. at 13, 16–17.)

### 3. Zurich's Reply (Doc. 128)

In response, Zurich contends that its motion presents two "simple" coverage issues: (1) whether Lamar's billboards are excluded as Covered Property from the Policy; and (2) whether coverage is excluded for Lamar's business interruption claim because it was calculated using lost revenues from its damaged billboards. (Doc. 128 at 1.)

Preliminarily, Zurich represents, that contrary to Lamar's argument, interpretation of the Policy is at issue, not causation, which can properly be resolved on summary judgment. (*Id*. at 1–

2 (citing *Principal Health Care v. Lewer Agency*, 38 F.3d 240, 242 (5th Cir. 1996)).) As such, the cases Lamar relies on are distinguishable from the case at hand because there is no question in this case that Lamar's business interruption loss was caused by a covered peril. (*Id.* at 2–3, 6–9.)

It then points out that Lamar does not dispute the first issue—that its billboards are excluded from Covered Property under the Policy. (*Id.* at 2.) Thus, the only remaining issue is "whether Lamar can calculate a business interruption claim related solely to damage to its office, without using lost revenue from its damaged billboards." (*Id.*) And again, Zurich contends that since Stephens testified that he did not and could not calculate Lamar's business interruption claim without using lost revenues from damaged billboards, there is no coverage under the Policy. (*Id.* at 2, 3–4.)

Zurich also takes issue with Lamar's contention that it has affirmatively established that Zurich is liable for at least $1 in business income loss covered under the Policy. (*Id.* at 5.) According to Zurich, (1) Lamar has failed to produce sufficient evidence to show that it sustained a business interruption loss solely attributable to damage to its office; (2) Lamar has not produced any evidence to show that its office generated any revenue at all; and (3) the evidence Lamar has produced in support of its claim shows that all its revenue was derived from billboards. (*Id.*)

Moreover, Stephens' testimony that he cannot calculate Lamar's business interruption loss without using lost revenues from damaged billboards directly contradicts Lamar's claim that at least some of its business interruption loss was due to damage to its office and not damage to its billboards. (*Id.* (citing Stephens Dep., Doc. 105-4 at 64, 65).)

### B.  Lamar's Motion for Partial Summary Judgment

Lamar's motion centers on the applicability of La. R.S. 22:1892. Both parties agree that to recover under this statute, an insured must prove that: (1) the insurer received satisfactory proof of the loss; (2) the insurer failed to pay the claim within thirty days of receiving satisfactory proof of loss; and (3) the insurer's failure to pay the claim was arbitrary, capricious, or without probable cause. (Doc. 111-1 at 25–26; Doc. 120 at 5.)

### 1. Lamar's Original Memorandum (Doc. 111-1)

Lamar begins with some of the same arguments included in its opposition to Zurich's motion for partial summary judgment. It first argues that the undisputed material facts support that it has made a prima facie showing that Zurich is liable for at least $1 of lost business income as covered by the Policy. (Doc. 111-1 at 6.)

Lamar then argues that Zurich is liable for penalties, attorneys' fees, and costs under La. R.S. 22:1892 because all three elements are met. It first contends that there is no genuine dispute of material fact that Zurich received "satisfactory proof of loss" no later than August 30, 2019. (*Id.* at 29.) According to Lamar, "satisfactory proof of loss" is a flexible requirement, that does not need to be in a formal style and is satisfied when an insurer has "enough information to act upon a claim." (*Id.* at 28 (quoting *Austin v. Parker*, 672 F.2d 508, 520 (5th Cir. 1982)).) Lamar outlines that Louisiana courts have found the following to constitute satisfactory proof of loss: a handwritten estimate of the cost of repairs (*id.* at 26 (citing *Sevier v. United States Fid. & Guar. Co.*, 497 So. 2d 1380 (La. 1986))); proof of insurance, photographs, and salvage information (*id.* at 27 (citing *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 2011-1355 (La. App. 3 Cir. 4/4/12); 88 So. 3d 1245)); an independent adjuster's opportunity to discover the extent of damages, but failure to do so (*id.* (citing *Aghighi v. La. Citizens Prop. Ins. Corp.*, 2012-1096 (La. App. 4 Cir. 6/19/13); 119 So. 3d 930, 934)); an insurer's constructive knowledge of the policy limits when it

failed to reasonably investigate the claim (*id*. (citing *Haynes v. Shumake*, 582 So. 2d 959, 962–63 (La. Ct. App. 2d Cir. 1991))); and an insured's first claim under the policy, even though the claim was still "a work in progress" (*id*. at 27–28 (quoting *R.J. Tricon Co., LLC v. Travelers Ins. Co*., 2009 WL 5173993 (E.D. La. Jan. 8, 2009))).

In addition to this flexible standard, Louisiana courts have "uniformly held that '[b]road latitude is given in proving lost profits because this element of damages is often difficult to prove,' 'such damages need be proven only within reasonable certainty,' and '[p]roof of such losses need only be as precise as circumstances in a particular situation allow.' " (*Id*. at 28 (citations omitted).)

Under the flexible standards set out above, Lamar argues that Zurich received satisfactory proof of loss by August 30, 2019, because Zurich had: (a) pictures, documentation, and multiple inspections showing that Lamar's office was severely damaged, and that no business operations were being conducted in that office for months; (b) documentation estimating that Lamar sustained at least $4 million in total business income losses as a result of Hurricane Maria; (c) two estimates from Lamar that it sustained at least $663,000 in business income losses attributable to suspension of business operations at its office; and (d) an estimate from Zurich's accountant that Lamar had sustained more than $1 but less than $500,000 in business income losses attributable to suspension of operations at its office. (*Id*. at 29–30.)

Lamar then avers that there is no genuine dispute of material fact that Zurich failed to pay within 30 days of receiving satisfactory proof of loss on August 30, 2019, since it has not paid for any of that loss to date. (*Id*. at 30.)

Lastly, Lamar argues that there is no genuine dispute of material fact that Zurich's failure to timely pay was "by definition, arbitrary, capricious, or without probable cause." (*Id*.)  Lamar

maintains that Louisiana courts have found an insurers' actions to be arbitrary, capricious or without probable cause when they are unjustified, lack a reasonable basis, or are without probable cause or excuse. (*Id.* at 30–31 (citing *Reed v. State Farm Mut. Auto. Ins. Co.,* 2003-0107 (La. 10/21/03); 857 So. 2d 1012).)

According to Lamar, the Louisiana Supreme Court in *La. Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08); 999 So. 2d 1104, explained that under La. R.S. 22:1892,

> [w]here there is a substantial, reasonable and legitimate dispute as to the extent or amount of the loss, the insurer can avoid the imposition of penalties only by unconditionally tendering the undisputed portion of the claim. This court held in *McDill* that an insurer cannot 'stonewall' an insured simply because the insured is unable to prove the exact extent of his damages. Where the exact extent of the damages is unclear, an insurer must tender the reasonable amount which is due. We have defined the "amount that is due" as 'a figure over which reasonable minds could not differ . . .' Any insurer who fails to pay said undisputed amount has acted in a manner that is, by definition, arbitrary, capricious or without probable cause.

(*Id.* at 31.)

Based on the foregoing, Lamar rejects Zurich's assertion that it still needs "more information to determine the correct amount to pay" as contrary to Zurich's "affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured." (*Id.* at 32.) Zurich's behavior is "the precise type of stonewalling the Louisiana Supreme Court prohibited in *La. Bag* and *McDill*." (*Id.* (citing *La. Bag*, 999 So. 2d at 1119–20).)

In sum, Lamar asks the Court to find Zurich liable under La. R.S. 22:1892 because Zurich received satisfactory proof of loss by August 30, 2019; Zurich has issued no payment on this claim to date; and this failure to pay is by definition arbitrary, capricious, and without probable cause. (*Id.* at 33–34.)

### 2. Zurich's Opposition (Doc. 120)

In opposition, Zurich repeats verbatim many of the arguments made in its motion for partial summary judgment. Zurich first re-urges its argument that Lamar has not made a prima

facie showing that Zurich is liable for any business income loss under the Policy. (Doc. 120 at 6.)

It also rejects Lamar's reliance on Mohlenhoff's estimate:

> What Mr. Mohlenhoff prepared – solely for purposes of mediation – was a "corrected claim," i.e., it was Lamar's own July 13, 2018 claim submission with corrected numbers that actually reflect revenue and expense trends from Lamar's own financial records. Moreover, it was prepared for the [sole] purpose of determining what Lamar's claim submission would be valued at if Zurich accepted Lamar's methodology. As Lamar knows, neither Zurich nor Mr. Mohlenhoff has ever accepted Lamar's methodology for calculating its alleged business income loss, because it uses lost revenue from damaged billboards and is based on a false allocation of expenses – rather than revenues – between its office and its billboards. Mr. Mohlenhoff's revision of Lamar's own defective and disputed claim submission is not prima facie evidence of liability.

(*Id*. at 6–7.)

Next, Zurich addresses Lamar's bad faith claim. Preliminarily, Zurich contends that "summary judgment is not appropriate when a claim for bad faith penalties depends on factual determinations concerning the reasonableness of the insurer's actions." (*Id*. at 5–6 (citing *Hartenstein v. State Farm Fire and Cas. Ins. Co.*, No. 07–4594, 2008 WL 2397713, at *3 & n. 22 (E.D. La. June 10, 2008)).) It also points out that because La. R.S. 22:1892 is penal in nature, it must be strictly construed. (*Id.* at 6.)

Zurich then raises an issue with the first element of the statute—satisfactory proof of loss. Specifically, it argues that it has not received satisfactory proof of loss because "Lamar has failed to produce sufficient evidence to show that it sustained a business interruption loss solely attributable to damage to its office." (*Id.* at 7.)  Lastly, Zurich re-iterates that there is no coverage for Lamar's business interruption claim under the Policy. (*Id*. at 8–9.)

### 3. Lamar's Reply (Doc. 129)

In response, Lamar contends Zurich is liable under the statute because Zurich had "satisfactory proof" that Lamar suffered at least $1 in covered business income loss and Zurich failed to pay for any of that loss to date. (Doc. 129 at 2–5.)

It then argues that Zurich failed to demonstrate a genuine issue of material fact sufficient to preclude summary judgment because it did not identify specific evidence in the record: (a) that Lamar did not sustain at least $1 in lost business income attributable to its office; (b) that a Policy exclusion clearly and unambiguously excludes all of Lamar's claim; or (c) that Zurich did not receive "satisfactory" proof of loss. (*Id.* at 5.)

Lamar rejects Zurich's reliance on Stephens' and Mohlenhoff's testimony as "misplaced". (*Id.* at 4.) According to Lamar, Mohlenhoff's assertion that he prepared "corrected claims" and not "estimates", does not create a genuine issue of material fact because: (1) on August 30, 2019, Zurich received Stephens' report, which estimated that Lamar sustained at least $663,000 in lost business income attributable to its office; and (2) Mohlenhoff does not opine that Lamar did not sustain at least $1 in business income loss as a result of a suspension of Lamar's operations due to physical damage to the office. (*Id.*)

Lamar also rejects Mohlenhoff's assertion that "[a]ll the revenue information provided [to him] was revenues from billboards" as conclusory, unsubstantiated, and immaterial. (*Id.* at 6.) Lamar explains:

> That Lamar "generates revenue" by leasing billboards is not material to Lamar's Motion. Even accepting as true Brian Mohlenhoff's bald assertion, … [it] does not change the undisputed material fact that at least some of Lamar's business income was lost because Lamar had no office and no business equipment for months; nor does it affirmatively establish that all of the income Lamar lost was due to damaged billboards. Brian Mohlenhoff's clear and unequivocal testimony was that: (a) he "cannot attribute what amount of Lamar's business interruption loss is related to the office or billboards or anything else"; and (b) he does not opine that Lamar sustained no business income loss as a result of a suspension of business activities at Lamar's Puerto Rico office caused by damage to the office. Therefore, there is no genuine issue of material fact here.

(*Id.* at 7–8.)

24

Lastly, Lamar contends that Stephens' testimony does not create a genuine issue of material fact. Again, Stephens explained that in calculating Lamar's total business income loss, he segregated billboard losses from office related ones and concluded that Lamar sustained at least $663,000 in business income losses attributable to physical damage to the office. (*Id*. at 5–6.) Thus, based on the undisputed evidence, there is no genuine issue of material fact that Zurich is liable under La. R.S. 22:1892 because it received satisfactory proof of loss for Lamar's business interruption claim by August 30, 2019, and to date, has failed to pay any of that loss. (*Id*. at 10.)

## IV. Law and Analysis

### A. Contract Interpretation

A special subset of principles governs the treatment of contracts at this procedural stage. Generally, under controlling Louisiana law, "[w]hen a contract can be construed from the four corners of the instrument, interpretation of the contract presents a question of law that can be decided on summary judgment." *Young v. Tolintino*, 44, 631 (La. App. 2 Cir. 12/2/09); 26 So. 3d 835, 838; *see also, e.g.*, *Sims v. Mulhearn Funeral Home,* Inc., 2007-0054 (La. 05/22/07), 956 So. 2d 583, 590. As such, determining whether a contract is unambiguous and interpreting an unambiguous contract are treated as questions of law. *See* La. Civ. Code art. 2046; *Sport Tech, Inc. v. SFI Mfg.*, 36,413 (La. App. 2 Cir. 12/20/02); 838 So. 2d 807, 816; NAB *Natural Res., L.L.C. v. Willamette Indus.*, 28,555 (La. App. 2 Cir. 08/21/96); 679 So. 2d 477, 480; *Brown v. Drillers, Inc.*, 93-1019 (La. 01/14/94); 630 So. 2d 741, 748. If, however, the contract is ambiguous, its opacity can only be resolved by a duly appointed factfinder, not a court on a motion for summary judgment. *See, e.g.*, *Prejean v. Guillory*, 2010-0742 (La. 7/2/10); 38 So. 3d 274, 279; *Elston v. Montgomery*, 46,262 (La. App. 2 Cir. 05/18/11); 70 So. 3d 824, 830–31.

As the Supreme Court of Louisiana has often repeated, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Carbon v. Allstate Ins. Co.*, 97-3085 (La. 10/20/98), 719 So. 2d 437, 439. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045; *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 12-2055 (La. 03/19/13); 112 So. 3d 187, 192. The parties' reasonable intention must be determined "by examining the words of the contract itself, and not assumed." *Lobell v. Rosenberg*, 2015-0247 (La. 10/14/15); 186 So. 3d 83, 89.

In this process, courts give contract terms their plain, ordinary, and generally accepted meaning unless the contract provides more specialized ones. *Lambert v. Md. Cas. Co.*, 418 So. 2d 553, 559 (La. 1982). "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code art. 2049; *Tri-State Bank & Trust v. Moore*, 609 So. 2d 1091, 1094 (La. Ct. App. 1992). "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050; *Olympia Minerals, LLC v. HS Res., Inc.*, 2013-2637 (La. 10/15/14); 171 So. 3d 878, 894.

### B. Bad Faith Statute

Courts in Louisiana have set forth that an insured seeking to recover the statutory penalties under La. R.S. 22:1892 must establish three elements: "(i) that the insurer received a satisfactory proof of loss, (ii) that the insurer failed to pay the claim within the applicable statutory period, and (iii) that the insurer's failure to pay was arbitrary and capricious." *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 368–69 (5th Cir. 2009). One who claims entitlement to penalties and attorney fees has the burden of proving the insurer received satisfactory proof of

26

loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. *Reed v. State Farm*, 857 So. 2d 1012, 1020 (La. 2003). Further, La. R.S. 22:1892 "must be strictly construed because it is penal in nature." *Richardson v. GEICO Indem. Co.*, 2010-0208 (La. App. 1 Cir. 9/10/10), 48 So. 3d 307, 314, *writ denied*, 2010-2473 (La. 12/17/10), 51 So. 3d 7).

With regard to the first factor, Louisiana has adopted "liberal rules concerning the lack of formality relative to proof of loss." *Sevier v. U.S. Fid. & Guar. Co.*, 497 So. 2d 1380, 1384 (La. 1986). Satisfactory proof of loss, as required for an insured to obtain penalties from an insurer, is that which is sufficient to fully apprise the insurer of the claim and extent of the damage. *La. Bag*, 2008-0453, p.16, 999 So. 2d at 1115; *McDill v. Utica Mutual Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985). So long "as the insurer obtains sufficient information to act on the claim, 'the manner in which it obtains the information is immaterial.' " *Sevier*, 497 So. 2d at 1384 (quoting *Austin v. Parker*, 672 F.2d 508, 520 (5th Cir. 1982)). Thus, a "satisfactory proof of loss occurs when the insurer has adequate knowledge of the loss." *In re Hannover Corp. of America*, 67 F.3d 70, 73 (5th Cir. 1995) (citations omitted).

Whether and when the insurer received "satisfactory proof of loss" sufficient to trigger the payment periods is a question of fact. 15 William Shelby McKenzie & H. Alston Johnson, III, La. Civ. L. Treatise: Insurance Law and Practice § 11:5 (4th ed. 2020) (citing *McDill*, 475 So. 2d at 1089; *La Louisiane Bakery Co. Ltd. v. Lafayette Ins. Co.*, 61 So. 3d 17 (La. Ct. App. 5th Cir. 2011); *Iteld v. Four Corners Const., L.P.*, 133 So. 3d 312 (La. Ct. App. 4th Cir. 2014); *Lemoine v. Mike Munna, L.L.C.*, 148 So. 3d 205 (La. Ct. App. 1st Cir. 2014)).

Whether an insurer's conduct is arbitrary and capricious is also finding of fact. *Id.* The Louisiana Supreme Court has cautioned that summary judgment is rarely appropriate when

determining if an insurers actions were arbitrary and capricious. In *Merwin v. Spears*, 2012-0946 (La. 6/22/12), 90 So. 3d 1041, 1042, the Louisiana Supreme Court reversed a district court's grant of summary judgment explaining:

> [F]or purposes of plaintiffs' penalty claim, the issue is whether Farmers' failure to make timely payment was arbitrary, capricious, or without probable cause. La. R.S. 22:1892. We conclude there are genuine issues of material fact as to whether Farmers' initial decision to deny the claim, based on its investigation and consultation with plaintiffs' expert, was reasonable under the totality of the facts. Therefore, the district court erred in granting summary judgment on this issue.

*Merwin v. Spears*, 2012-0946 (La. 6/22/12), 90 So. 3d 1041, 1042.

### C. Analysis

The Court will first address Zurich's motion, which raises questions of Policy coverage and interpretation. The Court will then address Lamar's motion, which will require the Court to determine whether Lamar is entitled to bad faith penalties under La. R.S. 22:1892 for its business interruption claim. Related to this issue is whether there is at least some portion of Lamar's claim which is undisputed.

### 1. Zurich's Motion for Partial Summary Judgment

Preliminarily, the parties dispute whether the determination of coverage for the business interruption claim can be properly resolved on summary judgment. Lamar contends that Zurich's motion cannot be resolved on summary judgment because it raises factual issues as to the cause of its business income loss. (Doc. 118 at 12–13.) On the other hand, Zurich argues causation is not the issue, interpretation is, which can properly be resolved on summary judgment. (Doc. 128 at 1–2.) The Court agrees with Zurich: whether Lamar's business interruption claim is prohibited based on the language of the Policy is a legal question that can properly be resolved on summary judgment. *McGuire v. Am. S. Home Ins. Co.*, 2007-0810 (La. App. 4 Cir. 10/10/07), 969 So. 2d 681, 684 (citing *Robinson v. Heard*, 01–1697, p. 4 (La.

2/26/02), 809 So. 2d 943, 945)) ("Interpretation of an insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment.").

As such, the four cases that Lamar cites to "demonstrate the insured's minimal burden in opposing its insured's summary judgment motion on the issue of the causation of a business income loss," are distinguishable on this ground alone. (Doc. 118 at 13–16.) For example, in *Evans*, the question before the court was whether the cessation of the insured's business was caused by wind damage to its roof (a covered peril) or other factors such as lack of power and a mandatory evacuation order (non-covered perils). *Evans v. Lafayette Ins. Co*., 2007 WL 4545883, at *3 (E.D. La. Dec. 18, 2007). The court denied the insurer's motion for summary judgment because there were disputed issues of fact regarding the cause of the business interruption loss. *Id*. There was no dispute that the property itself was covered under the insurance policy issued in that case.

In *Clover*, the question before the court was whether the insured's business interruption loss was caused by physical damage to the building from a hurricane, or because she decided not to re-open her store and move to another state. *Clover v. Allstate Ins. Co*., 2008 WL 821961, at *3 (E.D. La. Mar. 26, 2008). Like the court in *Evans*, the court in *Clover* denied the insurer's motion for summary judgment because there were disputed issues of fact regarding the cause of the business interruption loss. *Id*. at *4. Again, there was no dispute that the property itself was covered under the insurance policy.

In *Zurich American*, the insured—which provided janitorial, lighting and engineering services throughout the World Trade Center ("WTC") complex—sought business interruption coverage for income derived from property that it "used" and "controlled", such as freight elevators, janitorial closets, and storage rooms. *Zurich Am. Ins. Co. v. ABM Indus., Inc.,* 397 F.3d

158, 166 (2d Cir. 2005). The district court held that it could not recover under the business interruption provision because "[t]he undisputed cause of the interruption here was the destruction of the World Trade Center, which would have totally interrupted the ABM business here in issue regardless of what happened to the freight elevators, loading docks, etc." *Id*. at 167. However, the Second Circuit found that since the destruction of the WTC and the properties owned by ABM were simultaneous, the ruination of the WTC was the cause of ABM's business interruption such that it could recover under the policy. *Id*.

      *Courtenay* also involved a business interruption claim where the cause of the plaintiff's suspension of business was in question. *Courtenay, Hunter & Fontana, LLP v. Massachusetts Bay Ins. Co.,* 2008 WL 3876421, at *3 (E.D. La. Aug. 19, 2008). The defendant contended that the plaintiff's operations were suspended in accordance with the Civil Authorities and Utilities sections of the insurance policy. *Id*. The plaintiff, on the other hand, sought recovery under the business income section of the policy by "implicitly contending that it suspended its operations due to property damage at the premises." *Id*. The court noted that under the express terms of the policy in that case, the cause of the suspension would determine whether coverage under the business income section applied. *Id*.  It explained "[t]he cause of the suspension is a question of fact to be determined at trial, and if Plaintiff meets its burden of establishing that the suspension was caused by direct physical loss to property resulting from a Covered Cause of Loss, then coverage is triggered." *Id*.

      Unlike the above cases, there is no question that Lamar's business interruption was caused by a Covered Cause of Loss—Hurricane Maria. (*SMF* ¶ 6, Doc. 111-2; *OSMF* ¶ 6, Doc. 120-1.)  Instead, the question before the Court is whether, under the terms of the Policy, lost

business income is only payable when operations are suspended simultaneously due to damage to covered property and damage to excluded property.

Now, turning to the heart of the matter, it is undisputed that billboards are excluded from Covered Property under the Policy. (Doc. 105-2 at ¶ 2; Doc. 118-1 at ¶ 2; Doc. 105-3 at 93.) Based on this, Zurich argues that there is no coverage for *any* of Lamar's lost business income because the Policy requires that the loss be caused "solely," "directly," or "exclusively" from damage to covered property. (Doc. 128 at 3.) However, the language in the Policy fails to support Zurich's position. The Time Element coverage section states in relevant part as follows:

> The Time Element loss must result from the necessary Suspension of the Insured's business activities at an Insured Location. The Suspension must be **due to direct physical loss of or damage to Property** (of the type insurable under this Policy other than Finished Stock) caused by a Covered Cause of Loss **at the Location**, …

(Policy, Doc. 105-3 at 31 (emphasis added).)

Notably, the words "solely," "directly," and "exclusively" are absent from this provision. Thus, to prevail on this argument, Zurich would have the Court read language into the contract which does not appear in the Policy. As Lamar correctly contends, there is no requirement that the business income loss or even the Suspension of business activities "directly", "solely", or "exclusively" result from physical loss of or damage to Property of the type insured by the Policy. Instead, the Policy only requires that the damage to property causing the interruption in operations must be attributable to a Covered Cause of Loss.

Under a plain reading of the Policy, if Lamar can establish that it suspended operations due to damage to Property (of the type insurable under this Policy…), including its office, that resulted from a non-excluded peril, then coverage under the business interruption section is triggered, even if business income may also have been lost because of damage to billboards. Again, nothing in the Policy restricts business interruption coverage to situations where damage

must be related solely to Covered Property. Additionally, Zurich has not directed the Court to any provision in the Policy that provides that if there is damage to both the office and the billboards, then there is no coverage at all for Lamar's business income losses.

After a thorough reading of the Policy, the Court finds that the Policy is clear and unambiguous on its face and can be enforced as written.  As the Louisiana Supreme Court stated, "the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists." *Cadwallader v. Allstate Ins. Co.,* 2002-1637 (La. 06/27/03); 848 So. 2d 577, 580. Applying the established rules of construction, the Court concludes that the argument set forth by Zurich is not a reasonable interpretation of the Policy.

As such, the Court is not required to consider extrinsic evidence in interpreting its meaning. *Lloyds of London v. Transcontinental Gas Pipe Line Corp.,* 101 F.3d 425 (5th Cir. 1996) (Only upon finding a term of the contract ambiguous will the court consider extrinsic evidence in interpreting its meaning.); *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.,* 89 F.3d 243, 246 (5th Cir. 1996) (upon determination of ambiguity, extrinsic evidence may be considered to determine contract's meaning). Nevertheless, even if the Court were to consider extrinsic evidence, Stephens' testimony, which Zurich heavily relies on, does not support its position.

Zurich represents Stephens' testimony to be that all of Lamar's lost business income was due "solely" to the damaged billboards. However, nowhere in the record does Stephens say this. On the contrary, Stephens estimated that at least $663,000 of Lamar's business income losses were due to a suspension of business operations at its office resulting from physical damage to the office. (Stephens Rep., Doc. 105-5 at 3.) In reaching this estimate, Stephens testified that he took the total business income losses Lamar sustained due to all causes of loss and segregated

those losses attributable to a suspension of business operations at the office from those

attributable to damage to the billboards. (Stephens Rep., Doc. 105-5 at 3; Stephens Dep., Doc.

118-2 at 9–19.)

    Thus, it is immaterial that Stephens testified: (1) "that the business interruption

calculations he prepared for Lamar included lost revenues from damaged billboards" and (2) that

he did not and could not calculate a business interruption loss without using loss of revenues

from its damaged billboards because he segregated them out. (Stephens Dep., Doc. 105-4 at 8,

9.)  And again, there is nothing in the Policy that prohibits this.

    Additionally, Zurich's representative testified that he was not aware of any provision in

the Policy stating that if Lamar sustained damage to both its billboards and its office, then there

is no coverage at all for Lamar's business income losses. (Zurich Dep., Doc. 110-1 at 21–22.)

    In sum, not only is Zurich's interpretation of the Policy unreasonable, it has failed to

establish that "there is no reasonable interpretation of the policy, when applied to the undisputed

material facts shown by the evidence supporting the motion, under which coverage [for Lamar's

business income losses] could be afforded." *Reynolds v. Select Properties, Ltd.,* 93-1480 (La.

4/11/94), 634 So. 2d 1180, 1183. Therefore, Zurich's motion for partial summary judgment is

denied.

### 2. Lamar's Motion for Partial Summary Judgment

    The Court now turns to Lamar's motion for partial summary judgment which turns on

whether Lamar has proven that "[Zurich] received satisfactory proof of loss… [and Zurich's]

failure to pay was arbitrary and capricious." *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 368–

69 (5th Cir. 2009).

Fully distilled, Lamar's motion is predicated on a single conclusion: no jury could reasonably construe the evidentiary record in such a manner as to find that Zurich was not "arbitrary, capricious or without probable cause" when it failed to tender a payment for Lamar's business income loss. Here, however, if a jury were to believe Zurich's experts and disbelieve that of Lamar, that jury could so conclude. True, a jury may not find Zurich's experts to be credible; true, these experts' opinions may not prove persuasive, their cogency overwhelmed by the weight of contrary testimony. But, just as true, the jury may find that Zurich's experts are worthy of belief and that Lamar never provided Zurich with data sufficient to allow it to determine the loss attributable to the covered property. Thus, at present, evidence for Zurich's side of this argument, amounting to far more than a scintilla, can be assembled from the extant record. "In these and similar cases, courts have again and again concluded that the dueling theories of ostensibly credible experts create a triable issue of fact…." *Lalumandier v. State Farm Mut. Auto. Ins. Co.,* No. 13-426-JWD-RLB, 2016 WL 3211515, at *3 (M.D. La. Jan. 28, 2016) (deGravelles, J.) (collecting cases). Such issues must be resolved by a jury and not by any court, for a "reasonable jury could [still] return a verdict for the nonmoving party," *Id.* (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). Lamar's bad faith claim is just such a contest.

### a. Coverage

Preliminarily, the Court notes there are questions of fact as to whether Lamar met its initial burden of establishing a prima facie showing it made a satisfactory proof of loss as to at least a portion of its business interruption claim, *i.e.* that at least a portion of the claim is undisputed.

34

The Policy at issue is an "all risk" policy, which creates "a special type of coverage that extends to risks not usually covered under other insurance." (*SMF* ¶ 1, Doc. 111-2; *OSMF* ¶ 1, Doc. 120-1.) *See Dow Chemical Co. v. Royal Indem. Co.,* 635 F.2d 379, 386 (5th Cir. 1981). Under an "all-risk" policy, an insured need only prove direct physical loss to covered property. *Living Word Bible Church, Inc. v. Travelers Indem. Co*., No. 07-7450, 2009 WL 2856127, at *2 (E.D. La. Sept. 1, 2009). Once an insured has proven a loss covered under the policy, the burden shifts to the insurer to prove policy limits or exclusions. *Tunstall v. Stierwald,* 809 So.2d 916, 921 (La. 2002). This burden placed on the insurer is a heavy one since the policy must contain a clear and unambiguous expression of exclusion from coverage. *Auster Oil & Gas, Inc. v. Stream,* 891 F.2d 570, 580 (5th Cir. 1990); *Scarborough v. Northern Assurance Co. Of Am.,* 718 F.2d 130, 134 (5th Cir. 1983); *Burlington Res., Inc. v. United Nat'l Ins. Co.,* 481 F. Supp. 2d 567, 571 (E.D. La. 2007).

It is largely undisputed that Zurich is liable for some loss of business income under the Policy. Both parties agree that under the Policy: Lamar is the First Named Insured; the office was an Insured Location; and Hurricane Maria was a Named Storm and a Covered Cause of Loss. (*SMF* ¶¶ 4–6, Doc. 111-2; *OSMF* ¶¶ 4–6, Doc. 120-1.) Likewise, both parties agree that the office was physically damaged by Hurricane Maria. (*SMF* ¶¶ 6–11; *OSMF* ¶¶ 6–11; Zurich Dep., Doc. 118-4 at 16.)

The parties dispute mainly centers on the amount of the business income loss. Under Louisiana law, damages for loss of profits may not be based on speculation and conjecture. *La Louisiane Bakery Co. v. Lafayette Ins. Co.,* 09-825 (La. App. 5 Cir. 2/8/11), 61 So. 3d 17, 34. However, as Louisiana courts have held, "such damages need be proven only within reasonable certainty ... [b]road latitude is given in proving lost profits because this element of damages is

often difficult to prove and mathematical certainty or precision is not required." *Id*. (citing *Cox Commc'ns v. Tommy Bowman Roofing*, *LLC*, 04-1666, (La. App. 4 Cir. 3/15/06), 929 So. 2d 161, 166–67; *Louisiana Farms v. Louisiana Depart't of Wildlife and Fisheries*, 95–845, (La. App. 3 Cir. 10/9/96), 685 So. 2d 1086, 1105; *Lavigne v. J. Hofert Co.,* 431 So. 2d 74, 77 (La. App. 1 Cir. 1983)). "Accordingly, where it is not possible to state or prove a perfect measure of lost earnings, 'courts have reasonable discretion to assess damages based upon all the facts and circumstances of the case.' " *Ochsner Clinic Found. v. Lexington Ins. Co*., 226 F. Supp. 3d 658, 673–74 (E.D. La. 2017) (quoting *Cotton Bros. Baking Co. v. Indus. Risk Insurers*, 774 F. Supp. 1009, 1028 (W.D. La. 1989)). "Proof of such losses need only be as precise as circumstances in a particular situation allow." *Id*. at 674 (citing *Citadel Broad. Corp. v. Axis U.S. Ins. Co.,* 2014-0326 (La. App. 4 Cir. 2/11/15), 162 So.3d 470, 475). *See also*, *Nick Farone Music Ministry v. City of Bastrop*, 179 So. 3d 629, 631 (La. App. 2015) ("Loss of business income or profits is a type of special damages that must be proved with reasonable certainty."); *Bayle v. Allstate Ins. Co.,* 615 F.3d 350, 361 (5th Cir. 2010) ("we could find no suggestion in Louisiana law that insureds are ever relieved of the burden of proving damages.").

Lamar argues that it has made a prima facie showing that Zurich is liable for at least $1 in covered business income loss based on Lamar's Rule 30(b)(6) testimony that it needed its Puerto Rice office to generate revenue (Doc. 110-13 at 15, 18–19) and Stephens' expert report which estimated that Lamar lost at least $663,000 in business income because of damage to its office caused by Hurricane Maria (Doc. 110-12 at 5).

However, Zurich disputes this and argues that there are genuine issues of material fact precluding summary judgment based on: (1) Stephens' testimony that he included losses resulting from damage to billboards when calculating Lamar's lost business income attributable

to its office; and (2) Mohlenhoff's testimony that: (a) he does not accept Lamar's methodology for calculating its business income loss; (b) "[a]ll the revenue information provided [to him] was revenues from billboards"; and (c) that he prepared "corrected claims" for the sole purpose of mediation. (Doc. 120 at 6–9.)

Here, Stephens' and Mohlenhoff's disagreement as to how to calculate Lamar's covered business income loss creates a genuine issue of material fact precluding summary judgment. *See Evans v. Lafayette Ins. Co*., No. 06-6783, 2007 WL 4545883, at *3 (E.D. La. Dec. 18, 2007) ("The experts for opposing sides take different approaches to the business loss analysis. Disputed issues of fact preclude the granting of summary judgment on this issue.")  Again, Stephens testified that he segregated the total business income loss between those losses resulting from damage to the office and those losses resulting from damage to billboards and concluded that Lamar sustained at least $663,000 in lost business income as a result of a suspension of its operations due to physical damage to the office. (Stephens Rep., Doc. 105-5 at 3; Stephens Dep., Doc. 118-2 at 9–19.) On the other hand, Mohlenhoff testified that both MDD and Zurich rejected Lamar's estimates because they include lost revenues from damaged billboards and are based on an allocation of expenses between the office and billboards instead of revenues. (MDD Dep., Doc. 120-4 at 8–10.)

Mohlenhoff also testified that Lamar has not supported how the office generates revenue and that his understanding of Lamar's income generation was that "the revenue comes from the billboard[s]…it comes from the panels that they rent." (Mohlenhoff Dep., Doc. 120-5 at 5, 7–9; *see also id*. at 12 ("the ultimate income comes from the billboard[s]").)

Likewise, MDD testified that "[it] cannot attribute what amount of any loss is related to the office or billboards or anything else." (MDD Dep., Doc. 110-3 at 19; *id*. at 15–17; *id*. at 18,

37

19 ("we've never been provided all the documents we needed to prepare an estimate" and that "all revenue information provided [to it] was revenues from billboards."); *id*. at 21 ("They lost revenues, but … that's different than business suspension.").)

Thus, while it is undisputed that Zurich is liable for some loss under the Policy, Lamar has failed to establish what amount Zurich is liable for since Lamar has not provided Zurich and its accountants with enough information to determine that amount. And although MDD testified that it had enough information to prepare an estimate of at least $1 (*see* MDD Dep., Doc. 110-3 at 23), Zurich's representative testified to the contrary:

> Q.    Is it Zurich's position today that Zurich does not owe Lamar a single penny for any lost business income that Lamar sustained as a result of Hurricane Maria?
>
> A.    No, that is not our position.
>
> Q.    Well, will Zurich acknowledge today that Lamar sustained at least $1 of lost business income as a result of Hurricane Maria that is covered by Zurich's policy?
>
>        Mr. King: Object to the form of the question.
>
> A.    No.
>
> Q.    Zurich will not acknowledge that?
>
> A.    That is correct.
>
> Q.    Zurich acknowledges that Lamar's Puerto Rico office was physically damaged as a result of Hurricane Maria, correct?
>
> A.    Correct.

(Zurich Dep., Doc. 118-4 at 15–16.)

### b. Bad Faith

Turning to Lamar's bad faith claim, and construing the evidence in a light most favorable to Zurich and drawing reasonable inferences in its favor (as required), the Court concludes that there are fact questions as to whether and when Zurich received satisfactory proof of loss. Based on the evidence, a reasonable juror could conclude that Zurich has not received satisfactory proof of loss on Lamar's business interruption claim. The best evidence of this is Zurich's Rule 30(b)(6) testimony which shows that it needs more information to verify and valuate the claim and, specifically, to determine which portion of the loss is attributable to damage to the office. Again, Zurich's representative testified:

> Q.    …What policy provision is Zurich relying on in this case to refuse payment for Lamar's claim for lost business income? I want Zurich's position on that.
>
> A.    Well, again, it's -- it's my understanding that they have not refused to pay, we just need more information to determine the correct amount to pay.…
>
> Q.    And so it is Zurich's position today that it still doesn't have enough information to pay Lamar one penny for the business interruption loss Lamar sustained as a result of Hurricane Maria, even though Zurich was entitled to take discovery from Lamar in this case; is that correct?....
>
> A.    We need additional information, from my understanding of the file.

(Zurich Dep., Doc. 118-4 at 18–19, 20; *id*. at 14 ("Q. As of today, Zurich has never made any offer whatsoever to Lamar to settle any of Lamar's claim for lost business income as a result of Hurricane Maria, has it? A. No. My understanding is Zurich is still waiting on documentation to support the claim.").)

Mohlenhoff's testimony also supports this.  In March of 2020, Mohlenhoff testified that he still doesn't have enough information to estimate with reasonable certainty what amount of business interruption loss was attributable to Lamar's office. (Mohlenhoff Dep., Doc. 120-5 at 6.) He explained that he needed additional information:

> A.    As we've talked about, I need to understand the various documents and what they represent. And there's revenue streams that I don't know what they are. There's revenues not assigned to a panel. I don't know why not. …I think it's just a blank for some reason. I would like to know why. Should it be, should it not be? Those are some questions I have….
>
> … it's kind of a wide-ranging question. I'd like to walk through the expenses, pre- and post-loss, understanding each one, what it is, what it represents, is it related to a billboard, is it related to an office…. [If] it's fixed? Is it variable?

(Mohlenhoff Dep., Doc. 120-5 at 6–7.)

He also testified that Lamar has not supported how its Puerto Rico office generates any revenue and that his understanding of Lamar's income generation was that "the revenue comes from the billboard[s]…it comes from the panels that they rent." (Mohlenhoff Dep., Doc. 120-5 at 7–9, 10; *id*. at 12 (Lamar has "totally different" revenue generation in that if the billboards are there, "they're getting revenue. If [they are] not, then they couldn't charge revenue.").)

Similarly, MDD's testimony demonstrates that although Lamar "suffered a loss of revenues," MDD has not been able to determine the amount of the loss attributable to damage to the office as it has "not been provided the documentations [it] needs to perform that final calculation." (MDD Dep., Doc. 120-4 at 16.) Specifically, MDD testified:

> Q.    Okay. Is it MDD's opinion that MDD does not currently have enough information to prepare any estimate of Lamar's Business Interruption loss attributable to damage to the Puerto Rico office and warehouse caused by Hurricane Maria?
>
> A.    Yes.… We've never been provided all the documents we needed to prepare an estimate…. We have general information, but I don't have enough to fully apply it to the pieces.

(MDD Dep., Doc. 120-4 at 18.)

> Q.    Does MDD currently have enough information to prepare any estimate of Lamar's Business Interruption loss that's attributable to damage to the Puerto Rico office?

A.      Yes. I have information but I cannot attribute.

(MDD Dep., Doc. 110-3 at 23; *id.* at 21 ("They lost revenues, but … that's different than

business suspension.").) (*See also*, Doc. 120-4 at 15–17 (MDD testifying that it can't opine

whether Lamar sustained any business interruption loss because of damage to its office because

it was "never provided enough information to fully understand the, the operations.").)[9]

Thus, while Lamar argues that, based on Stephens' report, it has provided satisfactory

proof of loss that at least $663,000 is owed under the Policy, Zurich has produced evidence from

which a reasonable juror could conclude that Zurich has not received satisfactory proof of loss

for Lamar's business interruption claim.

Additionally, the Court finds Lamar's contentions that Zurich could and did have

satisfactory proof of loss based on MDD's preparation of a "corrected claim" to be unpersuasive.

Again, MDD testified that the "corrected claim" was actually Lamar's July 2018 claim

presentation with numbers that reflect its own profit and loss statements. (MDD Dep., Doc. 110-

---

[9] The Court notes that MDD contradicts itself in its deposition. MDD initially said that it did not have enough information to prepare an estimate of Lamar's business interruption loss attributable to its office; however, it later testified as follows:

    Q.      Okay. Is it MDD's opinion that even with all the information provided in exhibit-24 to MDD on March 19, 2019, MDD still does not have enough information to prepare any estimate of Lamar's Business Interruption loss attributable to damage to the Puerto Rico office and warehouse caused by Hurricane Maria?

    A.      All the revenue information provided was revenues from billboards.

    Q.      Okay, I'm going to ask you again. Is it MDD's opinion that even with all the information provided to MDD in exhibit-24, MDD still does not have enough information to prepare any estimate of Lamar's Business Interruption loss attributable to damage to Lamar's Puerto Rico office and warehouse caused by Hurricane Maria?

    A.      No.

(MDD Dep., Doc. 120-4 at 19.) Despite MDD's contradictory testimony, Zurich has produced sufficient evidence that it did not and has not received enough information from Lamar to calculate its business interruption loss. It is up to the jury to decide which parts of MDD's testimony (if any) to believe. *Anderson*, 477 U.S. at 248. *Lalumandier*, 2016 WL 3211515, at *3.

3 at 18; Doc. 120-4 at 13–14.) MDD also testified that it disagreed with the allocation used in Lamar's July 2018 claim and explained that it would allocate the loss based on revenue by looking at "the various sources of revenue that were achieved for this operation and where they were from and apply what was related to billboard and what was related to the office." (MDD Dep., Doc. 120-4 at 8–10.) Moreover, MDD and Mohlenhoff both testified that they rejected Lamar's July 2018 estimate and the methods used to calculate it and that the "corrected claim" was prepared solely for purposes of mediation. (MDD Dep., Doc. 120-4 at 11–12, 13–14; Mohlenhoff Dep., Doc. 120-5 at 13–17, 18–20.) Therefore, at present, genuine issues of material fact preclude summary judgment on Lamar's bad faith claim. *See Faith Prods., LLC v. St. Paul Travelers Ins. Co*., No. 07-4726, 2009 WL 2823654, at *5 (E.D. La. Aug. 27, 2009) (finding summary judgment precluded based on genuine issue as to whether and when insurer received satisfactory proof of loss); *Wood v. Allstate Indem. Co.,* No. 15-2327, 2017 WL 217754, at *5 (W.D. La. Jan. 18, 2017).

Finally, to the extent that Lamar contends Zurich did not act reasonably, the Court likewise finds that genuine issues of material fact preclude summary judgment. "An insurer's conduct depends on the facts known to the insurer at the time of its action ...." *La. Bag*, 999 So. 2d at 1114. "When the insured claims penalties for refusal to pay a claim timely, the inquiry usually focuses on whether the insurer acted reasonably in its adjustment of the claim based on the facts known or that should have been known by the insurer. Normally, the reasonableness of the insurer's claims handling will be a factual issue, and cases involving this issue will be fact specific." 15 William Shelby McKenzie & H. Alston Johnson, III, La. Civ. L. Treatise: Insurance Law and Practice § 11:15 (4th ed. 2020). Summary judgment is rarely appropriate where motivation and intent, in this case Zurich's reasons for delaying payment, are at issue. *Goree v.*

42

*Lincoln Parish Detention Center Com'n*, No. 09-745, 2010 WL 4295328, at *3 (W.D. La. Oct. 22, 2010) (citing *Thornbrough v. Columbus and Greenville R. Co.*, 760 F.2d 633, 641 (5th Cir. 1985) (*rev'd on other grounds*)).

## V. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Partial Summary Judgment* (Doc. 105) filed by Defendant Zurich American Insurance Company is **DENIED**.

**IT IS FURTHER ORDERED** that the *Motion for Partial Summary Judgment Regarding Zurich's Failure to Pay for Any of Lamar's Lost Business Income* (Doc. 111) filed by Plaintiff Lamar Advertising Company is **DENIED**.

Signed in Baton Rouge, Louisiana, on March 29, 2021.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**