## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**LAMAR ADVERTISING COMPANY**

**VERSUS**

**ZURICH AMERICAN INSURANCE COMPANY**

**CIVIL ACTION**

**NO. 18-1060-JWD-RLB**

## RULING ON LAMAR ADVERTISING COMPANY'S MOTION TO EXCLUDE THE TESTIMONY OF ATTORNEY THOMAS SEGALLA

Before the Court is the Motion to Exclude the Testimony of Attorney Thomas Segalla ("Motion") filed by plaintiff Lamar Advertising Company ("Plaintiff" or "Lamar"). (Doc. 121.) It is opposed by defendant Zurich American Insurance Company ("Defendant" or "Zurich"). (Doc. 130.) Lamar filed a reply brief. (Doc. 133.) The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the Motion is granted in part and denied in part.

### I.    Background

Zurich issued a commercial property insurance policy ("Policy") to Lamar. Lamar claims it sustained property damage, loss of business income, professional fees and other losses as a result of Hurricane Maria on September 20, 2017 at its Puerto Rico office (Doc. 121-1 at 5), and has made a claim under the Policy alleging breach of contract, unfair trade practices, and violations of La. R.S. 22:1973 and 22:1892. (*Id.*)[1]  Lamar claims that it is entitled to "damages, penalties, attorneys' fees, and interest from Zurich as a result of Zurich's inadequate investigation, misrepresentations, untimely payments, and failure to pay under the Policy." (Doc. 8 at 1.) "Zurich

---

[1] The parties agree that the basis for jurisdiction in this Court is diversity of citizenship (Doc. 8 at 1), and therefore Louisiana substantive law applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

disputes that it received satisfactory proof of loss for Lamar's claims. Zurich further disputes that it was arbitrary or capricious in the adjustment of Lamar's claims. Zurich further avers that it acted reasonably and in good faith in its dealing with Plaintiff, and Zurich has thus fully complied with the terms of the Policy [,with Louisiana law], and all other applicable laws and regulations." (*Id.* at 3.)

In defense of its position, Zurich hired Thomas F. Segalla ("Segalla") as an expert witness regarding the "standards, customs and practices in the insurance industry, as impacted and shaped by existing case and statutory law, regarding the bad faith claims and contentions of [Lamar], which are the subject of this litigation; whether the claims handling, investigation, and evaluation of the first party claims arising out of the subject loss were reasonable and were conducted by Zurich in good faith, under the totality of the circumstances and under the standards, customs and practices in the insurance industry, as impacted and shaped by existing statutory and case law; and whether under standards, customs, and practices in the insurance industry, as impacted by existing applicable statutory and case law, under the totality of the circumstances, the coverage positions [of Zurich] with respect to the first party claims in this matter were reasonable and undertaken by Zurich in good faith." (Doc. 121-2 at 93.)

Lamar seeks to exclude the testimony of Segalla because of his alleged failure to use proper methodology, his incorrect understanding and interpretation of Louisiana law, the insufficiency of facts and data upon which he bases his opinions, his failure to explain "how and why" he reached his opinions, and his failure to perform a coverage analysis. (Doc. 121-1 at 2-5.)

## II.    Thomas F. Segalla

The subject of this motion is Thomas F. Segalla. Segalla's curriculum vitae is located at Doc. 121-2 at 130-135. Zurich elaborates on those credentials in briefing. (Doc. 130 at 3-6.) He is

the co-author of Couch on Insurance 3d and a practicing lawyer licensed in New York. (Doc. 121-2 at 131.) Lamar does not challenge his credentials or qualifications.[2] In any event, the Court finds him to be qualified to testify as to the matters set out in his report.

After having reviewed the claims file and other materials relating to Lamar's claims against Zurich, Segalla rendered the following opinions:

1. "Zurich did not breach the terms and conditions of the policy in its investigation, evaluation and handling of the first party claims." (Doc. 121-2 at 94.)

2. "[T]he claims handling, investigation and evaluation of the first party claims arising out of the subject loss and the coverage determinations and positions were reasonably determined by Zurich in good faith, and were not arbitrary or capriciously taken, nor were they without probable cause…" (*Id*.)

3. "Zurich acted reasonably and in good faith under the totality of the circumstances existing, in its investigation and evaluation of the first party claim…" (*Id*.)

4. "Zurich did not arbitrarily or capriciously, or without probable cause fail to make timely payment of an undisputed amount." (*Id*.)

5. "[M]y review of the documents of the deposition testimony relative to this matter, did not reveal that Zurich acted in an arbitrary or capricious manner or without probable cause." (*Id*.)

## III.    Summary of Arguments of the Parties

### A.  Lamar

Lamar posits six reasons why Segalla's testimony should be excluded:

1. Segalla "failed to furnish any 'objective, independent validation of his methodology' and explain how those sources support his opinions as required by *Brown v. Ill. Cent. R.R. Co*., 705 F.3d 531 (5th Cir. 2013)." (Doc. 121-1 at 2.)

---

[2] While Lamar does not directly challenge Segalla's credentials, it does so through the back door, accusing him of being a "New York lawyer who has never been employed by an insurance company [and] has never litigated an insurance claim in any Louisiana state or federal court." (Doc 121-1 at 1; *see also id*. at 15.) This charge is partly misleading in that Segalla handled and supervised "approximately 150 insurance claims files" as an independent contractor for Fireman's Fund Insurance Company. (Doc. 130 at 4.)

2. Segalla's "methodology is unreliable and flawed because it is based on his incorrect and insufficient understanding of Louisiana law." (*Id*.)

3. Segalla's "opinions are unreliable, flawed, and unhelpful to a jury because they are not based on sufficient facts or data." (*Id*. at 3; *see also id*. at 18-19.)

4. Segalla does not explain how and why he arrived at his result and "does nothing more than summarize facts and draw conclusions without providing any analysis." (*Id*. at 4; *see also id*. at 19-20.)

5. Segalla's opinions regarding an insured's duty to "understand" the policy, that an insurer has no "true fiduciary relationship" towards its insured, that an insured has an affirmative duty to investigate a claim and owes a duty of good faith and fair dealing to its insurer, and that Louisiana recognizes the "sophisticated insured" doctrine, are all "erroneous and inadmissible statements of Louisiana law and should be excluded." (*Id*.)

6. Because Segalla did not perform any coverage analysis in this case, his opinions regarding Zurich's coverage positions are without foundation and should be excluded. (*Id*. at 4-5.)

### B. Zurich

Generally, Zurich charges that Lamar's attack on Segalla is "based on mischaracterizations of his report and testimony and misstatements of the law." (Doc. 130 at 1.) It argues that Segalla is "one of the most qualified experts in the country" (*id*. at 3), and that he "has been cited by courts around the country as a renowned authority on the significance of certain policy language and customs and practices in the insurance industry." (*Id*. at 4 (citations omitted).) Zurich responds to each of the charges made by Lamar as follows:

1. Lamar: Segalla "failed to furnish any 'objective, independent validation of his methodology' and explain how those sources support his opinions as required by *Brown v. Ill. Cent. R.R. Co*., 705 F.3d 531 (5th Cir. 2013)."

   Zurich: Because Segalla's testimony is nonscientific and based on his "specialized knowledge, skill, education and experience", the reliability of his testimony "is not tied to the traditional *Daubert* factors." (Doc. 130 at 6.) Because of his extraordinary experience and expertise, and the application of same to the issues in this case, his opinions are sound, well supported and reliable. (*Id*. at 6-8.)

4

2.   Lamar: Segalla's "methodology is unreliable and flawed because it is based on his incorrect and insufficient understanding of Louisiana law."

Zurich: "Lamar repeatedly mischaracterizes Mr. Segalla's deposition testimony in order to make this tortured argument." (*Id.* at 8.) It then addresses each of the specific arguments made by Lamar, insisting that Segalla's opinions are based on a correct interpretation of Louisiana law. (*Id.* at 8-12.)

3.   Lamar: Segalla's "opinions are unreliable, flawed, and unhelpful to a jury because they are not based on sufficient facts or data."

Zurich: Segalla's opinions "are based on a review of tens of thousands of pages of documents, including Lamar's entire claim file, all of the documents produced by both parties in this case, the pleadings, discovery responses, and depositions taken in this case." (*Id.* at 11) Segalla reviewed only one deposition prior to writing his report "because only one deposition had been taken in this matter before the expert report deadline." (*Id.*) He then reviewed the remainder of the depositions before his own deposition.  (*Id.*) In any event, "whether Mr. Segalla's opinion [sic] are based on sufficient facts or data goes to the weight of his testimony, not its admissibility." (*Id.*)

4.   Lamar: Segalla does not explain how and why he arrived at his result and "does nothing more than summarize facts and draw conclusions without providing any analysis."

Zurich: Based on the thousands of pages of documents reviewed by Segalla, "[e]ach one of his opinions also discusses the analysis of the factual record in the context of the applicable standards, customs and practices in the insurance industry and Louisiana law." (*Id.* at 8.)

5.   Lamar: Segalla's opinions regarding an insured's duty to "understand" the policy, that an insurer has no "true fiduciary relationship" towards its insured, that an insured has an affirmative duty to investigate a claim and owes a duty of good faith and fair dealing to its insurer, and that Louisiana recognizes the "sophisticated insured" doctrine are all "erroneous and inadmissible statements of Louisiana law and should be excluded."

Zurich: Zurich responds to the individual arguments made by Lamar. (*Id.* at 8-10, 12.)

6.   Lamar: Because Segalla did not perform any coverage analysis in this case, his opinions regarding Zurich's coverage positions are without foundation and should be excluded.

Zurich: "once again, Lamar is misstating Mr. Segalla's testimony. [He] testified that he did not make a 'coverage determination' because he was not asked to." (*Id.* at 13.) Rather "he reviewed Zurich's 'coverage position' ". (*Id.*)

### C.  Lamar's Reply

In its reply, Lamar argues that Zurich fails to address its argument that this Court "already found that Mr. Segalla's opinions regarding 'satisfactory proof of loss' and conduct that is 'arbitrary, capricious, or without probable cause' are incorrect as a matter of law." (Doc. 133 at 2.) It insists that Zurich mischaracterizes Segalla's deposition testimony in an effort to rehabilitate his opinions but when one looks at the actual deposition testimony itself (some of which is quoted), it is clear that Lamar's position is correct and Segalla is in error. (*Id*. at 3-9.) Therefore, his testimony should be excluded.

## IV.   Standard

Pursuant to Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met. Lamar's motion is a *Daubert* challenge based on the lack of a sufficient factual foundation and his failure to use an accepted methodology. *See Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). In addition, Lamar challenges the accuracy and correctness of the legal principles upon which Segalla's opinions are based. When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc*., 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.' " *Id*. (quoting *Rodriguez v. Riddell Sports, Inc.,* 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

[W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (internal citations omitted).

The Supreme Court too has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (cited with approval in *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)). Cases following *Daubert* have expanded upon these factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

As this Court has explained:

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2)

relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011 at *1 (M.D. La. Oct. 12, 2010) (internal citations omitted) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Joiner*, 522 U.S. at 138-39 (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.' " *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 advisory committee's notes to 2000 amendment). Further, as explained in *Scordill v. Louisville Ladder Grp., LLC*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to " 'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.' "

No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States*

*v. 14.38 Acres of Land, More or Less Sit. in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

"As one Court of Appeals has stated, trial judges are gatekeepers, not armed guards." 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6268.2 (2d ed.) (citing *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co*., 161 F.3d 77, 86 (1st Cir. 1998)); *see also Guild v. Gen. Motors Corp*., 53 F. Supp. 2d 363 (W.D. N.Y. 1999) ("[T]rial judges acting as gatekeepers under Daubert must not assume 'the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul' and thereby usurp 'the ageless role of the jury' in evaluating witness credibility and weight of the evidence.") (quoting *McCullock v. H.B. Fuller Co*., 61 F.3d 1038, 1045 (2d Cir. 1995)).

As the Court in *General Elec*. stated, "Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder." 2004 WL 5495590, at *5 (citing *Viterbo v. Dow Chemical Co*., 826 F.2d 420, 422 (5th Cir. 1987)). *See also Trinity Med. Servs., LLC v. Merge Healthcare Sols., Inc*., No. 17-592, 2020 WL 1309892, at *7 (M.D. La. Mar. 19, 2020) (deGravelles, J.).

## V.    Discussion

### A.  Appropriateness of Expert Legal and Industry Opinion Testimony

In this case, both sides have hired legal experts to testify regarding Zurich's alleged bad faith in the handling of the claims at issue.[3] Zurich argues that it is appropriate for the Court to consider the opinion of a legal expert on the bad faith issues in this case. (Doc. 130 at 13-16 (citing, *inter alia*, *The Shaw Grp., Inc. v. Zurich Am. Ins. Co*., No. 12-257, 2014 WL 3407318, at *1 (M.D. La. Jul. 10, 2014)).) Lamar does not disagree. Nonetheless, it is important to remind the parties

---

[3] Zurich attaches deposition excerpts of Lamar's legal expert, Peter Hildebrand. (Doc. 130-1.)

that the Court has the final and ultimate authority and responsibility to instruct the jury on the law

which it is to apply to the facts of the case. *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)

("it must be posited as an a priori assumption [that] there is one, but only one, legal answer for

every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it

requires only one spokesman of the law, who of course is the judge.") *Specht v. Jensen*, 853 F.2d

805, 807 (10th Cir. 1988) (internal citations omitted)). "Each courtroom comes equipped with a

'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant

legal standards." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir.

1997).

In this case, whether Zurich was in bad faith as contended by Lamar or acted reasonably

and in good faith, as maintained by Zurich, is a question to be decided by the jury. In four of the

five main opinions given by Segalla, he opines that Zurich acted reasonably and in good faith.

These opinions, as phrased, are arguably conclusions of law and while neither party has raised this

issue, an expert may not give a legal conclusion.

> The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This "invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law." *F.A.A. v. Landy*, 705 F.2d 624, 632 (2d Cir.), cert. denied, 464 U.S. 895, 104 S. Ct. 243, 78 L.Ed.2d 232 (1983). *See also Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505, 509–10 (2d Cir.), cert. denied, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977) ("It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge."); 3 J. Weinstein & M. Berger, supra, at ¶ 704[02], page 704–11.

*Torres v. Cty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985).

In *The Shaw Group*, the late Judge Brady wrote:

> Federal District Courts in Louisiana uniformly hold that experts may testify about insurance industry custom and practice or standards for claim handling when the facts are more complicated than a typical homeowner's insurance dispute. However, it is well-established that expert witnesses "may never render conclusions of law."

10

*Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir.2009). The United States District Court in the Eastern District of Louisiana, in addressing testimony of experts in the insurance industry, determined that while the expert was "qualified to testify as an expert in the field of insurance custom and practice, it notes that at times his proposed testimony crosses into the realm of making legal conclusions concerning Defendant's compliance with legal duties arising from those customs and practices. This he cannot do." *McDermott Int'l, Inc. v. Indus. Risk Insurers*, CIV. A. 01–3027, 2008 WL 5120694, *1 (E.D. La. June 18, 2008).

*Shaw Grp., Inc. v. Zurich Am. Ins. Co.*, 2014 WL 3407318, at *1.

It is not always easy to determine when an expert opinion violates this prohibition. As this

Court held:

Federal Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, the Fifth Circuit has "repeatedly held that this rule does not allow an expert to render conclusions of law." *Snape-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

"The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one." *Owen*, 698 F.2d at 240. In *Owen*, the Fifth Circuit explained:

The example given in the Advisory Committee Notes to Rule 704 is helpful. The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well is a fact-based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read. Moreover, allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.

*Id.*

*Tingle v. Hebert*, No. 15-626, 2018 WL 2287028, at *5 (M.D. La. Apr. 23, 2018); *see also*

*O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 928 (D. Colo. 2017) (excluding expert's

testimony that insurer's conduct violated various provisions of the Colorado Unfair Claims

Settlement Act and constituted an unreasonable delay and/or denial of insured's policy benefits and was not consistent with insurer's duty of good faith and fair dealing, in part, because it contained impermissible legal conclusions and would improperly intrude on its fact-finding function). Neither expert in this case will be permitted to give legal conclusions.

### B.  Methodology

Lamar objects to two aspects of Segalla's methodology: first, that Segalla "failed to furnish any 'objective, independent validation of his methodology' and explain how those sources support his opinions as required by *Brown v. Ill. Cent. R.R. Co*., 705 F.3d 531 (5th Cir. 2013);" second, that Segalla does not explain how and why he arrived at his result and "does nothing more than summarize facts and draw conclusions without providing any analysis." (Doc. 121-1 at 2, 4.) The Court rejects both arguments. First, with respect to his lack of objective, independent validation of his methodology, if the expert's testimony does not rest on traditional scientific methods, the court may permit the testimony "where [the] proposed expert witness bases her testimony on practical experience rather than scientific analysis." *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013). "In such cases . . . courts recognize that experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 149–50); *see also Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) ("[T]here is no question that an expert may still properly base his testimony on 'professional study or personal experience.' "); *Watson v. Snap-On Tools, Inc*., No. 04-1313, 2006 WL 2114558, at *5 (W.D. La. July 26, 2006). Here, Segalla bases his opinions on his specialized training and experience in insurance law and practice. This is permissible.

Regarding the second objection to his methodology, that he did not explain the how and why of his opinion, the Court again disagrees. In Segalla's report, as an integral part of his report,

he summarizes the facts of each claim and at the conclusion of each section, he explains the basis for his opinion that Zurich acted reasonably and in good faith.

### C.  Sufficiency of Segalla's Factual Foundation

"Rule 702(b) requires that expert testimony be 'based upon sufficient facts or data.' The Advisory Committee's Note to this provision states that this calls for a 'quantitative rather than qualitative analysis.' The question is whether the expert considered enough information to make the proffered opinion reliable." 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6268 (2d ed.)

> The word "sufficient" signifies that the expert may properly base her opinion on something less than all the pertinent facts or data. Thus, sufficiency is not a matter of whether the judge believes in the facts or data on which the expert relies. Rather, sufficiency is a function of the nature and scope of the opinion offered, the quantity of data both available and pertinent to the issue at hand, and what is deemed sufficient by experts in the pertinent field when working outside the courtroom.

*Id.*

The documents reviewed by Segalla before rendering his report are listed in Doc. 121-2 at 126-129. (*See also* Doc. 121-3 at 30-33.) This included Zurich's claims file, the documents produced by both parties, and depositions, running in toto into "tens of thousands of pages". (Doc. 130 at 11.) In any event, this goes to the weight, not admissibility of his testimony. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Sit. in Lefore Cty., Miss.*, 80 F.3d at 1077 (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Imperial Trading Co. v. Travelers Property Cas. Co. of America*, No. 06-4262, 2009 WL 2356292, at *3 (E.D. La. July 28, 2009).

**D. Whether Segalla's failure to do a coverage analysis precludes him from giving opinion on coverage positions**

Segalla opines that Zurich's coverage positions "were reasonable and undertaken by Zurich in good faith." (Doc. 121-1 at 24 (citing Doc. 121-2 at 132).) Yet because Segalla admits he never conducted a coverage analysis under the Zurich policy (*id*. (citing Doc. 121-2 at 30-32)), Lamar argues that Segalla is in no position to comment on Zurich's coverage positions. (Doc. 121-1 at 24-25.)

Zurich responds that Lamar mischaracterizes Segalla's testimony. (Doc. 130 at 12-13.) While he did not make a "coverage determination" because he was not asked to, he did review Zurich's coverage positions as stated in Zurich's correspondence, particularly as to Endorsement 3 of the policy (the billboard endorsement, which forms a central dispute in the case), and is he highly qualified to render his opinion. (*Id*. at 13.)

Here, the Court agrees with Zurich. Although Segalla did not do a "total coverage analysis" because he was not asked to (Doc. 121-2 at 31), he did look at "how endorsement 3 applied to the terms and conditions" of the policy. (Doc. 121-2 at 32.) His failure to do a full coverage analysis and how this weakens his opinion, if at all, goes to the weight, not admissibility of this testimony and can be explored by Lamar on cross examination.

**E. Correctness of Segalla's Legal Conclusions**

Lamar argues that Segalla applies incorrect and erroneous legal principles to support his opinion that Zurich was reasonable, in good faith and not arbitrary and capricious in its handling of the Lamar claims. Erroneous assumptions made by an expert ordinarily do not disqualify him from testifying but are more appropriately addressed on cross examination at trial. *Smiley v. New Hampshire Ins. Co.*, No. 17-1094, 2021 WL 292449, at *13 (M.D. La. Jan. 28, 2021) (citations omitted). However, it is obvious that a legal expert will not be permitted to give legal opinions

14

which are contrary to the law or base his conclusions on an incorrect understanding of the law. *Loeffel Steel Prod., Inc. v. Delta Brands, Inc*., 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005) ("Expert opinions that are contrary to law are inadmissible. They cannot be said to be scientific, to be reliable, or to be helpful to the trier of fact.") (citations omitted). *See also Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am*., 654 F. Supp. 2d 518, 522 (E.D. La. 2009) (excluding expert opinion testimony for, in part, "misstatement[s] of Louisiana law").

In such a case the Court may disallow those opinions which are contrary to the law (or which are based upon incorrect statements of the law) but otherwise permit the witness to testify at trial or allow the proponent to cure deficiencies at trial. *See, e.g.*, *Nat'l Tr. Ins. Co. v. Columbia Nat'l Ins. Co*., No. 18-1440-J-34JBT, 2020 WL 4284813, at *5 (M.D. Fla. July 10, 2020), report and recommendation adopted, No. 18-1440-J-34JBT, 2020 WL 4428469 (M.D. Fla. July 31, 2020) (not excluding expert's opinions "wholesale" but deferring same until trial); *Jones v. Reynolds*, 2008 WL 2095679, at *12 (N.D. Miss. May 16, 2008) (striking certain opinions of expert but allowing others).

Alternatively, if a legal expert's reliance on erroneous legal principles rises to a certain level, the Court must disqualify the expert altogether. *See, e.g.*, *Imperial Trading Co*., 654 F. Supp. 2d at 522. Therefore, the question here is first, whether any of Segalla's opinions express or are premised on erroneous legal principles and second, if so, do they rise to a level requiring complete disqualification or can he be disqualified as to certain of his opinions only.

The Court will first consider each of Segalla's alleged errors of law.

      a. Do Segalla's opinions contradict the legal principles applied by this Court in its ruling on Lamar's Motion for Partial Summary Judgment, Doc. 112?

This Court ruled that, despite Segalla's opinion that Zurich's conduct was reasonable and justified, Lamar was entitled to summary judgment regarding Zurich's untimely payment of August 13, 2018. (Doc. 112.) Lamar argues that in the ruling "[t]his Court held as a matter of law that Mr. Segalla's opinions are premised on an incorrect understanding of the law." (Doc. 121-1 at 14 (citing Doc. 112 at 6-8).)[4] In reality, the Court found that Segalla's opinion was based on an erroneous understanding of the *facts*, i.e. that Zurich's late payment was justified because its adjuster left before the claim was due and it was reasonable for Zurich to allow a new adjuster time to review the claim before making payment. In its ruling, the Court wrote:

> Application of the per se rule announced by the Louisiana Supreme Court in *Louisiana Bag* [*Co. v. Audubon Indem. Co*., 2008-0453 (La. 12/2/08), 999 So. 2d 1104, 1116] is appropriate because Zurich does not raise a legitimate question of fact regarding why payment was not made within 30 days of June 12, 2018. Zurich provides as an explanation that on "July 18, 2018, [Mr.] Schwalbach left Zurich and Lamar's claim was transferred to Executive General Adjuster Mike Mastilak." (Doc. 77 at 7.) This, indeed, is the information relied upon by Zurich's expert [Segalla] to support his opinion that Zurich's conduct was reasonably prudent. (Doc. 77-1 [Segalla's Affidavit] at 22-23.)

> Had Mr. Schwalbach left Zurich prior to the thirty-day period expiring, whether or not the delay in paying the claim was reasonable would be a material issue of fact and might provide support for the expert's opinion and a denial of the motion. However, Mr. Schwalbach left *after* the thirty-day period expired and no other explanation or facts were provided by Zurich as to why the claim was not paid within thirty days.

(Doc. 112 at 15.)

Obviously, the issues raised and decided in the Court's ruling granting Lamar's Motion for Partial Summary Judgment Regarding Zurich's Untimely August 13, 2018 Payment to Lamar and Zurich's Failure to Ever Make Any Written Offers to Settle Lamar's Property Damage Claim (Doc. 112) will not be considered by the jury. This would include Segalla's testimony including any factual misunderstandings upon which he based his opinions. The law relied upon by the Court in

---

[4] Lamar correctly notes that Zurich failed to address this issue in its opposition memorandum. (Doc. 133 at 2-3.)

its ruling, mainly *Louisiana Bag Co., Inc. v. Audubon Indem. Co*., 2008-0453 (La. 12/2/08), 999 So. 2d 1104, 1114, is the law applicable to the other claims in this case and Segalla will be precluded from giving expert legal opinions which are contrary thereto.

  b. Did Segalla "improperly fail[ ] to consider the obligation of an insurer to make *McDill* tenders?"

Lamar argues that Segalla "improperly failed to consider the obligation of an insurer to make *McDill* tenders." (Doc. 121-1 at 3 (citing Doc. 121-2 at 68-69);[5] *see also* Doc. 121-1 at 18.) Zurich responds that Segalla considered all pertinent Louisiana law including *Louisiana Bag* and that Lamar is "play[ing] 'gotcha' because Mr. Segalla did not immediately pick up on the reference to *McDill v. Utica Mut. Ins. Co.,* 475 So. 2d 1085 (La. 1985)." (Doc. 130 at 10.) In its reply, Lamar insists that Segalla's "clear and unambiguous testimony [shows] he did not consider whether Zurich was required to make timely tenders of undisputed portions of the claim to Lamar." (Doc. 133 at 3 (citing Doc. 133-2 at 1-3).)

The Court initially found that Segalla's testimony upon which Lamar relies was not clear and unambiguous. In his report at Doc. 133-2 at 2, Segalla suggests that he did not consider the *Louisiana Bag* and *McDill* rules to apply to the case because the cost estimates for repair or replacements vacillated from day to day such that there was no undisputed amount. In other words, *Louisiana Bag* and *McDill* did not apply because, at the time, there was no satisfactory proof of loss. Hence, "I don't believe factually, this concept applies." (*Id.*) In another part of that same series of questions, however, Segalla seems to suggest that unless the total amount was undisputed, Zurich had no obligation to pay with 30 days. (*Id.* at 3.) Thus, his rationale was not clear to the Court.

---

[5] Lamar inadvertently omitted p. 206 from its original filing and attached it to its reply memorandum as Doc. 133-2.

If Segalla's opinion is that *Louisiana Bag* and *McDill* are inapplicable to this case because, factually, there was never a failure to pay within 30 days of satisfactory proof of loss of at least a portion of the claim, then this is a question of the factual soundness of his assumptions and is not a ground to strike his testimony. *Imperial Trading Co.*, 2009 WL 2356292, at *3. If his opinion, on the other hand, is that unless the total amount is undisputed, the insurer has no obligation to pay within 30 days, even if some smaller amount is not in dispute, then this would represent a fundamental misunderstanding of Louisiana law on a critical part of the case and he would not be allowed to so testify.

At a status conference on January 21, 2021, the Court told the parties that despite Lamar's argument that Segalla's testimony of this point was "clear and unambiguous" (Doc. 133 at 3), the Court didn't find it to be so and set a *Daubert* hearing for February 22, 2021 at which Segalla could be questioned by the parties and, if necessary, by the Court. (Doc. 166.) Unfortunately, for reasons set forth in a sealed letter, Segalla is unable to give *Daubert* testimony until May 2021. (Doc. 169.) At a subsequent status conference to discuss the matter, Lamar requested permission to file two additional pages of Segalla's deposition which it represented would clarify Segalla's position on *Louisiana Bag* and *McDill*. (Doc. 171; *see also* Docs. 177, 178, 179.) Zurich was given permission to respond to that filing (Doc. 171). It did so (Doc. 184), arguing that Lamar had taken Segalla's testimony out of context and attached additional pages for the Court to consider. (Doc. 184 (attaching Doc. 184-1 at 1-7).) Zurich argues that his testimony, taken as a whole, is that *Louisiana Bag* does not apply to the facts of this case because there was never an undisputed amount. (Doc. 184 at 1.)

The Court finds that the additional testimony submitted by Lamar does clarify Segalla's position on this point. The Court concludes that Segalla's interpretation of Louisiana law on this important point is incorrect. At his deposition, Segalla testified as follows:

> Q.    Okay. I'm going to read to you a paragraph, and you tell me if you agree or disagree with any of it. "Often, in first party claims, the insurance company has no reasonable basis to dispute that a covered loss has occurred, but it does have a reasonable basis to contest the amount of loss claimed by the insured. For example, under a fire policy, the insurer may not contest that the fire occurred, causing damage to the insured's home covered under its insurance policy. The insured, however, may contend that the house is a total loss, triggering the insurer's obligation to pay its policy limit of $250,000, while the insurer may maintain that the damaged house can be restored for $150,000. Through the conflicting opinions of their respective experts, the insured and insurer may reasonably dispute whether the insurance company owes the last $100,000, but there is no dispute that the insurance company owes at least $150,000. Under these circumstances, Louisiana courts have long recognized that the insurance company must timely and unconditionally tender the undisputed amount to its insured, recognizing that there is no justification for an insurance company to withhold payment of the undisputed amount."
>
> Do you agree or disagree with any of that?
>
> A:    I disagree.

(Doc. 177-1 at 1-2 (Segalla deposition at 208-209) (question quoting Shelby McKenzie and Alston Johnson, 15 La. Civ. L. Treatise, Insurance Law & Practice § 11:7 (4th ed.) (in turn, citing *Louisiana Bag,* 999 So. 2d at 1114)). The additional pages of Segalla's deposition supplied by Zurich do not alter or condition his testimony quoted above. The Court reads the entirety of his testimony to be that as long as there is a fact dispute about some aspect of a given claim, the insurer is not obligated to pay, even if there is no dispute as to a portion of the claim. The Court disagrees.

Indeed, the legal principle, with which Segalla disagrees (quoted above) is a correct statement of Louisiana law and is the foundation of this Court's ruling on Lamar's Motion for Partial Summary Judgment Regarding Zurich's Untimely August 13, 2018 Payment to Lamar and

Zurich's Failure to Ever Make Any Written Offers to Settle Lamar's Property Damage Claim (Doc. 112). As McKenzie and Johnson go on to say: "In *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, [citation omitted], the supreme court reaffirmed the rule that, when only a portion of the claim is reasonably disputed, the insurer must timely tender unconditionally the undisputed amount." 15 La. Civ. L. Treatise, Insurance Law & Practice § 11:7 (4th ed.).

Accordingly, this part of Lamar's motion is granted and Segalla will not be allowed to testify to the contrary nor will he be allowed to give any subsidiary opinion which is based solely on this incorrect statement of the law.

### c.    What Is an Insured's Alleged Duty to Understand the Policy?

Lamar contends that Segalla fundamentally misunderstands the nature of the relationship between insurer and insured under Louisiana law. For instance, Segalla opines that an insured has a duty to *understand* the terms and conditions of its insurance policy (Doc. 121-1 at 21 (emphasis added) (citing Doc. 121-2 at 55).) This, argues Lamar, is an incorrect statement of the law. (*Id.* (citing to an insurer's duty to clearly express the exclusions in its policy and the well-known rule that policy ambiguities are to be construed against the insurer).) Zurich counters that Segalla's opinion is a correct statement of the law because an insured has a duty to *know* the provisions of the policy. (Doc. 130 at 10 (citing *White v. Allstate Ins. Co.*, 513 F. Supp. 2d 674, 682 (E.D. La. 6/26/07)).) Lamar replies that this is "flat out wrong" because there is a distinction between an insured's duty to *read* the policy and a duty to *understand* it, especially ambiguous provisions. (Doc. 133 at 8.) Lamar provides the Court with no authority supporting its position other than the two broad propositions given in its original brief.

If it is Segalla's opinion that an insured is required or deemed to understand an ambiguous provision and that this requirement alters the well settled rule in Louisiana that ambiguities in a

policy are to be construed against the insurer, the Court disagrees. "It is… well settled that it is insured's obligation to read the policy when received, since the insured is deemed to know the policy contents." *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 2009-2161 (La. 7/6/10), 42 So. 3d 352, 359; *see also Seruntine v. State Farm Fire & Cas. Co*., 2010-1108 (La. 9/3/10), 42 So. 3d 968; *Motors Ins. Co. v. Bud's Boat Rental, Inc.,* 917 F.2d 199, 205 (5th Cir. 1990); *Ruiz v. Allstate Ins. Co*., 295 F. App'x 668, 672 (5th Cir. 2008); *Prac. Healthcare Supply, Inc. v. AssuredPartners Gulf Coast Ins. Agency, LLC*, 112 F. Supp. 3d 519, 525 (W.D. La. 2015). But this obligation of the insured is not changed by (nor does it change) the obligation of the insurer to clearly express the exclusions in its policy and the rule that policy ambiguities are to be construed against the insurer.

> d.  Does Louisiana law recognize a "sophisticated insured" doctrine under the circumstances of this case?

Lamar also argues Segalla should not be allowed to testify that Lamar is a sophisticated insured (citing Segalla's deposition testimony at Doc. 121-2 at 55) because Louisiana recognizes a "sophisticated insured" doctrine only where the insured or his agent drafted or specifically negotiated the policy terms in question, which is not the case here. (Doc. 121-1 at 23-24 (citing *Gabarick v. Laurin (Mar.), Inc*., 650 F.3d 545, 553 (5th Cir. 2011); *Jones v. Reynolds*, 2008 WL 2095679 at *11 (N.D. Miss. May 16, 2008)).) Under the sophisticated insured doctrine, the presumption against the insurer in the interpretation of an ambiguous provision in the policy does not apply when the insured is a sophisticated insured. *Gabarick*, 650 F.3d at 553. Zurich does not address this argument directly in its briefing.

When questioned as to the source of his opinion that, under Louisiana law, an insured has a "duty to understand the terms and exclusions of its policy of insurance," Segalla testified that

this would be the case here where there was "a sophisticated insured and coverage counsel." (Doc. 121-2 at 55.) When asked directly, "[d]oes Louisiana recognize the sophisticated insured doctrine?", Segalla answered "yes" although he was unable to provide any authority for his answer. (*Id*.) Neither Segalla nor Zurich have offered support for Segalla's opinion and Lamar has provided contrary case law. *Gabarick,* 650 F.3d at 553. ("…Louisiana's presumption in favor of the insured does not apply where the insured is a sophisticated commercial entity that drafted the policy or used an agent to secure the desired policy provisions."); *see also Six Flags, Inc. v. Westchester Surplus Lines Ins. Co*., 565 F.3d 948, 958 (5th Cir. 2009) (presumption in favor of insured when the policy is ambiguous is inapplicable "where the insured is a sophisticated commercial entity that itself drafts or utilizes its agent to secure desired policy provisions.")[6]

There is no suggestion that Lamar or its agent participated in the drafting of the policy. Therefore, Segalla will not permitted to use or make reference to the sophisticated insured doctrine or suggest that because Lamar is a company and had coverage counsel, this changes the basic presumption of Louisiana insurance law in favor of the insured in the interpretation of ambiguous policy provisions. However, the Court does not decide whether Lamar's sophistication as a business or its representation by counsel may be relevant for some other purposes. This issue is deferred to trial.

e.  Does an insured have an affirmative duty to force an insurer to investigate a claim?

According to Lamar, Segalla erroneously opines that "an insured has an affirmative duty to force its insurer to investigate a claim." (Doc. 121-1 at 10 (citing Doc. 121-2 at 56-57); *see also*

---

[6] Louisiana's position on the sophisticated insured doctrine as expressed in *Gabarick* is consistent with the majority position on this issue. *Certain Underwriters at Lloyds London v. Perraud*, 623 F. App'x 628, 630-31 (5th Cir. 2015) ("Most courts have taken a middle ground, deeming the exception triggered where the insured—or a broker acting on the insured's behalf—actually negotiates, drafts, or proposes portions of the policy.") (collecting cases at n.5.)

Doc. 121-1 at 21-22 (citing Doc. 121-2 at 56-58).) Instead, an insurer is statutorily required to investigate and adjust the claim fairly. (*Id*. at 22 (citing La. R.S. 1973(A); *Kelly v. State Farm Fire & Cas. Co.*, 2014-1921 (La. 5/5/15); 169 So. 3d 328, 341; *Guillory v. Lee*, 2009-0075 (La. 6/26/09); 16 So. 3d 1104, 1114-15).)

Zurich responds by arguing that Segalla is correct that "an insured such as Lamar has a contractual duty to cooperate with its insurer in the investigation of a claim, and it is equally subject to the duties imposed by La. C.C. art. 1997." (Doc. 130 at 10.)

The Court has read that portion of Segalla's testimony to which Lamar had directed the Court and agrees with Zurich. Segalla testified that, under the terms and conditions of the policy, an insured has an obligation to cooperate with the insurer in the investigation of its claim. (Doc. 121-2 at 56-58.) This is not the same as suggesting that an insured has an affirmative duty to force an insurer to conduct an investigation. This portion of Lamar's motion is denied with the caveat that if Zurich intends to elicit an opinion from Segalla that an insured has an affirmative duty to force its insurer to conduct an investigation, counsel for Zurich will alert the Court and counsel outside the presence of the jury so that the matter can be taken up at that time.

      f.   Does an "insured owe a duty of good faith and fair dealing to its insurer?"

Lamar contends that Segalla's opinion that an insured owes a duty of good faith and fair dealing to its insurer (i.e. the duty of good faith and fair dealing is a "two-way street") is an incorrect statement of the law. (Doc. 121-1 at 21, 23 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cagle*, 68 F.3d 905, 910 (5th Cir. 1995)).) Zurich disagrees and insists that this is a "*correct* statement of the law" (Doc. 130 at 10 (emphasis in original) (arguing that an insured has a contractual duty to cooperate in the investigation and adjustment of the claim and is subject to the

duties imposed by La. C.C. art. 1997).) In its reply, Lamar reiterates but does not elaborate further

on its earlier argument. (Doc. 133 at 2.)

Neither party directs the Court to the record document containing Segalla's statement that

is the foundation for Lamar's complaint. Based on what is represented in briefing, the Court agrees

with Zurich. While *Nat'l Union,* relied upon by Lamar, does state that an insured does not owe a

duty of "utmost candor and good faith" to its insurer (affirming the trial court's refusal to give an

instruction to that effect), the Court held, in effect, that the ordinary duty of good faith and fair

dealing between an insurer and insured is reciprocal.

> [T]he Louisiana Supreme Court recently made it clear that insurance policies are generally governed by the same rules as other types of contracts. *Louisiana Ins. Guar. Assn. (LIGA) v. Interstate Fire & Casualty Co*., 630 So. 2d 759, 763–64 (La.1994). "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." *Id*. at 763. In *LIGA*, the Louisiana Supreme Court emphasized that the insurance contract controls the obligations of the parties. "Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." *LIGA*, 630 So. 2d at 763 (omitting citations). When "the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Id*. at 764.
>
> Because the insurance contract is governed by the general rules of contracts, the underlying duty of the parties to each other in performance of the contract is controlled by the Louisiana Civil Code. The Louisiana Civil Code states "[c]ontracts must be performed in good faith." La. Civ. Code art. 1983. The Civil Code, however, does not define "good faith," but does define "bad faith" as "an intentional and malicious failure to perform." La. Civ. Code Ann. art. 1997 cmt. c. Louisiana courts have looked to this definition of "bad faith" for guidance in determining conduct that breaches the duty of good faith. See, e.g., *Great Southwest Fire Ins. Co. v. CNA Ins. Cos*., 557 So. 2d 966, 969 (La. 1990); *Heirs of Gremillion v. Rapides Parish Police Jury,* 493 So.2d 584, 587 (La. 1986); *American Bank & Trust of Coushatta v. FDIC,* 49 F.3d 1064, 1066 (5th Cir. 1995). "[A] breach of contract occurs if contractual discretion is exercised in bad faith, a term connoting fraud, deception or sinisterly-motivated nonfulfillment of an obligation." *Adams v. First National Bank of Commerce*, 644 So.2d 219 (La. App. 4th Cir.1994). In contrast to the general duty of good faith, we recognize that Louisiana courts have implied a higher duty on the insurer in performance of its policy obligation of the duty to defend the insured against covered claims, including a consideration of the

interests of the insured in every settlement. *Pareti v. Sentry Indemnity Co.*, 536 So. 2d 417, 423 (La. 1988).

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cagle*, 68 F.3d 905, 910–11 (5th Cir. 1995).

In sum, the Court will not prohibit Segalla's testimony that is consistent with *Nat'l Union*.

g.   Is there is a "true fiduciary relationship" between an insured and its insurer?

Citing *Nat'l Union,* 68 F.3d at 910–11, as its authority, Lamar argues that Segalla is legally incorrect when he testified in his deposition at Doc. 121-2 at 53 that there is no "true fiduciary relationship" between an insurer and its insured. (Doc. 121-1 at 10, 23.) Zurich disagrees, quoting Segalla's testimony that, while there is no "true" fiduciary relationship, there is a "fiduciary relationship that is governed by the fact that the insurer has to give equal consideration to the interests of the insured as it does to its own. (Doc. 130 at 10 (citing Doc 121-2 at 53-54).)[7] Zurich maintains that Segalla is right. (*Id.*)

In reply, Lamar insists that Segalla (and Zurich) are "**flat out wrong.**" (Doc. 133 at 8 (emphasis in original) (quoting *Keith v. Comco Ins. Co*., 574 So. 2d 1270, 1277 (La. App. 2 Cir. 1991) ("Louisiana jurisprudence holds that the insurer is the champion of its insured; the interests of the insured are **paramount** to those of the insurer.") (emphasis added)).)

It is true that Louisiana law places special responsibilities on insurers.

An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

La. R.S. 22:1973(A).

The statute then sets out "acts, [which] if knowingly committed or performed by an insurer, constitute[ ] a breach of the insurer's duties imposed in Subsection A of this Section." La. R.S.

---

[7] The quoted testimony is found at Doc. 121-2 at 52-53.

22:1973(B). However, the question before the Court is whether Segalla was wrong in saying that Louisiana law imposed no "true fiduciary relationship" on an insurer. The case relied upon by Lamar, *Nat'l Union*, stands for the opposite of the proposition for which Lamar cites it. After discussing two Louisiana appellate decisions,[8] the Fifth Circuit stated: "The primary holding in both of these cases is that no fiduciary relationship is established by an insurance contract." *Nat'l Union,* 68 F.3d at 910. *See also McLachlan v. New York Life Ins. Co.,* 488 F.3d 624, 628 (5th Cir. 2007) ("Under Louisiana law, the insurer-insured relationship doesn't give rise to a fiduciary duty…"); *Warren v. Geller*, 924 F. Supp. 2d 713, 726 (E.D. La. 2013) (quoting *Nat'l Union* for the proposition that "no fiduciary relationship is established by an insurance contract."). The case relied on by Lamar in its reply brief, *Keith*, 574 So. 2d 1270, is distinguishable in that it involved a claim by a tortfeasor's assignee against the tortfeasor's insurer alleging a bad faith refusal to settle a personal injury claim within the policy limits. The Court in *Nat'l Union* distinguished these kinds of cases from the general rule applicable here.

> In contrast to the general duty of good faith, we recognize that Louisiana courts have implied a higher duty on the insurer in performance of its policy obligation of the duty to defend the insured against covered claims, including a consideration of the interests of the insured in every settlement. *Pareti v. Sentry Indemnity Co.,* 536 So. 2d 417, 423 (La. 1988).

*Nat'l Union,* 68 F.3d at 911.

This part of Lamar's motion is denied.

    h.   Is the standard for every cause of action under La. R.S. 22:1973 whether the insurer was "arbitrary, capricious and without probable cause"?

Citing to pages 110-111 of Segalla's deposition, Lamar charges that Segalla erroneously opines that "arbitrary, capricious or without probable cause" is the standard for violating La. R.S.

---

[8] *Miller v. Lumbermens Mutual Cas. Co.*, 488 So. 2d 273 (La. App. 3d Cir. 1986), *writ denied*, 493 So. 2d 637 (La. 1986); *Ray Gibbins Certified Welders v. Griggs*, 543 So. 2d 68 (La. App. 1st Cir. 1989).

22:1973 when, in fact, the correct standard for violating 22:1973(B)(1) (an insurer's misrepresentations regarding its policy) and 1973(B)(2) (an insurer's failure to pay within 30 days of a written settlement) is "knowingly committed." (Doc 121-1 at 10, n.58 (citing *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 03-0360 (La. 12/3/03) 860 So. 2d 1112, 1119; Dean A. Sutherland, *Insurance "Bad Faith" Law, Revisited*, 57 La. B.J. 374, 375 (2010).)

Lamar does not explain how the provisions which Segalla allegedly misconstrues are at issue in this case. Zurich doesn't address the issue at all. The Court will defer ruling on this part of the motion until trial. If Lamar intends to question Segalla on the proper standard for violating La. R.S. 22:1973(B)(1) or (2), Zurich's counsel will advise the Court and opposing counsel outside the presence of the jury so that the matter can be taken up then.

i. Is an insurer responsible for the actions of its independent contractor adjusters?

Lamar argues that Segalla "did not consider whether Zurich's independent adjusters complied with the 'standards, customs and practices in the insurance industry…" (Doc. 121-1 at 15 (citing Doc. 121-2 at 68).) Because, insurers are responsible for the acts and omissions of its independent adjusters and the only adjusters on the ground in Puerto Rico were Zurich's independent adjusters, Segalla's opinions are fatally flawed. (*Id.*)

Zurich responds that Segalla did not understand the reference to "Crawford and Company" in the deposition question to refer to the adjusters who adjusted Lamar's claim for Zurich, "because he discusses [Crawford and Co.'s] actions in detail throughout his expert report and had just been discussing them in his deposition." (Doc. 130 at 8-9 (citing Doc. 121-2 at 103, 112).) In its reply, Lamar argues that such misunderstanding only proves that "he lacks even the most basic understanding of the material facts" of the case and that he failed to correct his deposition testimony when he could have. (Doc. 133 at 5.)

After comparing his deposition testimony and his report, it is clear to the Court that Segalla misunderstood the question. What this misunderstanding says about his knowledge of the underlying facts goes to the weight, not admissibility of his testimony. This part of Lamar's motion is denied.

          j.   Does an insured have a cause of action for its insurer's post-litigation conduct?

Lamar next contends that Segalla erred when he suggested that an insured has no cause of action against its insurer for "post-litigation conduct." (Doc. 121-1 at 9-10 (citing Segalla Report, Doc. 121-2 at 124).) Although Lamar concedes that Segalla relied on *Premium Fin. Co., Inc. v. Employers Reinsurance Corp.*, 761 F. Supp. 450 (W.D. La. 1991) to support his position, Lamar argues that there are numerous cases which disagree with *Premium* including the later controlling precedent of *Sher v. Lafayette Ins. Co*., 988 So. 2d 186, 198 (La. 2008). (*Id*. at 22-23.)

Zurich responds that the "factual bases" for Segalla's opinions regarding Zurich's post litigation conduct go to the weight of Segalla's testimony, not its admissibility. (Doc. 130 at 12.) As to his opinion regarding the legal issue, Zurich states: "Mr. Segalla also agreed that the Court would instruct the jury on the law related to this issue, so it is unclear exactly what argument Lamar is making here." (*Id*.) Lamar does not address this argument in its reply.

In his report, Segalla draws a distinction between post-litigation conduct of an insurer through its lawyers in defending a lawsuit on the one hand, and post litigation conduct of the insurer acting as insurer on the other, suggesting that the former is not actionable. Segalla refers to Lamar's allegations of post-litigation conduct as involving Zurich's allegations and affirmative defenses in its answer. (Doc. 121-2 at 124.) It is not clear from Lamar's briefing whether they agree with this characterization.

In any event, Segalla's reliance on *Premium* without a reference to or discussion of subsequent cases is troubling to the Court. The efforts of an insurer's counsel to do the same in briefing drew the understandable ire of Judge Dee Drell in *Kimble v. State Farm Fire & Cas. Co*., No. 9-1798, 2011 WL 1637142, at **4-6 (W.D. La. Apr. 29, 2011):

> Defendant replies to Plaintiff's first claim—of non-payment in response to Plaintiff's January 2010 submission—by pointing out that, at the time of that submission this litigation had already commenced, and, it claims, the above statutes do not apply to "post-litigation conduct," to actions taken by an insurer once suit has been filed. (Doc. 31, pp. 5–6). Its primary authority for this proposition is a federal district court case from 1991 which dealt with the statute less than a year after it had passed, almost as a matter of first impression. *Premium Finance Co., Inc. v. Employers Reinsurance Corp*., 761 F. Supp. 450, 452 (W.D. La. 1991).

> This case does exist, and a sprinkling of federal district court cases since—almost none of which were seriously contested—have followed it. However, shortly after that case came down, a Louisiana appellate court disagreed with the federal district court's interpretation. In a thorough analysis of the statute and the federal district court's reasoning, the state court held that these statutes do apply to—and that an insurer can be assessed penalties for—so-called "post-litigation conduct" *Harris v. Fontenot*, 606 So. 2d 72, 74 (La. App. 3 Cir. 1992). Other Louisiana appellate courts have since followed this court's lead, with none disagreeing. *See, e.g., Theriot v. Midland Risk Ins. Co*., 664 So.2d 547 (La. App. 3 Cir. 1996). Most importantly, the Louisiana Supreme Court, in dicta, approvingly cited to these cases' holding that "the duties of good faith and fair dealing imposed on insurers by [these statutes] are continuing duties that do not end during litigation." *Sher v. Lafayette Ins. Co*., 988 So. 2d 186, 198 (La. 2008). Federal district courts have also since adopted this rule, *see Dagiumol v. State Farm Fire & Cas. Co*., 2007 WL 2228158, at *1 (E.D. La. 2007), though, as noted, some continue to express confusion as to the correct rule, usually by noting the contrary authorities and reserving ruling on the issue. See *Holmes v. State Farm Fire & Cas. Co*., 2009 WL 413501, at *1 (E.D. La. 2009); *Husseiny v. Indep. Fire. Ins.,* 1996 WL 637547, at *6 (E.D. La. 1996). The Fifth Circuit has never ruled on the issue. Obviously, when interpreting a state statute, we defer to the interpretation of that statute given by that state's own courts, particularly when its Supreme Court and all of its appellate courts are unanimous.

> As defense counsel is no doubt aware, parties have a duty not to misinform the Court. This duty includes the obligation to bring contrary authority to our attention where it exists. We do not know why defense counsel successfully found every case—many of them unpublished—supporting its position, but missed every case to the contrary. This fact is particularly puzzling considering that all of these cases can be found in either Westlaw or Lexis by clicking on the convenient "citing

authority" buttons next to the case names, and that Defendant was party to at least one of the suits in which these contrary cases were discussed. *See Holmes, v. State Farm Fire & Casualty Co*., 2009 WL 413501 (E.D. La. 2009).

It is perhaps understandable, if not appropriate, if a party misses a single lower court case or presents conflicting material in a more ambiguous manner than strictly is warranted. That is not what defense counsel has done here, however. It flatly and repeatedly—in bold text—stated that "bad faith statutes do not apply to actions taken by an insurer once the litigation has commenced." (Doc. 31, p. 5). This assertion was presented as the current state of the law, without qualification. Moreover, we note that it was made for the first time in Defendant's reply memorandum, rather than in its original summary judgment motion, though that motion otherwise featured seven pages of detailed analysis of cases on this topic, leaving Plaintiffs with no opportunity to correct Defendant's inaccuracies.

We consider this presentation misleading. We do not know if it was deliberate or negligent, though it is difficult for us to imagine that an experienced attorney with such an obviously capable grasp of this area of the law would not be aware of the disagreement at issue here. We are likewise unsure if this behavior is indicative of the conduct engaged in by Defendant in handling Plaintiffs' claim. Regardless, we consider it disreputable and inappropriate, and we advise Defendant in the strongest possible terms not to continue it in the future.

Regarding the point at issue, we obviously disagree with Defendant's characterization of the law—or at the very least, like our sister court in Holmes, we consider it an open question, 2009 WL 413501, at *1—and find that post-litigation conduct is not excluded from Louisiana's insurance penalty statutes as a matter of law. Accordingly, making all reasonable inferences in favor of Plaintiffs, Defendant's failure to respond to Plaintiffs' January 2010 submission could be sufficient to place it in breach of its obligations to promptly pay or otherwise respond to Plaintiffs' claims within 30 or 60 days following submission of satisfactory proof of loss.

*Kimble,* 2011 WL 1637142, at **4-6; *see also Stone v. Amador*, No. 20-16, 2020 WL 6292819, at *5 (M.D. La. Oct. 27, 2020) ("Louisiana state court decisions, however, have stated that the statute applies to post-litigation conduct." (citing *Sher v. Lafayette Ins. Co*., 988 So. 2d 186, 199 (La. 2008))); *Slade v. Progressive Sec. Ins. Co*., No. 11-2164, 2013 WL 12182957, at *8 (W.D. La. Feb. 4, 2013), report and recommendation adopted, No. 11-2164, 2013 WL 12364259 (W.D. La. Mar. 5, 2013) ("Further, to the extent that Progressive argues that its defenses in the present litigation do not support a claim under the Louisiana bad faith statutes because those statutes do

not govern post-litigation conduct, that argument is not well founded. Although there is disagreement on the issue, the undersigned agrees with the reasoning of Judge Drell in *Kimble,* 2011 WL 1637142, at *5 (W.D. La. 2011).) *See also Stone,* 2020 WL 6292819, at *5 ("Federal courts have more recently recognized that post-litigation conduct applies to La. R.S. 22:1892 and La. R.S. 22:1973 in light of these Louisiana state court decisions." (citations omitted)).

Thus, the Court agrees with Lamar and this part of Lamar's motion is granted.

## VI. Conclusion

For the foregoing reasons, Lamar's Motion to Exclude the Testimony of Attorney Thomas Segalla (Doc. 121) is granted in part and denied in part.

Signed in Baton Rouge, Louisiana, on April 12, 2021.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**